# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

JEREMY SORENSON, an individual,
RANDAL REEP, an individual,
RANDAL SMITH, an individual,
and ADAM MCLEAN, an individual,
on behalf of themselves and all others
similarly situated,

    Plaintiffs,

v.

DELTA AIR LINES, INC., a Delaware
Corporation.

    Defendant.
_____

CASE NO.

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

**FILING FEE WAIVED PER 38 U.S.C. § 4323(h)**

  Plaintiffs Jeremey Sorenson, Randal Reep, Randal Smith and Adam

McLean, on behalf of themselves and all others similarly situated, complain and

allege upon the investigation made by Plaintiffs by and through their attorneys, as

follows:

## I.  <u>NATURE OF ACTION</u>

  1.  This civil class action is brought pursuant to the Uniformed Services

Employment and Reemployment Rights Act of 1994, 38 U.S.C. §§ 4301 et. seq. ("USERRA"). It is brought by Plaintiffs on behalf of a nationwide Class of all persons similarly situated, including current and former employees of Delta Air Lines, Inc. ("DAL"), who were or are currently serving in the United States Armed Services or National Guard.

## II.    PARTIES

### A.    PLAINTIFFS

2.    Plaintiff JEREMY SORENSON ("Sorenson") is a citizen of the United States and a resident of the State of Indiana.

3.    Plaintiff RANDAL REEP ("Reep") is a citizen of the United States and a resident of the State of Florida.

4.    Plaintiff RANDAL SMITH ("Smith") is a citizen of the United States and a resident of the State of New Jersey.

5.    Plaintiff ADAM MCLEAN ("McLean") is a citizen of the United States and a resident of the State of Nebraska.

6.    Plaintiffs Sorenson, Reep, Smith and McLean are qualified employees and members of the uniformed services as defined by 38 U.S.C. § 4303(3) and (16).

**B.**    **NAMED DEFENDANT**

7.    Defendant DAL is a corporation organized under the laws of the State of Delaware with its principal place of business in the State of Georgia.

8.    At all relevant times, DAL was and is an employer as defined by 38 U.S.C. § 4303(4)(A).

9.    In or about October 2008, DAL merged with Northwest Airlines Corporation ("NWA"). The surviving merged company is DAL.

**C.**    **DOE DEFENDANTS**

10.    Whenever and wherever reference is made to individuals who are not named as defendants in this action, but were employees/agents of defendant, such individuals at all times acted on behalf of defendant within the scope of their respective employments and agencies.

11.    Plaintiffs do not seek any relief greater than or different from the relief sought for the Class of which Plaintiffs are members. The action, if successful, will enforce an important right affecting the public interest and would confer a significant benefit, whether pecuniary or non-pecuniary, on a large class of persons. Private enforcement is necessary and places a disproportionate financial burden on Plaintiffs in relation to Plaintiffs' stake in the matter.

## III.    JURISDICTION AND VENUE

12.    This complaint arises under USERRA, 38 U.S.C. §§ 4301-4333. The jurisdiction of this court is founded on federal question jurisdiction, 28 U.S.C. § 1331, as conferred by 38 U.S.C. § 4323(b)(3).

13.    Venue is proper because DAL maintains its corporate headquarters in this district, as provided in 38 U.S.C § 4323(c)(2) and 28 U.S.C. § 1391(b).

14.    Pursuant to 38 U.S.C. § 4323(h), "No fees or court costs may be charged or taxed against any person claiming rights under [USERRA]."

## IV.    GENERAL LEGAL AND FACTUAL ALLEGATIONS

15.    Plaintiffs re-allege and incorporate by reference every allegation contained within paragraphs 1 through 14, inclusive, as though set forth at length herein and made a part hereof.

### A.    USERRA

16.    USERRA prohibits "discrimination against persons because of their service in the uniformed services."

17.    Section 4303 of USERRA provides that the term "service in the uniformed services" means "performance of duty on a voluntary or involuntary basis in a uniformed service under competent authority and includes active duty, active duty for training, initial active duty for training, inactive duty for training,

full time National Guard duty…"

18.    Section 4311 of USERRA protects persons who serve or have served in the uniformed services from acts of discrimination and reprisal; for example, a person "who is a member of,…performs, has performed,…or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership,…performance of service,…or obligation."

19.    "Benefit" is defined as:

> The term 'benefit of employment', or 'rights and benefits' means the terms, conditions, or privileges of employment, including any advantage, profit, privilege, gain, *status,* account, or interest (including wages or salary for work performed) that accrues by reason of an employment contract or agreement or an employer policy, plain, or practice and includes *rights and benefits under a pension plan*, a health plan, an employee stock ownership plan, insurance coverage and awards, bonuses, severance pay, supplemental unemployment benefits, vacations, and the opportunity to select work hours or location of employment.

38 U.S.C. § 4303(2) (emphasis added).

20.    Section 4316 of USERRA provides that any period of absence from employment due to or necessitated by uniformed service is not considered a break in employment, so an employee absent due to military duty must be treated as though they were continuously employed.

21.     Section 4311(c) further provides:

An employer shall be considered to have engaged in actions prohibited:

> under subsection (a), if the person's membership, application for membership, service, application for service, or obligation for service in the uniformed services is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership, application for membership, service, application for service, or obligation for service.

