## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

JEREMY SORENSON, *an individual,*      *
*et al.,*      *
    *
        Plaintiffs,      *
    *
      v.      *        1:17-CV-00541-ELR
    *
DELTA AIR LINES, INC.,      *
*a Delaware Corporation,*      *
    *
        Defendant.      *

---

# O R D E R

---

This matter is before the Court on Defendant Delta Air Lines, Inc.'s motion to dismiss Plaintiffs' Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). [Doc. 13]. For the reasons stated herein, the Court denies Defendant's motion.

## I.     Background

     A. <u>Procedural History</u>

Plaintiffs Jeremy Sorenson, Randal Reep, Randal Smith, and Adam McLean, on behalf of themselves and all others similarly situated, originally filed suit on February 13, 2017, against Defendant Delta Air Lines, Inc. alleging claims

pursuant to the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. § 4301 *et seq.* ("USERRA"). Compl. [Doc. 1]. On March 10, 2017, Plaintiffs filed their First Amended Complaint, adding Plaintiff James Doyle. Am. Compl. [Doc. 12]. On April 6, 2017, Defendant filed a "Motion to Dismiss Plaintiffs' First Amended Complaint for Lack of Standing and for Failure to State a Cause of Action." [Doc. 13].

B. Allegations in Plaintiffs' Amended Complaint

Plaintiff Sorenson has been a pilot employed by Defendant since February 17, 2014, and is a Major in the Indiana National Guard. Am. Compl. at ¶¶ 35-36. Plaintiff Reep was employed as a pilot for Defendant from April 16, 1998 to October 11, 2016, and is a Lieutenant Colonel of the Florida Air National Guard. Id. at ¶¶ 47-48, 57. Plaintiff Smith has been a pilot for Defendant since September 3, 2007, and was a Lieutenant Commander of the United States Navy until his retirement on January 31, 2017. Id. at ¶¶ 58-59. Plaintiff McLean was originally hired by Northwest Airlines Corp. ("NWA") on December 5, 2000 and was employed by Defendant since Defendant's 2008 merger with NWA until his resignation on February 22, 2017. Id. at ¶¶ 72, 83. Plaintiff McLean was a commissioned officer with the United States Air Force and is currently a Lieutenant Colonel in the United States Air Force Reserve. Id. at ¶ 71. Plaintiff Doyle was a pilot employed by Defendant from April 16, 2007 until his resignation

2

on September 8, 2016, was an officer with the United States Air Force, and is presently a Lieutenant Colonel with the United States Air Force Reserve. Id. at ¶¶ 84-86. During their employment with Defendant, Plaintiffs had numerous periods of short and long term military leave. Id. at ¶¶ 37, 49, 60, 73, 87.

The Amended Complaint asserts similar, if not identical, factual allegations as to all five Plaintiffs: Plaintiffs were repeatedly harassed by Defendant's management due to their military leave obligations, id. at ¶¶ 39, 50, 61, 74, 88; Defendant refused to explain how pension contributions were calculated, refused to make pension contributions, under-calculated pension contributions, and made late pension contributions, id. at ¶¶ 40, 51, 67, 75, 89; Defendant failed to explain how Plaintiffs' profit sharing payments were calculated, refused to make profit sharing payments, and under calculated profit sharing payments, id. at ¶¶ 41, 52, 68, 76, 90; and Defendant omitted periods of military service as eligible periods for benefit accruals purposes, thereby reducing Plaintiffs' sick time and vacation time accruals, id. at ¶¶ 43, 53, 69, 71, 91.[1] Plaintiff Sorenson also asserts that he would have performed more military service, and thus would have received more compensation from his military units, but for Defendant's alleged prohibitions against concurrent duty. Id. at ¶ 38.

---

[1] Plaintiff Sorenson asserts that he repeatedly requested detailed calculations for his pension contributions and profit sharing distributions, but Defendant failed to provide such explanations. Am. Compl. at ¶¶ 44-45. Plaintiff Sorenson alleges that Defendant omitted a large portion of his pension contributions until he filed a complaint with the U.S. Department of Labor on September 9, 2016. Id. at ¶ 46.