38 U.S.C. § 4311(c).

22.     In its Fiscal Year 2010 report to Congress (published in July 2011),

the Department of Labor clarified its interpretation that a "benefit of employment"

included a freedom from workplace harassment and/or a hostile work environment:

> "The Department of Labor considers it a violation of USERRA for an employer to cause or permit workplace harassment, the creation of a hostile working environment, or to fail to take prompt and effective action to correct harassing conduct because of an individual's membership in the uniformed service or uniformed service obligations."

Department of Labor (USERRA) Fiscal Year 2010 Report to Congress.

23.     Section 4311(c) further provides:

An employer shall be considered to have engaged in actions prohibited:

(1) under subsection (a), if the person's membership, application for membership, service, application for service, or obligation for service in the uniformed services is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership, application for membership,

6

service, application for service, or obligation for service.

38 U.S.C. § 4311(c).

24.    Section 4312(f)(1) of USERRA provides:

A person who submits an application for reemployment in accordance with subparagraph (C) [military leave more than 30 days but less than 181 days] or (D) [military leave for more than 180 days] of subsection (e)(1) shall provide to the person's employer (upon the request of such employer) documentation [of the military leave] to establish that -- (A) the person's application is timely; (B) the person has not exceeded the service limitations set forth in subsection (a)(2) (except as permitted under subsection (c)); and (C) the person's entitlement to the benefits under this chapter has not been terminated pursuant to section 4304.

38 U.S.C. § 4312(f)(1).

25.    Section 4316(a) of USERRA provides:

A person who is reemployed under this chapter is entitled to the seniority and other rights and benefits determined by seniority that the person had on the date of the commencement of service in the uniformed services plus the additional seniority and rights and benefits that such person would have attained if the person had remained continuously employed.

38 U.S.C. § 4316(a).

26.    Section 4316(d) of USERRA provides:

Any person whose employment with an employer is interrupted by a period of service in the uniformed services shall be permitted, upon request of that person, to use during such period of service any vacation, annual, or similar leave with pay accrued by the person before the commencement of such service. No employer may require any such person to use vacation, annual, or similar leave during such

period of service.

38 U.S.C. § 4316(d).

    27.    Section 4312 of USERRA provides:

[A]ny person whose **absence** from a position of employment is necessitated by reason of service in the uniformed services shall be entitled to the reemployment rights and benefits and other employment benefits of this chapter… (emphasis added).

    28.    Section 4312 of USERRA addresses a cumulative five (5) year service period and it provides a long list of exceptions to those time limits:

(c) Subsection (a) shall apply to a person who is absent from a position of employment by reason of service in the uniformed services if such person's cumulative period of service in the uniformed services, with respect to the employer relationship for which a person seeks reemployment, does not exceed five years, except that any such period of service shall not include any service--

    (1) that is required, beyond five years, to complete an initial period of obligated service;

    (2) during which such person was unable to obtain orders releasing such person from a period of service in the uniformed services before the expiration of such five-year period and such inability was through no fault of such person;

    (3) performed as required pursuant to section 10147 of Title 10, under section 502(a) or 503 of Title 32, or to fulfill additional training requirements determined and certified in writing by the Secretary concerned, to be necessary for professional development, or for completion of skill training or retraining; or

    (4) performed by a member of a uniformed service who is--

(A) ordered to or retained on active duty under §§ 688, 12301(a), 12301(g), 12302, 12304, or 12305 of Title 10 or under §§ 331, 332, 359, 360, 367, or 712 of Title 14;

(B) ordered to or retained on active duty (other than for training) under any provision of law because of a war or national emergency declared by the President or the Congress as determined by the Secretary concerned;

(C) ordered to active duty (other than for training) in support, as determined by the Secretary concerned, of an operational mission for which personnel have been ordered to active duty under § 12304 of Title 10;

(D) ordered to active duty in support, as determined by the Secretary concerned, of a critical mission or requirement of the uniformed services; or

(E) called into Federal service as a member of the National Guard under Chapter 15 of Title 10 or under § 12406 of Title 10.

(F) ordered to full-time National Guard duty (other than for training) under § 502(f)(2)(A) of Title 32 when authorized by the President or the Secretary of Defense for the purpose of responding to a national emergency declared by the President and supported by Federal funds, as determined by the Secretary concerned.

## B.   DAL'S ANTI-MILITARY CORPORATE CULTURE

29.    DAL has a wide-ranging pattern of harassment against its pilots who have military service obligations that not only violates USERRA, but shows a systemic policy or practice of discrimination. This culture of discrimination is not limited to the acts of a few rogue employees. Instead, it evidences that DAL's

numerous USERRA violations are intentional, and designed to intimidate and cause difficulties for employees so that they perform less military service, or leave the uniformed services entirely.

30.     DAL's policies prohibit pilots from performing any military obligations on the same calendar day they may have obligations to DAL ("Concurrent Duty"), even if those military service obligations do not interfere with or conflict with DAL employment obligations, or require an "absence" from DAL.

31.     DAL's Concurrent Duty policy also requires that pilots inform DAL of all military obligations- including those that occur on a pilot's day off from DAL, those that do not interfere with a pilot's DAL flight obligations, and which do not require a person's "absence" from employment with DAL.

32.     DAL does not prevent pilots from performing employment obligations other than military service on calendar days that a pilot also has DAL obligations and pilots are not required to inform DAL of any non-military obligations occurring on the same day as DAL obligations or on a day off from DAL.