Plaintiffs Reep, Smith, McLean, and Doyle are no longer employed by Defendant. Plaintiff Reep alleges that on or about December 11, 2015, Defendant notified him that it was investigating his use of military leave. Id. at ¶ 54. In July 2016, Defendant gave Plaintiff Reep a Notice of Intent to Terminate due to his military service obligations. Id. at ¶ 55. The Notice was rescinded, but Plaintiff Reep was later accused of abusing sick time and was terminated on October 11, 2016. Id. at ¶¶ 56-57. Plaintiff Smith states that he went on military leave on December 17, 2008, and that his leave from December 17, 2008, through March 3, 2014, is exempt from USERRA's five-year limitation.[2] Id. at ¶ 63. Plaintiff Smith requested re-employment with Defendant on October 5, 2016, and was reemployed on November 14, 2016. Id. at ¶ 64. Plaintiff Smith alleges that Defendant refused to accept the documentation he provided of his military leave periods to show certain periods are exempt from USERRA's five-year limitation and, pending Defendant's investigation of Plaintiff Smith's military service obligations, Defendant placed Plaintiff Smith on involuntary leave beginning December 8, 2016. Id. at ¶¶ 65-66. Plaintiff McLean learned that Defendant was investigating his military service obligations in February 2016, and on May 23, 2016, Plaintiff McLean was placed on involuntary administrative leave. Id. at ¶¶ 78-79. Plaintiff

---

[2] As discussed in section III(C)(3) *infra*, USERRA provides protections for up to five years of military service time, subject to exceptions which can extend that time beyond five years. 38 U.S.C. § 4312(c).

McLean alleges that on February 9, 2017, Defendant provided Plaintiff McLean a Notice of Intent to Terminate his employment. <u>Id.</u> at ¶ 80. Plaintiff McLean further avers that on February 13, 2017, Defendant left him a voicemail "instructing him to resign his employment with [Defendant], and if he did resign, [Defendant] would not contact his military unit. . . [Defendant's] management threatened McLean that if he did not voluntarily resign, then 'all bets are off, including contact with the military.'" <u>Id.</u> at ¶¶ 81-82. On February 22, 2017, Plaintiff McLean resigned. <u>Id.</u> at ¶ 83. On January 22, 2016, Plaintiff Doyle attended a meeting with Defendant's management regarding his military service obligations. <u>Id.</u> at ¶ 92. Defendant demanded that Plaintiff Doyle provide documents to support his military leave commitments that Plaintiff Doyle alleges are beyond those required by USERRA and to attend other meetings regarding his military service obligations. <u>Id.</u> at ¶¶ 92-93. On May 4, 2016, Defendant placed Plaintiff Doyle on paid leave while it investigated his military service obligations. <u>Id.</u> at ¶ 95. Plaintiff Doyle alleges that Defendant threatened to terminate him and commence litigation against him; due to this hostile environment, Plaintiff Doyle resigned from Defendant's employ on September 8, 2016. <u>Id.</u> at ¶¶ 96-97.

Plaintiffs allege that Defendant has a "wide-ranging pattern of harassment against its pilots who have military service obligations that not only violates USERRA, but shows a systemic policy or practice of discrimination." <u>Id.</u> at ¶ 30.

Specifically, Plaintiffs allege that Defendant's policies prohibit pilots from performing any military obligations on the same calendar day they have obligations to Defendant ("concurrent duty"), even if those military service obligations do not interfere or conflict with employment obligations with Defendant or require an absence from Defendant's employ. Id. at ¶ 31. Defendant also requires its pilots to inform Defendant of all military obligations, but not other non-military employment obligations. Id. at ¶¶ 32-33. Plaintiffs also allege that Defendant engages in harassing and discriminatory acts towards Plaintiffs, including:

> a. Placing onerous restrictions on taking military leave by requiring an employee to "request" military leave and indicating that it may or may not be "awarded" by [Defendant].

> b. Chastising members of the Class for taking "short notice" military leave if pilots submit military leave notices after [Defendant's] deadline for monthly schedule bidding.

> c. [Defendant's] refusal to approve a pilot's military leave request until after that pilot submitted his military orders, even though no documentation may be required under USERRA.

> d. [Defendant's] disapproval and denial of military leave notices.