33.     Harassing and discriminatory acts by DAL's management toward the Class and thereby denying them benefits of employment include:

a.     Placing onerous restrictions on taking military leave by

requiring an employee to "request" military leave and indicating that it may or may not be "awarded" by DAL.

b.      Chastising members of the Class for taking "short notice" military leave if pilots submit military leave notices after DAL's deadline for monthly schedule bidding.

c.      DAL's refusal to approve a pilot's military leave request until after that pilot submitted his military orders, even though no documentation may be required under USERRA.

d.      DAL's disapproval and denial of military leave notices.

e.      Harassing questions by DAL management regarding whether the requesting pilot's military leave is voluntary or involuntary.

f.      DAL requests/requires documentation evidencing military leave that is beyond and in addition to the types of documents that may be provided under USERRA. Many of these documents, such as specific military records, are confidential in nature, and the U.S. Department of Defense has refused to release these documents to DAL.

g.      Pilots have been placed on administrative leave and terminated for not providing documents requested by DAL as evidence of military service, even though the documents requested are unavailable and classified

in nature, and beyond the type of documents sufficient to justify military leave as described in USERRA.

h.      Counting periods of military service as non-exempt under USERRA's five-year limits, even though those periods may be exempt.

i.      Terminating or not re-employing pilots for exceeding five-year limits, even though the periods of military service are exempt from the five-year limitations under USERRA.

j.      Threatening termination of pilots solely because the individuals may have military obligations that DAL claimed occur too frequently.

k.      Terminating employees because the individuals had military obligations that DAL claimed occur too frequently.

l.      Accusing pilots of fraudulent activity simply because they may have performed military service on days when they were on sick leave with DAL, and physically unable to fly in accordance with United States Federal Aviation Administration ("FAA") regulations.

m.      Terminating pilots because they may have performed military service on days when they were on sick leave with DAL, and physically unable to fly in accordance with FAA regulations.

n.      DAL managers demand meetings with pilots (on their days

off/personal time/at their own expense) when legitimate military obligations occur over holidays.

o.    Harassing military unit commanders to the point that military unit commanders have written cease and desist letters to DAL.

p.    Using specific individual names in disparaging ways during meetings and briefs with high level U.S. Department of Defense personnel which may have had negative consequences to the professional military career paths of those individuals.  DAL's conduct violates the privacy rights of the Class.

## C.    PLAINTIFF SORENSON'S EXPERIENCES WITH DAL

34.    Sorenson was commissioned as an officer with the Indiana Air National Guard on November 22, 2002, was trained as an F-16 pilot, is presently an A-10 pilot, and presently holds the rank of Major.

35.    Sorenson has been employed by DAL since February 17, 2014, and is presently a Boeing 757/767 First Officer based in Detroit, Michigan.

36.    During his employment with DAL, Plaintiff Sorenson has had numerous periods of short term and long term military leave.

37.    Plaintiff Sorenson would perform more military service and thus receive more compensation from his military units, but for DAL's prohibitions

against Concurrent Duty.

38.     Plaintiff Sorenson has been repeatedly harassed by DAL management in response to his military leave obligations and has been repeatedly instructed to perform less military leave.

39.     Following Sorenson's military leave periods, DAL failed to make pension contributions, under calculated pension contributions, and has made late contributions to his pension accounts.

40.     Following certain periods of military service, Sorenson provided DAL a DD-214 as evidence of his military service. DAL refused Sorenson's reemployment, refused to accept Sorenson's DD-214 as evidence of his military service and refuses to acknowledge his periods of service as exempt from the five-year limitations.

41.     DAL omitted periods of military service as eligible periods with DAL for benefit accrual purposes, thereby reducing his sick time and vacation time accruals. Periods were omitted for benefit accruals but were not included as military periods for pension contribution accruals.

42.     Sorenson repeatedly requested detailed calculations for his pension contributions and his benefit accruals during periods of military service, but DAL refused to provide such explanations.

43.    DAL omitted a large portion of Sorenson's pension contributions until he filed a complaint with the U.S. Department of Labor ("DOL") on September 9, 2016. In response to this DOL complaint, DAL made a late payment to Sorenson's pension account, but the amount is still less than he is owed.

### D.    **PLAINTIFF REEP'S EXPERIENCES WITH DAL**

44.    Reep enlisted with Florida Air National Guard on March 10, 1989, was commissioned and trained as an F-15 pilot, and presently holds the rank of rank of Lieutenant Colonel.

45.    Reep has been employed by the DAL since April 16, 1998, and at all times relevant herein was based in Atlanta, Georgia as a Boeing 757/767ER First Officer.

46.    During his employment with DAL, Plaintiff Reep performed various periods of both short term and long term military leave.

47.    Plaintiff Reep was repeatedly harassed by DAL management because of his military service obligations.

48.    Following Reep's military leave periods, DAL failed to explain how Reep's pension contributions were calculated, refused to make pension contributions, under calculated pension contributions and made late contributions to his pension accounts.

49.    DAL omitted periods of military service as eligible periods with DAL for benefit accruals purposes, thereby reducing his sick time and vacation time accruals.

50.    DAL includes periods of service that are exempt from USERRA's five-year limits.

51.    On or about December 11, 2015, DAL formally notified Reep that DAL was engaged in an ongoing investigation into Reep's use of military leave. This investigation focused on Reep's Concurrent Duty, but at the time the term used by DAL was "double dipping."

52.    On or about July 10, 2016, Reep was instructed to report to DAL to be terminated that day, in accordance with a previous Notice of Intent to Terminate, due to his military service obligations.