> e. Harassing questions by [Defendant's] management regarding whether the requesting pilot's military leave is voluntary or involuntary.

> f. [Defendant's] requiring documentation of a pilot's military leave beyond that which is required by USERRA. Pilots who do not comply with [Defendant's] requirements are placed on administrative leave or terminated.

g. Counting periods of military service as non-exempt under USERRA, even if those periods are exempt, and terminating or not re-employing pilots for exceeding the five-year limitations under USERRA even if their service was exempt.

h. Threatening to terminate and terminating pilots because they had military obligations that [Defendant] claimed occur too frequently.

i. Accusing pilots of fraudulent activity and terminating them because they performed military duty on days when they were on sick leave with [Defendant], and physically unable to fly in accordance with United States Federal Aviation Administration ("FAA") regulations.

j. [Defendant's] managers demanding meetings with pilots on their days off and at their own expense to explain legitimate military obligations that occur over holidays.

k. Harassing military unit commanders to the point that military unit commanders have written cease and desist letters to [Defendant].

l. Harassing pilots about their military service obligations to such a degree that they resign.

m. Disparagingly using individual pilot's names during briefs with new hire pilot classes to dissuade new employees from taking military leave.

n. Disparagingly using individual pilot's names during meetings with high level U.S. Department of Defense personnel.

Id. at ¶34(a)-(n). [3]

Plaintiffs bring five causes of action for: (1) pension contributions in violation of USERRA; (2) sick time accrual in violation of USERRA; (3) vacation time accrual in violation of USERRA; (4) profit sharing in violation of USERRA;

---

[3] Plaintiffs also set forth class action allegations.  Am. Compl. at ¶¶ 98-109.

and (5) discrimination in violation of USERRA.  Plaintiffs' fifth cause of action for discrimination is divided into three counts: (1) general harassment; (2) discrimination via the Concurrent Duty policy; and (3) discrimination based on a miscalculation of USERRA's five-year limit.

## II.   Legal Standards

### A. 12(b)(1): Lack of Subject Matter Jurisdiction

There are two types of challenges to a district court's subject matter jurisdiction:  facial attacks and factual attacks.  A facial attack on a complaint "require[s] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in [the] complaint are taken as true for the purposes of the motion."  Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990) (citation and internal quotation omitted, first and second alteration in original).  Alternatively, a factual attack "challenge[s] the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered."  Id. (internal quotation marks and citation omitted).  When factual attacks are made,

> the trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

Id. (internal quotation marks and citation omitted).

    B. 12(b)(6): Failure to State a Claim

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007); FED. R. CIV. P. 12(b)(6). The plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. See Erickson v. Pardus, 551 U.S. 89, 93 (2007); FED. R. CIV. P. 8(a). In ruling on a motion to dismiss, the court must accept the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff. See Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003).

A claim is plausible where the plaintiff alleges factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A plaintiff is not required to provide "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal quotation and citation omitted). The plausibility standard requires that a plaintiff allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" that supports the plaintiff's claim. Id. at 556. A complaint may survive a motion to

dismiss for failure to state a claim even if it is "improbable" that a plaintiff would be able to prove those facts and even if the possibility of recovery is extremely "remote and unlikely." Id.

### C. Summary of USERRA

Congress enacted USERRA

> (1) to encourage noncareer service in the uniformed services by eliminating or minimizing the disadvantages to civilian careers and employment which can result from such service; (2) to minimize the disruption to the lives of persons performing service in the uniformed services as well as to their employers, their fellow employees, and their communities, by providing for the prompt reemployment of such persons upon their completion of such service; and (3) to prohibit discrimination against persons because of their service in the uniformed services.

38 U.S.C. § 4301 (2012).  USERRA prohibits discrimination in employment if the employee's membership in the armed services "is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership."  38 U.S.C. § 4311(c)(1).  In order to establish a prima facie case of discrimination under USERRA, "the plaintiff must demonstrate by a preponderance of the evidence that [his] military membership or obligation was a motivating factor in the employer's decision." Landolfi v. City of Melbourne, Fla., 515 F. App'x 832, 934 (11th Cir. 2013) (citing Coffman v. Chugach Support Servs., Inc., 411 F.3d 1231, 1238 (11th Cir. 2005)).