53.    The July 2016 Notice of Intent to Terminate was rescinded, and abuse of sick time was added to the military leave accusations in all later correspondence

54.    Reep's Concurrent Duty never interfered with this DAL obligations yet DAL wrongfully terminated Reep on or about October 11, 2016, due to his military service obligations.

**E.    PLAINTIFF SMITH'S EXPERIENCES WITH DAL**

55.    Smith enlisted with the United States Navy on February 6, 1996, was

later commissioned as an officer in 1999 and trained as a pilot on P-3C aircraft, among others.  Smith held the rank of Lieutenant Commander until his retirement on January 31, 2017.

56.    Smith has been employed by DAL since September 3, 2007, and is based in New York, New York, as an Airbus A330 First Officer.

57.    During his employment with DAL, Plaintiff Smith performed various periods of both short term and long term military leave.

58.    Plaintiff Smith has been repeatedly harassed by DAL management in response to his military service obligations.

59.    On or about December 16, 2008, Plaintiff Smith began a series of consecutive military orders that ended with his retirement from military service on January 31, 2017.

60.    Plaintiff Smith's military service periods from December 17, 2008 through March 3, 2014, are exempt from USERRA's five-year limitation.

61.    On October 5, 2016, Smith sent a request for re-employment to DAL indicating that he would be available to return to work on November 16, 2016. Smith was actually reemployed on November 14, 2016.

62.    DAL has refused to accept the documentation provided by Smith evidencing his military leave periods and evidencing that certain periods qualify

for exemptions of USERRA's five-year limits.

63.     DAL placed Smith on involuntary unpaid leave of absence beginning on December 8, 2016, pending its investigation of Smith's military service obligations.

64.     DAL refuses to explain how Smith's pension contributions were calculated, refused to make pension contributions, under calculated pension contributions, and has made late pension contributions to his pension accounts.

65.     DAL omitted periods of military service as eligible periods with DAL for benefit accruals purposes, thereby reducing his sick time and vacation time accruals.

## F.     PLAINTIFF MCLEAN'S EXPERIENCES WITH DAL

66.     McLean was commissioned as an officer with the United States Air Force on May 29, 1991 and was trained as a KC-135 pilot.

67.     McLean joined the Iowa Air National Guard in March, 2003, the U.S. Air Force Reserve in September 2009, and is presently a Lieutenant Colonel in the United States Air Force Reserve.

68.     McLean was originally employed by NWA on December 5, 2000, has been employed by DAL since the 2008 merger with NWA, and was most recently based in Minneapolis-Saint Paul, Minnesota, as an MD88/90 First Officer.

69.     During his employment with DAL, Plaintiff McLean performed various periods of both short term and long term military leave.

70.     Plaintiff McLean has been repeatedly harassed by DAL management in response to his military leave obligations.

71.     Following McLean's military leave periods, DAL refuses to explain how his pension contributions were calculated, refused to make pension contributions, under calculated pension contributions and has made late pension contributions to his pension accounts.

72.     DAL omitted periods of military service as eligible periods with DAL for benefit accruals purposes, thereby reducing McLean's sick time and vacation time accruals.

73.     In February 2016, McLean learned that DAL was investigating his pattern of taking military leave.

74.     On or about May 23, 2016, due to his military service obligations, McLean was involuntarily placed on administrative leave of absence pending his expected termination. As a result of being placed on administrative leave he is receiving less pay and benefits than he would as an active DAL pilot.

75.     On or about February 9, 2017, due to his military service obligations, DAL provided McLean a Notice of Intent to Terminate employment.

76.     Following a meeting with DAL on February 13, 2017 regarding a Notice of Intent to Terminate employment, DAL management left a voice mail for McLean instructing him that he had 24 hours to resign his employment with DAL, and if he did resign, DAL would not contact his military unit.

77.     In this same voice mail, DAL management threatened that if McLean did not voluntarily resign, then "all bets are off, including contact with the military."  Such inappropriate contact would directly jeopardize McLean's security clearances and thus his military employment, along with his ability to be hired at other commercial air carriers.

## V.     CLASS ACTION ALLEGATIONS

78.     Pursuant to Rule 23(a), 23(b)(2), and (b)(3) of the Federal Rules of Civil Procedure, Plaintiffs bring this action on behalf of themselves and all others similarly situated ("the Class") as follows:

> The Class: all pilots who are or were employed by DAL, and were or are members of the United States Armed Services or National Guard, who took military leave from April 16, 1998 to the present.

79.     Throughout discovery in this litigation, Plaintiffs may find it appropriate and/or necessary to amend the definition of the Class. Plaintiffs will formally define and designate a class definition when they seek to certify the Class alleged herein.

80.  **Ascertainable Class:** The Class is ascertainable in that each member of the class can be identified using the information contained in DAL's records.

81.  The members of the Class are sufficiently numerous that joinder of all members is impracticable. The exact size of the Class is ascertainable through DAL's records, including but not limited to DAL's employment records.

82.  **Common Questions of Law or Fact Predominate:** There are questions of law and fact common to the Class, and these questions predominate over individual questions. Such questions include, without limitation:

   (a) whether DAL's failure to provide sick time accrual to pilots on military leave violates USERRA;

   (b) whether DAL's failure to provide vacation accrual to pilots on military leave violates USERRA;

   (c) whether DAL's failure to accurately make pension contributions to pilots on military leave under the provisions of LOA 38 violates USERRA;

   (d) whether DAL's acts and practices have violated USERRA by discriminating against DAL pilots who are members of the Armed Forces and have taken military leave;

   (e) whether Plaintiffs and the Classes are entitled to compensatory and/or liquidated damages; and

(f) whether injunctive and other equitable remedies for the Class is warranted.