## III.   Discussion

Defendant argues that Plaintiffs' causes of action alleging that Defendant denied them proper pension contributions, sick time and vacation time accrual, and profit sharing payments should be dismissed.  Defendant argues that Plaintiffs "fail to assert even the barest factual allegations that could make this litany of boilerplate claims plausible."  Br. in Supp. of Def.'s Mot. to Dismiss Pls.'s First Am. Compl. for Lack of Standing and for Failure to State a Cause of Action at 8 [Doc. 13-1] ("Def.'s Br.").

### A. Cause of Action I: Pension Contributions

Plaintiffs allege that Defendant maintains pilot-only money purchase defined contribution pension plans.  Am. Compl. at ¶ 116.  Contribution rates for these plans, allege Plaintiffs, are based on a formula and a "verification" process that violates the plain language of USERRA.  Id. at ¶ 117.  Plaintiffs aver that Defendant's processes often result in missing and late payments as well as underpaid payments for pilots who have taken military leave.  Id. at ¶¶ 120-122.

Pursuant to USERRA, a person reemployed following military service "shall be treated as not having incurred a break in service with the employer or employers maintaining the [pension benefit] plan[.]"  38 U.S.C. § 4318(a)(2)(A).[4]  Defendant

---

[4]  To compute an employer's liability or the employee's contributions, the employee's compensation during the period of service shall be computed: "(A) at the rate the employee would have received but for the period of service . . . or (B) in the case that the determination of

11

does not dispute that "where an employer contributed to an employee's pension plan based on continuing employment, after an employee returns from military leave, the employer is obliged to make a pension calculation to determine the amount to contribute to the employee's pension plan based on the period of the military leave." Def.'s Br. at 10 (citing 38 U.S.C. § 4318). Defendant argues, however, that Plaintiffs' "boilerplate allegations do not provide facts that plausibly suggest a violation of the law." Id. The Court disagrees.

Plaintiffs allege in their Amended Complaint that Defendant failed to make, under-calculated, and made late pensions contributions. Plaintiff Sorenson requested detailed calculations for his pension contributions, but Defendant refused to provide such calculations. Plaintiffs allege that Defendant based pension contribution rates for all pilots on a formula and that the manner in which Defendant calculates and credits military leave and implements its own verification process to determine pension contributions violates USERRA. Plaintiffs further allege that Defendant's processes often result in late or missing payments following periods of military service and the underpayment or late payment of pension contributions for pilots who have been reemployed following military leave. Moreover, Plaintiffs allege that Defendant provides pilots more in pension

---

such rate is not reasonably certain, on the basis of the employee's average rate of compensation during the 12-month period immediately preceding such period . . . ." 38 U.S.C. § 4318(b)(3).

contributions when they have no military obligations than when they perform military service.

The Court must construe the pleadings of a complaint broadly and in the light most favorable to the plaintiff in reviewing a motion to dismiss. Watts v. Florida Int'l Univ., 495 F.3d 1289, 1295 (11th Cir. 2007). As explained above, a plaintiff is not required to provide "detailed factual allegations" to survive a motion to dismiss, and as long as a plaintiff provides "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action[,]" a plaintiff's claim will survive dismissal. Twombly, 550 U.S. at 555. Plaintiffs have satisfied that obligation with regard to their cause of action for violations of USERRA's pension contribution protections.[5]