83.    **Numerosity:** Plaintiffs believe and allege that DAL employs more than 12,500 pilots, and that approximately 6,500 pilots are or were members of the United States Armed Services or National Guard.

84.    **Typicality:** Plaintiffs' and the Class' claims arise from and were caused by DAL's wrongful conduct. Plaintiffs, like all other Class members, suffered damage as a result of DAL's violations of USERRA.

85.    **Adequacy:** The named Plaintiffs will fairly and adequately represent and protect the interests of the Class and have no conflict of interest with the Class. Plaintiffs seek no relief that is antagonistic or adverse to the members of the Class and the infringement of the rights and the damages they have suffered are typical of all other Class members. Plaintiffs retained adequate counsel who have substantial experience and success in the prosecution of class actions and complex business litigation matters.

86.    **Superiority:** The nature of this action and the nature of laws available to Plaintiffs and the Class make the use of the class action device particularly efficient and an appropriate procedure to afford relief to Plaintiffs and the Class for the wrongs alleged because:

a.    The individual amounts of damages involved, while not insubstantial, are such that individual actions or other individual remedies are impracticable and litigating individual actions would be too costly;

b.    If each Class member was required to file an individual lawsuit, Defendant DAL would necessarily gain an unconscionable advantage since it would be able to exploit and overwhelm the limited resources of each individual Class member with vastly superior financial and legal resources;

c.    The costs of individual suits could unreasonably consumer the amounts that would be recovered;

d.    Proof of a common factual pattern which Plaintiffs experienced is representative of that experienced by the Class and will establish the right of each member of the Class to recover on the cause of actions alleged; and

e.    Individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

87.    Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

88.    Class certification is appropriate pursuant to Fed. R. Civ. Proc. Rule 23(b)(2) because DAL acted on grounds generally applicable to the Class, making appropriate declaratory and injunctive relief to Plaintiffs as a whole. The Class

members are entitled to injunctive relief to end DAL's practices that have caused military affiliated pilots to be excluded from certain benefits and to be treated differently than pilots who have taken comparable types of leave and/or pilots without military affiliations.

89.    Appropriate injunctive relief that addresses all harassing behavior, that removes restrictions on pilots that prevent them from performing Concurrent Duty, and that stops all termination proceedings related to any pilot's military leave.

## FIRST CAUSE OF ACTION

## PENSION CONTRIBUTIONS

## Violations of 38 U.S.C. § 4301 et seq.

90.    Plaintiffs hereby allege and incorporate paragraphs 1-89 above by reference herein.

91.    USERRA requires employers to treat periods of military leave as service with the employer for purposes of vesting and the accrual of benefits, including pension benefits, and requires the employer to contribute to the employee's pension based on the pay rate the employee would have received but for the period of military service. 38 U.S.C. § 4318(3)(A).

92.    Pursuant to USERRA, pilots who take military leave are entitled to the same pension contributions they would have earned had they not taken military leave.

93.    Section 4316 of USERRA provides that any period of absence from employment due to or necessitated by uniformed service is not considered a break in employment, so an employee absent due to military duty must be treated as though they were continuously employed.  "The employer must determine the seniority rights, status, and rate of pay as though the employee had been continuously employed during the period of service." 20 C.F.R. § 1002.193.

94.    A person reemployed under USERRA shall be treated as not having incurred a break in service with the employer or employers maintaining a pension plan by reason of such person's period or periods of service in the uniformed services. 38 U.S.C. § 4318(a)(2)(A).

95.    On reemployment, the employee is treated as not having a break in service with the employer or employers maintaining a pension plan, for purposes of participation, vesting and accrual of benefits, by reason of the period of absence from employment due to or necessitated by service in the uniformed services. 20 C.F.R. § 1002.259.

96.    DAL maintains pilot-only money purchase, defined contribution

pension plans covering all pilots.

97.    Pension contribution rates for all pilots are based on a formula that multiplies a pilot's hourly pay rate times the number of total pay hours (or amounts), times the pension contribution rate. Plaintiffs do not rely on or interpret any CBA when reviewing these calculations; the manner in which DAL calculates and credits military leave and implements its own "verification" process to determine pension contributions violate the plain language of USERRA.

98.    USERRA requires employers to treat periods of military leave as service with the employer for purposes of vesting and the accrual of benefits, including pension benefits, and requires the employer to contribute to the employee's pension based on the rate the employee would have received but for the period of military service. 38 U.S.C. § 4318(3)(A). Those pilots who have taken military leave are entitled to the same pension contributions they would have earned had they not been on military leave.

99.    Employers must make employees' pension plan contributions attributable to employees' periods of military leave "no later than ninety days after the date of reemployment." 20 C.F.R. § 1002.262.

100.    DAL's processes often result in missing payments and payments made more than 90 days following periods of military service.

101.   DAL provides pilots more in pension contributions when they have no military obligations than when they perform military service.

102.   DAL has knowingly and willfully, repeatedly and intentionally underpaid and paid later than 90 days following reemployment pension contributions to pilots who have taken military leave, thereby denying members of the Class a benefit of employment.

103.   The Class' military service obligations are a motivating factor in DAL's denial of the Class' pension contributions.

104.   Plaintiffs are informed and believe that all Class members have been and will continue to have their pension contributions underpaid and paid later than 90 days following reemployment due to their military commitments.