---

[5] The Court also finds the cases cited by Defendant distinguishable from this one. In Tartt v. Magna Health Systems, the court dismissed the plaintiff's claims brought pursuant to USERRA as conclusory statements. Case No. 13-cv-8191, 2016 WL 6585281, at *4 (N.D. Ill. Nov. 7, 2016). The Court reviewed the underlying complaint in that action and finds it to be distinguishable from the amended complaint here. In Tartt, the plaintiff alleged only that "Defendants . . . conspired, violated USERRA and discriminated to deny Benefits of Employment including but not limited to promotion, right to practice, committed fraud, filed false claims and perjury in District and Appellate Court." Tartt v. Magna Health Systems, Case: 1:13-cv-08191, Dkt. 200 at ¶¶ 27-28 (N.D. Ill. April 20, 2016). In contrast, here, Plaintiffs specifically allege how Defendant's pension payments violate USERRA and that the methodology employed by Defendant violates USERRA. The other three cases cited to by Defendant are likewise inapposite. In Spurlin v. Christwood, LLC, the court dismissed plaintiff's claims because plaintiff failed to allege that working as part of the National Discovery Recovery Framework is a "uniformed service" protected by USERRA. Civil Action No. 16-12692, 2016 WL 6476131, at *2-3 (E.D. La. Nov. 2, 2016). In Tukay v. United Airlines, Inc., the court dismissed plaintiff's claim for employment discrimination on the basis of military service because plaintiff alleged only that he was a veteran and in dismissing him, defendant failed to advance his interest as a veteran. Case. No. 14-cv-04343-JST, 2015 WL 3623814, at *4 (N.D. Cal. June 10, 2015). Finally, in Hunt v. Klein, the court dismissed plaintiff's USERRA claims because plaintiff failed to make any factual allegations regarding defendant's

### B. Causes of Action II-IV: Sick Time Accrual, Vacation Time Accrual, and Profit Sharing

Plaintiff's next three causes of action allege that Defendant denied certain benefits protected by USERRA. First, Plaintiffs argue that they have not accrued sick or vacation time during periods of long-term military leave that cause absences for full months, even though non-military pilots accrue sick or vacation leave during other types of leave. Am. Compl. at ¶¶ 129-30, 138, 140. Plaintiffs further allege that although Defendant's policies provide that pilots on military leave will participate in annual profit sharing based on imputed income, profit sharing payments to Plaintiffs omitted period of military service and are less than what Plaintiffs would receive had Defendant used their imputed income for these payments. Id. at ¶¶ 146, 148-49. These practices, allege Plaintiffs, were motivated by Plaintiffs' protected status as members of uniformed services and violate USERRA. Id. at ¶¶ 132-33, 142, 151.

USERRA requires that an employee on military leave be "deemed to be on furlough or leave of absence while performing such service; and . . . entitled to such other rights and benefits not determined by seniority as are generally provided by the employer . . . ." 38 U.S.C. § 4316(b)(1)(A)-(B). Moreover,

---

consideration of plaintiff's military service and gave no basis to infer a discriminatory motivation. No. 10 cv 02778(GBD), 2011 WL 651876, at *4 (S.D.N.Y. Feb. 10, 2011). Here, Plaintiffs have pled sufficient facts to allege a link between Defendant's behavior and Plaintiffs' status as military service members.

> If the non-seniority benefits to which employees on furlough or leave
> of absence are entitled vary according to the type of leave, the
> employee must be given the most favorable treatment accorded to any
> comparable form of leave when he or she performs service in the
> uniformed services. In order to determine whether any two types of
> leave are comparable, the duration of the leave may be the most
> significant factor to compare.

20 C.F.R. § 1002.150(b). Defendant argues that Plaintiffs only allege that certain pilots have not accrued sick and vacation time during periods of military leave longer than 30 days whereas pilots accrue leave for other types of non-military leave. Defendant argues that Plaintiff has not alleged that pilots accrue leave for non-military leave in excess of a month. Finally, Defendant argues that Plaintiff's claim regarding Defendant's profit sharing payments is too general.

The Court agrees with Defendant insofar as Defendant argues that Plaintiffs have not specifically alleged that pilots accrue leave during non-military absences of more than one month. However, Plaintiffs need not prove their case at this stage in the litigation. Plaintiffs' allegations regarding the disparity in accrued leave between those taking military leave and those taking non-military leave is enough to "raise a reasonable expectation that discovery will revel evidence" that supports Plaintiffs' claim. Twombly, 550 U.S. at 555. The same is true of Plaintiffs' profit sharing claim. Plaintiffs have alleged that what they received as profit sharing payments was less than what they should have received under a profit sharing plan that correctly imputed into their income the hours they would have flown had they

not had military service obligations. Accordingly, the Court finds that Plaintiffs have alleged plausible causes of action for violations of the protections afforded pursuant to USERRA related to vacation and sick leave accrual and profit sharing.