105.   Plaintiffs allege such violations of USERRA were willful and requests liquidated damages to the Class.

## <u>SECOND CAUSE OF ACTION</u>

### (Sick Time Accrual) Violations of 38 U.S.C. § 4301, et seq.

106.   Plaintiffs hereby allege and incorporate paragraphs 1-105 above by reference herein.

107.   Employees on military leave are entitled to the same non-seniority-based benefits provided to other employees on similarly-situated, non-military

related leaves of absence. 38 U.S.C. § 4316(b)(1)(B).

108.    One of the benefits of employment available to the Plaintiffs and all DAL pilots is the accrual of sick time at a rate that is dependent upon the individual's total years of service with DAL (longevity).

109.    Plaintiffs and the Class have not accrued sick time during periods of long-term military leave that cause absences for full bid months for scheduling purposes.

110.    Non-military DAL pilots accrue sick leave during other types of leave, including but not limited to Association Business leave ("Union Leave"), vacation leave, sick leave, jury duty, Known Personal Leaves and certain other personal leaves of absence.

111.    DAL repeatedly and intentionally failed to allow pilots who are on military leave to accrue sick time thereby denying members of the Class a benefit of employment.

112.    DAL's failure to allow its pilots to accrue sick time during their military leave periods while allowing pilots on other similar, non-military leave to accrue sick time violates USERRA.

113.    Plaintiffs' protected status as members of the uniformed services was a motivating factor in DAL's denial of Plaintiffs' benefits employment.

114.    As a direct and proximate result of the conduct of DAL, as set forth in this count, Plaintiffs and the Class have suffered injuries and damages including but not limited to loss of past and future benefits, all to their damage in an amount to be proven at trial.

115.    Plaintiffs allege such violations of USERRA were willful and requests liquidated damages to the Class.

## THIRD CAUSE OF ACTION

### (Vacation Time Accrual) Violations of 38 U.S.C. § 4301, et seq.

116.    Plaintiffs hereby allege and incorporate paragraphs 1-115 above by reference herein.

117.    DAL pilots earn vacation time based on their years of completed service with the DAL.

118.    Plaintiffs and the Class do not and have not accrued vacation time during periods of long-term (greater than 30 days) military leave.

119.    DAL pilots on other forms of non-military including but not limited to Association Business leave ("Union Leave"), vacations, sick leave, jury duty leave, Known Personal Leaves and certain personal leaves of absence, accrue vacation time during their leaves of absences that are longer than a bid month and/or greater than 30 consecutive days.

120.   DAL repeatedly and intentionally failed to allow pilots who are on military leave for full bid months (and/or 30 consecutive days) to accrue vacation time thereby denying members of the Class a benefit of employment.

121.   DAL's failure to allow its pilots to accrue vacation time during their military leave periods while allowing pilots on similar, non-military leave to accrue sick time violates USERRA and Plaintiffs and the Class' service obligations were a motivating factor in DAL's discriminatory actions.

122.   As a direct and proximate result of the conduct of DAL as set forth in this count, Plaintiffs and the Class have suffered injuries and damages including but not limited to loss of past and future benefits, with damages in an amount to be proven at trial.

123.   Plaintiffs allege such violations of USERRA were willful and requests liquidated damages to the Class.

## FOURTH CAUSE OF ACTION

### DISCRIMINATION

### Count 1: General Harassment

124.   Plaintiffs hereby allege and incorporate paragraphs 1-123 above by reference herein.

125.   DAL chided, derided and penalized Plaintiffs and the Class for their

military service by DAL's use of discriminatory conduct and derogatory comments about Plaintiffs' and the Class' military service and military leave obligations.

126.    DAL has published Military Leave Guides that include several provisions that directly conflict with USERRA.

127.    Plaintiffs are informed, believe and thereon allege that Jim Mangie (hereinafter "Mangie") is a management pilot for DAL in DAL's Atlanta headquarters and has and/or had supervisory and managerial control over members of the Class.

128.    Plaintiffs are informed, believe and thereon allege that Steve Tate (hereinafter "Tate") was a management pilot for DAL and based at DAL's Atlanta headquarters and has and/or had supervisory and managerial control over members of the Class.

129.    Plaintiffs are informed, believe and thereon allege that John Carroll (hereinafter "Carroll") is a management pilot for DAL, based in DAL's Detroit pilot base and has and/or had supervisory and managerial control over members of the Class.

130.    Carroll would frequently contact military units to discuss individual pilot's military leave schedules. He would frequently misrepresent himself to military personnel as a military service member rather than a DAL manager to gain

access to the personal, private and restricted records of individual service members to verify their military obligations.

131.    Plaintiffs are informed, believe and thereon allege that James Breaugh (hereinafter "Breaugh") was a management pilot for DAL based in DAL's Detroit pilot base and has and/or had supervisory and managerial control over members of the Class.

132.    Plaintiffs are informed, believe and thereon allege that John O'Neil (hereinafter "O'Neil") was a management pilot and Regional Director and Chief Pilot for DAL based in DAL's Detroit pilot base and has and/or had supervisory and managerial control over members of the Class.

133.    Harassing comments by Defendant and their management have been directed at Plaintiffs and numerous Class members[1] and include:

    a.    Comments by management, training and hiring personnel that DAL should not hire military applicants due to the inconvenience placed on the DAL's ability to schedule.

    b.    Condescending attitude towards and comments about Class members taking military leave.