### C. Cause of Action V: Discrimination

Plaintiffs' final cause of action is for discrimination in violation of USERRA. Plaintiffs split this cause of action into three counts: (1) general harassment, (2) discrimination via Defendant's concurrent duty policies, and (3) discrimination based on a miscalculation of the five-year limitation.

#### 1. General harassment

Plaintiffs allege that Defendant "chided, derided and penalized Plaintiffs . . . through its harassing conduct and derogatory comments about their military service obligations[]" and that Defendant's Military Leave Guides include several provisions that directly conflict with USERRA. Am. Compl. at ¶¶ 155-56. Plaintiffs allege harassing comments by Defendant and its management have been directed at Plaintiffs. Id. at ¶ 166.[6] Plaintiffs specifically name six management

---

[6] These comments include:
    a. Comments by management, training and hiring personnel that Defendant should not hire military applicants due to the inconvenience on the Defendant's ability to schedule.
    b. Harassing comments about Class members taking military leave.
    c. Pressure to perform military service on days off.
    d. Orders to perform military service on days off.
    e. Briefing new hire classes that Defendant hires private investigators to investigate military leave matters.
    f. Accusing Class members of lying about periods of military service.
Am. Compl. at ¶ 166(a)-(f).

pilots for Defendant who have supervisory and managerial control over Plaintiffs and who, Plaintiffs allege, made threatening and harassing comments to Plaintiffs. Id. at ¶¶ 157-59, 161-63, 165, 166(g)-(j).  Plaintiffs further aver that Defendant ratified these acts of harassment by refusing to act on or investigate complaints. Id. at ¶ 167.

USERRA prohibits discrimination on the basis of military status.  See 38 U.S.C. § 4301(a).  "Because USERRA was enacted to protect the rights of veterans and members of the uniformed services, it must be broadly construed in favor of its military beneficiaries."  Hill v. Michelin N. Am., Inc., 252 F.3d 307, 312-13 (4th Cir. 2001).  Section 4311 provides that a member of uniformed service "shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership." 38 U.S.C. § 4311(a) (emphasis added).  A "benefit of employment" is defined broadly as "any advantage, profit, privilege, gain, status, account, or interest (including wages or salary for work performed) that accrues by reason of an employment contract or agreement[.]" 38 U.S.C. § 4303(2). An employer engages in a prohibited act under Section 4311 "if the person's membership. . . is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership." 38 U.S.C. § 4311(c)(1).  Thus, an individual's military status need not be the sole factor for

the decision; it needs only to be a motivating factor.  Finally, harassment claims brought pursuant to USERRA, like those under Title VII, should be analyzed using the principle announce by the Supreme Court in Meritor Savings Bank v. Vinson, 477 U.S. 57, 67 (1986): harassment is actionable when it is "sufficiently severe or pervasive to alter conditions of [the victim's] employment and create an abusive working environment." See Dees v. Hyundai Motor Mfg. Ala., LLC, 605 F. Supp. 2d 1220, 1228 (M.D. Ala. 2009).  "Among the factors to be considered in assessing a harassment claim are the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. (citations and punctuation omitted).[7]

Defendant argues that Plaintiffs' harassment claim should fail because Plaintiffs did not properly allege a severe and pervasive hostile work environment and because Plaintiffs fail to identify a statement by anyone employed by Defendant to any of the Plaintiffs.  The Court disagrees and finds the facts alleged by Plaintiffs give Defendant fair notice of their claim and the grounds upon which it rests.  See Erickson, 551 U.S. at 93 (quoting Twombly, 550 U.S. at 555)). According to the Amended Complaint, Defendant's management made frequent

---

[7] Neither the Supreme Court nor the Eleventh Circuit Court of Appeals has decided whether a hostile work environment claim is cognizable under USERRA.  The Eleventh Circuit addressed but declined to decide this issue in Dees v. Hyundai Motor Mfg. Alabama, LLC, 368 F. App'x 49, 53 (11th Cir. 2010).  For purposes of this decision, the Court assumes, without deciding, that such a claim is cognizable.

derogatory comments regarding Plaintiffs' and other Class members' military service. Defendant's management also took action that went beyond mere words. By demanding additional documentation to support military leave commitments or leaving a threatening voicemail, Defendant and its management were both implicitly and explicitly threatening Plaintiffs' continued employment by Defendant. Indeed, as outlined, *supra*, four Plaintiffs either resigned or were terminated due in part, they allege, to their military service. Moreover, Plaintiffs allege that this behavior occurred frequently. Accepting as true Plaintiffs' allegations, the Court finds that they meet the standard for severe or pervasive harassment.