_____

[1] Many Class members authorized the use of the comments made to them but will not reveal their identities for fear of reprisal and retaliation by Defendant and their supervisory employees.

c.      Pressure to perform military service on days off.

d.      Orders to perform military service on days off.

e.      New hire classes have been briefed that DAL hires private investigators to investigate military leave matters.

f.      Threatening and harassing comments by Tate to members of the Class including, but not limited to:

      i.      "Do your military duties on a non-interference basis with Delta and [you] will not have any problems."

      ii.      "Find a way to not take military leave."

g.      Threatening and harassing comments by Mangie regarding members of the Class including, but not limited to:

      i.      Don't take military leave during training "as [you] could be terminated…"

      ii.      "It's a bad idea to try and go on long-term orders. . ."

      iii.      "I will contact your chain of command . . . to ask them to assign [your long-term orders] to someone else…"

      iv.      Informing new hire classes "do not take military leave during [training]…"

      v.      "Avoid military leave during first year."

vi.      Don't take "alert orders or other completely optional

military duties…"

vii.      Taking "long term military orders as a Delta pilot, though

legal, is unethical."

viii.      "Delta has recently punished … a pilot for getting hired

and then going on long-term military orders shortly after

starting with [DAL]."

ix.      "[My military affairs team] will be contacting [your]

chain of command to check up on the use of military leave any

time near holidays."

x.      "I meet with top military leadership, working out ways to

get Delta military members to spend less time with the military

and more time with [DAL]"

h.      Threatening and harassing comments by Carroll regarding

member of the Class including, but not limited to:

i.      "Avoid military leave during first year."

ii.      "[Y]ou should not voluntarily deploy with your [military]

unit…"

iii.      "[N]ot deploying with your [military] unit was the right

decision for your career at [DAL]…"

    i.    Threatening and harassing comments by both Breaugh and

O'Neil during meetings with "probationary pilots" (those with less than one

year of employment with DAL and who do not have full pilot union

protections) include:

    i.    "You are taking too much military leave."

    ii.    "You are lying about your military service."

    iii.    "Military units are just flying clubs."

    iv.    "Delta should not be hiring reservists."

    v.    "Delta would not have hired you if Delta knew you

    would be taking military leave so often."

134.   DAL ratified every act of harassment performed by their employees

by refusing to act on or investigate complaints made by members of the Class.

135.   This anti-military environment caused and allows discriminatory

practices against Class members with military service obligations.

136.   The specific acts perpetrated by DAL by and through its managerial

employees, constituted a pattern and practice of intentional harassment related to

the Class' service obligations and military affiliation.

137.   This harassment establishes that Plaintiffs' and the Class' membership

in the United States Armed Services or the National Guard is a motivating factor in denying employment benefits to Plaintiffs and the Class.

138.    Plaintiffs' protected status was a substantial motivating factor DAL's denial of benefits, conditions and privileges of Plaintiffs' employment without good cause. Pilots on other forms of leave or pilots with other potential obligations such as nonmilitary concurrent duty have not been subjected to the same treatment and conduct by DAL management.

139.    As a direct and proximate result of the conduct of DAL, as set forth in this count, Plaintiffs and the Class have suffered injuries and damages including but not limited to loss of past and future benefits, all to his damage in an amount to be proven at trial.

140.    Plaintiffs allege such violations of USERRA were willful and requests liquidated damages to the Class.

## Count 2: Concurrent Duty

141.    Plaintiffs hereby allege and incorporate paragraphs 1-140 above by reference herein.

142.    Like many civilian careers, military participation is no longer tied to being in a specific location or to work during specific hours during a specific day. Military reserve and National Guard participation has evolved and may include

correspondence courses, remote location flex drilling, at home administrative tasks, and duties involving fixed geographic locations or deployments, among others.

143.   DAL's policies prohibit pilots from performing any military obligations on the same calendar day they may have obligations to DAL ("Concurrent Duty"), even if those military service obligations do not interfere with or conflict with DAL employment obligations, or require an "absence" from DAL.

144.   DAL's Concurrent Duty policy requires that pilots inform DAL of all military obligations, including those that occur on a pilot's day off from DAL, those that do not interfere with a pilot's DAL flight obligations, and which do not require a person's "absence" from employment with DAL.

145.   DAL does not prevent pilots from performing employment obligations other than military service on calendar days that a pilot also has DAL obligations and pilots are not required to inform DAL of any non-military obligations occurring on the same day as DAL obligations or on a day off from DAL.

146.   Pilots with military service obligations that perform Concurrent Duty have been subjected to investigations and forced to meet with management personnel on their own time and at their own expense.

147.   DAL refused to pay wages and benefits to Pilots with military service obligations that perform Concurrent Duty, even if the pilots performed their DAL employment obligations.

148.   Pilots with military service obligations that perform Concurrent Duty have been terminated, threatened with termination and have been placed on administrative leave.

149.   DAL's Concurrent Duty policy and practices discriminate against Plaintiffs and the Class who have performed Concurrent Duty with military service obligations.

150.   DAL's policy and practices relative to Concurrent Duty have resulted in lost wages, lost benefits, lost opportunities for military participation and pay, thereby denying members of the Class benefits of employment.

151.   The Class' military service obligations are a motivating factor in DAL's denial of benefits of employment.

152.   DAL has threatened termination of pilots for performing Concurrent Duty with military service obligations.

153.   DAL has terminated pilots for performing Concurrent Duty with military service obligations.

154.   Plaintiffs are informed and believe that all Class members have been

and will continue to be damaged by DAL's policies due to their military commitments.