Defendant cites to multiple cases in a two-page long string cite in support of its argument that Plaintiffs' allegations fall short. However, of the seven cases parenthetically cited to by Defendant, only one was before the court on a motion to dismiss. Nevertheless, the Court finds each of these cases distinguishable from the facts at issue here. For example, in Perez, the court dismissed the plaintiff's hostile work environment claim upon the defendant's motion to dismiss after finding that the plaintiff still worked for the defendant and the complaint referenced only one negative statement made regarding the plaintiff's military status. Perez v. Denver Fire Dep't, Civil Action No. 15-cv-00457-CBS, 2016 WL 379571, at *6 (D. Colo. Feb. 1, 2016). Similarly, in Vega-Colon, the court granted summary judgment

where the plaintiff alleged a very limited number of comments that were not objectively offensive. Vega-Colon v. Wyeth Pharms., 625 F.3d 22, 32 (1st Cir. 2010).[8] Here, as discussed above, multiple and frequent negative statements and actions are alleged by Plaintiffs. Accordingly, the Court finds that Plaintiffs have alleged a plausible hostile work environment claim.

### 2. Concurrent duty

Plaintiffs allege that Defendant's policies prohibit pilots from performing any military obligations on the same calendar day they have obligations to Defendant, referred to as "concurrent duty." Am. Compl. at ¶ 176. This is so even when those military service obligations do not interfere with or conflict with employment obligations with Defendant, or require any absence from Defendant's employ. Id. In contrast, Defendant does not prevent pilots from performing non-military employment obligations on calendar days that a pilot also has obligations to Defendant. Id. at ¶ 178. Plaintiffs allege that Defendant refused to pay wages and benefits to, terminated, or threatened with termination pilots with military

---

[8] Defendant also cites to Spann v. City of Los Angeles, wherein the court granted summary judgment as to the plaintiff's hostile work environment claim based on, among other reasons such as the defendant city's affirmative defense, a finding that the alleged harassment did not amount to objectively severe and pervasive harassment. Case 2:14-cv-01751-AB-AGR, Dkt. 46 (C.D. Cal. July 24, 2015). The court came to this conclusion after nineteen pages of analysis of the facts and evidence raised during discovery. Id. It is notable, however, that the court previously held that the plaintiff's allegations of severe and pervasive harassment were sufficient to state a distinct cause of action for hostile work environment. See Spann v. City of Los Angeles, Case No. CV 14-1751 ABC (AGRx), 2014 WL 12703994, at *4 (C.D. Cal. April 3, 2014). It was only after a full discovery period that the court determined the allegations did not rise to a claim under USERRA.

service obligations who performed concurrent duty, even if the pilots performed their employment obligations to Defendant. Id. at ¶¶ 180-81. Plaintiffs allege that their military service obligations were a motivating factor in Defendant's denial of benefits of employment, such as lost wages, lost benefits, and lost opportunities. Id. at ¶¶ 184-85. Defendant argues that Plaintiffs' allegations are based on a misapplication of USERRA and that Defendant's Concurrent Duty policy is lawful under USERRA.

The Court finds that Plaintiffs have alleged a plausible claim for relief. Plaintiffs argue that pilots may not perform any military service on the same day that they have obligations to Defendant, but they may engage in any other activity. For example, if a pilot ends his or her work for Defendant at 6:00 a.m. on January 1, the pilot is prohibited from performing any military service on January 1, although the pilot may engage in other activities. The Court may ultimately determine that Defendant's policy is lawful, but at this stage in the litigation, and construing the facts before the Court in Plaintiffs' favor, the Court finds that Plaintiffs have raised a plausible claim for relief.