155.    Plaintiffs allege such violations of USERRA were willful and requests liquidated damages to the Class.

## Count 3: Five-Year Limit

156.    Plaintiffs hereby allege and incorporate paragraphs 1-155 above by reference herein.

157.    USERRA provides protections for up to five years of military service time, subject to some exceptions which can extend that time beyond five years.

158.    When DAL pilots whose military service obligations were exempt from USERRA's five-year limit, DAL counts those against the pilot's five-year limit.

159.    DAL requires its pilots to provide all dates of their military service obligations, even if those military service obligations occur on days off from DAL, on personal time, or do not conflict with DAL obligations (Concurrent Duty). DAL then includes all such military service days in its military leave counters as non-exempt, even if those military obligations did not result in an "absence" from DAL and/or if those military periods are actually exempt from USERRA's five-year limit.

160.    USERRA also protects days that are not directly covered by military orders such as travel days, days between consecutive orders and days following military deactivation but prior to reemployment, but DAL either fails to include these days as military leave days or includes them as non-exempt even though they may be exempt from the five-year limit.

161.    DAL has threatened termination of pilots for exceeding the five-year limit, even though the periods are exempt and/or did not require an "absence" from DAL employment.

162.    DAL has terminated pilots for exceeding the five-year limit, even though the periods are exempt and/or did not require an "absence" from DAL employment.

163.    DAL's discriminatory processes result in lost wages, lost benefits, lost opportunities for military participation and pay, and severe financial harm to pilots who have taken military leave, thereby denying members of the Class benefits of employment.

164.    The improper calculations of non-exempt days and the addition of military service days when pilots were not "absent" from DAL results in pilots performing less military service than they otherwise would, resulting in less military pay and less overall military readiness, due to pilots' concerns of

exceeding the five-year limit.

165.   The Class' military service obligations are a motivating factor in DAL's denial of the Class' wages and benefits.

166.   Plaintiffs are informed and believe that all Class members have been and will continue to be harmed by DAL's policies due to their military commitments.

167.   Plaintiffs allege such violations of USERRA were willful and requests liquidated damages to the Class.

## **PRAYER FOR RELIEF**

**WHEREFORE**, based on the foregoing, Plaintiffs, individually and on behalf of the Class, request that the Court enter an Order as follows:

1.     Determining that this action may proceed and be maintained as a class action, designating Plaintiffs as Lead Plaintiffs, and certifying Plaintiffs as the Class representatives under Rule 23 of the Federal Rules of Civil Procedure and their counsel of record as Class Counsel;

2.     Declaring that the acts and practices complained of herein are unlawful and are in violation of USERRA;

3.     Requiring that DAL fully comply with the provisions of USERRA by providing Plaintiffs and Class Members all employment benefits denied them as a

result of DAL's unlawful acts and practices described herein;

4.     Enjoining DAL from taking any action against Plaintiffs and members of the Class that fail to comply with the provisions of USERRA;

5.     Awarding fees and expenses, including attorneys' fees pursuant to 38 U.S.C. § 4323(h).

6.     Awarding Plaintiffs and the Class prejudgment interest on the amount of lost wages or employment benefits due;

7.     Ordering that DAL pay compensatory and/or liquidated damages in an amount equal to the amount of lost compensation and other benefits suffered due to DAL's willful violations of USERRA;

8.     Grant an award for costs of suit incurred;

9.     Plaintiffs seek injunctive relief to prevent DAL from terminating any pilot, placing any pilot in non-active status, or from placing any pilot in an unpaid leave status based on or because of their military service obligations, which include but are not limited to Concurrent Duty, exceeding five-year limitations, or for performing military duty while in any pay status with DAL.

10.     Grant such other and further relief as may be just and proper and which Plaintiffs and the Class may be entitled to under all applicable laws.

## **<u>DEMAND FOR JURY TRIAL</u>**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs

hereby demand a trial by jury of all issues triable as of right by a jury in the above

action.

Respectfully submitted this 13th day of February, 2017.

s/  Joseph Coomes, Esq.
Georgia Bar No. 184999
MCCONNELL & SNEED, LLC
990 Hammond Drive, Suite 840
Atlanta, Georgia 30328
Tel: (404) 220-9994
Fax: (404) 665-3090
Email: ajc@mcconnellsneed.com


Brian J. Lawler, Esq.
California Bar No. 221488
PILOT LAW, P.C.
1551 9th Avenue
San Diego, California  92101
Tel: (866) 512-2465
Fax: (619) 231-4984
Email: blawler@pilotlawcorp.com
*Pro Hac Vice* application to be filed

Charles M. Billy, Esq.
California Bar No. 247046
THE LAW OFFICES OF CHARLES M.
BILLY, P.C.
22706 Aspan Street, Suite 305
Lake Forest, California  92630
Tel: (949) 357-9636
Fax: (949) 715-4311
Email: cbilly@cmblawcorp.com
*Pro Hac Vice* application to be filed


Gene J. Stonebarger, Esq.
California Bar No. 209461
STONEBARGER LAW, P.C.
75 Iron Point Circle, Suite 145
Folsom, California 95630
Tel: (916) 235-7140
Fax: (916) 235-714
Email: gstonebarger@stonebargerlaw.com
*Pro Hac Vice* application to be filed

*Attorneys for Plaintiffs and the Class*