### 3. Five-year limit

Plaintiffs' final allegation is that Defendant willfully miscalculated non-exempt days under USERRA, resulting in Plaintiffs' performing less military service than they otherwise would. Am. Compl. at ¶ 196. USERRA provides

protections for up to five years of military service time, subject to exceptions which can extend that time beyond five years.  38 U.S.C. § 4312(c).  Plaintiffs allege they have had military service obligations that were exempt from USERRA's five-year limitation, yet Defendant counts those against the pilot's five-year limit.  Am. Compl. at ¶ 191.  Specifically, Plaintiffs allege that Defendant counts all dates of military service obligations as non-exempt when calculating pilots' military service obligations, even if those obligations occur on days off from Defendant, on personal time, or consist of concurrent duty such that the military obligation does not conflict with obligations to Defendant.  Id. at ¶ 192. Plaintiffs allege that Defendant has threatened to terminate and has terminated pilots for exceeding USERRA's five-year limitation, even though the military service periods were exempt or did not require an absence from Defendant's employment.  Id. at ¶ 194.  This miscalculation has also resulted in lost wages, benefits, and opportunities for military participation.  Id. at ¶ 195.

Defendant first argues that not one of the Plaintiffs alleges that he was terminated for exceeding the five-year limit and thus, not one of them has standing to assert this claim.[9]  A plaintiff seeking to establish Article III standing must satisfy three elements.

---

[9] The Court notes that Defendant brought its motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6).  However, this passing mention of lack of standing is the only time Defendant argues anything with regard to standing and Rule 12(b)(1).  Accordingly, the Court will only consider

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, . . . and (b) actual or imminent, not conjectural or hypothetical . . . . Second, there must be a causal connection between the injury and the conduct complained of . . . . Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (internal quotation marks and citations omitted).

Plaintiff Smith alleges that his period of military service from December 17, 2008 through March 3, 2014, is exempt from the five-year limitation, but that Defendant refused to accept documentation supporting these exempt periods, and placed Defendant Smith on an involuntary unpaid leave of absence pending investigation of his military service obligations. Id. at ¶¶ 64-66. Plaintiffs' five-year limitation claims alleges that Defendant's improper calculation of the five-year limitation has resulted in lost wages, lost benefits, and severe financial harm to pilots who have taken military leave, in addition to the threat of termination. Id. at ¶¶ 194-95.

USERRA provides that a court may award three kinds of relief:  it may require the employer to "(A) . . . comply with the provisions of this chapter," 38 U.S.C. § 4323(d)(1), "(B) . . . compensate the person for any loss of wages or benefits suffered by reason of such employer's failure to comply with the

---

whether Plaintiffs have standing to bring a claim for discrimination related to USERRA's five-year limitation.

provisions of this chapter," id., and "(C) . . . require the employer to pay the person an amount equal to the amount referred to in subparagraph (B) as liquidated damages, if the court determines that the employer's failure to comply with the provisions of this chapter was willful." Id.

The Court finds that Plaintiffs have standing to bring this claim. In addition to Plaintiffs' allegations that certain Class members were terminated for taking military leave based on Defendant's miscalculation of the five-year limitation, Plaintiff Smith alleges that Defendant miscalculated his exempt days as required by USERRA and that this miscalculation caused Defendant Smith to be placed on an involuntary unpaid leave of absence. Thus, Plaintiff Smith suffered a loss of wages and other benefits as a result of the alleged harassment against him, so he would be entitled to loss of wages or other benefits should he prevail on his discrimination claim and meets all three elements to demonstrate standing.

Finally, Defendant also argues that Plaintiffs have not alleged facts sufficient to plausibly state a cause of action. However, as with the other causes of action, the Court finds that Plaintiffs have plausibly stated a claim for relief. Plaintiffs allege that Defendant improperly calculates exempt days towards each pilot's five-year period. Based on this miscalculation, allege Plaintiffs, Defendant has threatened to terminate and has terminated pilots to intimidate and discourage other pilots from performing military service. Construing the facts in the light most

24

favorable to Plaintiffs, the Court finds that Plaintiffs have alleged a plausible cause of action and the Court declines to dismiss their claim.

## IV.    Conclusion

The Court **DENIES** Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint for Lack of Standing and for Failure to State a Cause of Action [Doc. 13].

**SO ORDERED**, this _16th_ day of February, 2018.

Eleanor L. Ross
United States District Judge
Northern District of Georgia