UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **JEREMY SORENSON, an individual,**<br>**RANDAL REEP, an individual,**<br>**RANDAL SMITH, an individual,**<br>**ADAM MCLEAN, an individual,**<br>**and JAMES DOYLE, an**<br>**individual, on behalf of**<br>**themselves and all others**<br>**similarly situated,**<br><br>      **Plaintiffs,**<br><br>**vs.**<br><br>**DELTA AIR LINES, INC.,**<br>**a Delaware Corporation,**<br><br>      **Defendant.** | **Civil Action No. 1:17-cv-00541-ELR** |

**PLAINTIFF RANDAL REEP'S RESPONSE AND OBJECTIONS TO DEFENDANT DELTA AIR LINES SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF RANDAL REEP'S RESPONSE IN OPPOSITION TO DEFENANT'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56, of the Federal Rules of Civil Procedure, and Local Rule of Civil Procedure 56.1, Plaintiff Randal Reep ("Plaintiff") hereby responds to Defendant Delta Air Lines, Inc. ("Delta") Statement of Undisputed Material Facts. These responses and counter statements of fact

are supported by the accompanying declaration of Crystal L. Matter listing Depositions, Exhibits, and records as follows:

a) Exhibit 1: Cover pages of the Pilot Working Agreements for the relevant period identifying the effective dates;

b) Exhibit 2: Flight Operations Manual pages identifying the Concurrent Duty/Double-Dipping Policies;

c) Exhibit 3: Barry Behnfeldt Deposition Excerpts.

d) Exhibit 4: William Underwood Deposition Excerpts

e) Exhibit 5: Randal Reep Deposition Excerpts

f) Exhibit 6: Jim Graham Deposition Excerpts

g) Exhibit 7: Phil Davis Deposition Excerpts

h) Exhibit 8: Brian Tully Deposition Excerpts

i) Exhibit 9: Frederick Deposition Excerpts

| A. Plaintiffs' 401(k) Contribution Claim | Plaintiffs' Objections | Response | Court's Ruling |
|---|---|---|---|
| ¶1: Delta has established a 401k plan known as the Delta Pilots Savings Plan (the "401k Plan"). (Zawislak Decl. ¶18) | | Undisputed. | Sustained _____ Overruled _____ |

| | | | |
|---|---|---|---|
| ¶2:  The 401k plan is a defined contribution plan subject the requirements of the Employee Retirement Income Security Act of 1974 ("ERISA"), and Delta Case 1:17-cv-00541-ELR-AJB Document 178-1 Filed 03/14/22 Page 1 of 23 2 makes contributions to the 401k Plan based on a set percentage of each pilot's pensionable earnings. (Zawislak Decl. ¶18) | | <u>Undisputed</u> as to pension contributions being "pensionable earnings," but must be defined in accordance with the definition of pensionable earnings contained in the Delta Pilots Savings Plan Benefits Handbook, Summary Plan Description effective as of January 1, 2015. (See Charles Billy in Opposition to Defendant's Motion for Summary Judgment, para. 58, Ex. 22.) [*See* Doc. 206-1, incorporated herein by reference] | Sustained _____ Overruled _____ |
| ¶3:  Delta makes those contributions into individual 401k accounts maintained for each eligible pilot who participates in the 401k Plan. (Zawislak Decl. ¶18) | | <u>Undisputed.</u> | Sustained _____ Overruled _____ |
| ¶4:  Delta's pilots work under the terms of the Pilot Working Agreement ("PWA")—a collective bargaining agreement between Delta and the Air Line Pilots Association | Objection. Misstates facts. | <u>Disputed.</u> The Zawislak declaration only cites to portions of the 2016 PWA, not all of the PWAs for the relevant period. (*See* Matter Decl., ¶6, Ex. 1) [*See* Doc. 206-1, incorporated herein by reference] | Sustained _____ Overruled _____ |

| | | | |
|---|---|---|---|
| ("ALPA"), the pilots' union. (Zawislak Decl. ¶3 and Exhs. A-E) | | | |
| ¶5:  Under the PWA, Delta has two pilot positions: Captains and First Officers. (Zawislak Decl. ¶4) | Objection. Misstates the definition of "position." | Disputed. "Position" is defined as the combination of a pilot's aircraft type and status, and there are 14 Aircraft Types.  (Zawislak Decl., Ex. A [Doc. 178-3, p. 31, §2.A.212]; p. 12, §2.A.13].)<br>[*See* Doc. 206-1, incorporated herein by reference] | Sustained<br>_____<br><br>Overruled<br>_____ |
| ¶6:  Under the PWA, Delta pilots have a specific "category," consisting of their job title (i.e., Captain or First Officer), aircraft, and pilot base (i.e., the location where a pilot's trips begin and end). (Zawislak Decl. ¶4) | Objection. Misstates the definitions of "base" and "category." | Disputed. Pursuant to the 2016 PWA, "base" is defined as the location to which a pilot is assigned, not where a pilot's trips begin and end. "Category" is defined as the combination of a pilot's position and base. (Zawislak Decl., Ex. A [Doc. 178-3, p.14, §2.A.31, 178-3, p. 15, §2.A.41].)<br>[*See* Doc. 206-1, incorporated herein by reference] | Sustained<br>_____<br><br>Overruled<br>_____ |
| ¶7:  A pilot can be eligible to change category based on his seniority and preference, provided that he or she can | Objection. Misleading. | Disputed. A pilot can be eligible to change category based on his or her seniority and preference, but based on discovery, there was no | Sustained<br>_____<br><br>Overruled<br>_____ |

| | | | |
|---|---|---|---|
| satisfy the training requirements for a new category. (Zawislak Decl. ¶4) | | evidence provided that any pilot was unable to satisfy training requirements for a new category. If a pilot bid for a change in category, it would be reasonably certain that the pilot would then qualify for that category. [*See* Doc. 206-1, incorporated herein by reference] | |
| ¶8:  Under the PWA, Delta does not pay on-call or flying pilots a fixed salary or a fixed number of hours every pay period. (Zawislak Decl. ¶5 and Exh. B, § 3.B.) | Objection. Misstates facts. | Disputed. A pilot on reserve is scheduled to be on call a certain number of days and scheduled for and guaranteed to receive a minimum number of pay hours between 72 and 80 hours of pay in each month, even if actual flight hours are zero. (Delta's Rule 30(B)(6) Deposition by and through Jason Zawislak ("30b6 Depo.") p. 27:16-20 [Doc. 200]; Deposition of James S. Doyle ("Doyle Depo."), Ex. 6 [Doc. 170-6, p. 26, §4(C)]<br><br>However, reserve pilots can be assigned flying responsibilities that increase pay hours above Average Line Value ("ALV") by 15 hours, and | Sustained _____<br><br>Overruled _____ |

| | | pilots are able to pick up additional work beyond that as well.<br><br>[*See* Doc. 206-1, incorporated herein by reference] | |
|---|---|---|---|
| ¶9:  Instead, pilots are paid by the flight hour, and the PWA sets forth each pilot's hourly rate as determined by his or her seniority, aircraft, and assigned position. (Zawislak Decl. ¶5 and Exh. B, § 3.B.) | Objection. Misstates facts. | <u>Disputed.</u> There are mutual PWAs over the period. (See Response to Undisputed Material Fact No. 4) and pilots receive pay for time other than flying, such as vacation, sick time, jury duty, deadhead time, overtime or premium time and time on call. (30b6 Depo. p. 20:18-24; p. 26:5-16 [Doc. 200].)<br>[*See* Doc. 206-1, incorporated herein by reference] | Sustained<br>_____<br><br>Overruled<br>_____ |
| ¶10:  The established hourly rate increases for certain flights that have premium pay. (Zawislak Decl. ¶5) | Objection. Misstates facts. | <u>Disputed.</u> "Premium pay" is a term associated with both flights and rotations, where "rotations" is a duty period, or series of duty periods. (Zawislak Decl. Ex. A, p. 31, §2.A.215, p. 36, §2.A.251 [Doc. 178-3].)<br>[*See* Doc. 206-1, incorporated herein by reference] | Sustained<br>_____<br><br>Overruled<br>_____ |

| | | | |
|---|---|---|---|
| ¶11:  For example, under the PWA, Delta offers pilots "green slip" flights during a month, which, under some circumstances, provides the pilots double-pay for the flight. (Zawislak Decl. ¶5) | | <u>Disputed.</u> This is not the only example where premium pay may apply. (Zawislak Decl., Ex. E [Doc. 178-3, p. 84, §23.A.14-15; p. 86, §23.A.35].) | Sustained _____<br><br>Overruled _____ |
| ¶12:  The PWA also establishes a preferential bidding system ("PBS") that Delta pilots use to select their monthly work schedules. (Zawislak Decl. ¶6 and Exh. E, § 23.C.) | Objection. Vague and ambiguous as to the term "select." Objection. Misstates facts. | <u>Disputed.</u> Pilots don't "select" their schedules. PBS "allow[s] each pilot in a category to bid for and be awarded" a schedule based on seniority, known absences, programmed award logic, FARs, Company policy and the PWA. (Zawislak Decl., Ex. E [Doc. 178-3, p. 91, §23.C].) Pilots are afforded an opportunity to submit their preferences then Delta determines the pilot's schedule based upon the pilot's seniority and other factors. (Sorenson Decl., para 6.) Additionally, Delta cited to the current PWA and did not include reference or exhibits to all PWA for the relevant period referenced in Plaintiffs' Complaint. | Sustained _____<br><br>Overruled _____ |

| | | [*See* Doc. 206-1, incorporated herein by reference] | |
|---|---|---|---|
| ¶13:  Under the PBS system, pilots have significant discretion to choose the number, type, and dates of duty hours for the upcoming month. (Zawislak Decl. ¶6 and Exh. E, § 23.C.) | Objection. Vague and ambiguous as to the phrase "significant discretion." | <u>Disputed</u>. Pilots are afforded an opportunity to submit their preferences then Delta determines the pilot's schedule based upon the pilot's seniority and other factors. (Sorenson Decl., para 6.) Additionally, Delta cited to the current PWA and did not include reference or exhibits to all PWA for the relevant period referenced in Plaintiffs' Complaint. PBS "allow[s] each pilot in a category to bid for and be awarded" a Case 1:17-cv-00541-ELR Document 206-1 Filed 05/12/22 Page 7 of 119 8 schedule based on seniority, known absences, programmed award logic, FARs, Company policy and the PWA. Only if a pilot is very senior in their category will that specific pilot have significant discretion in their schedule. (Zawislak Decl. Ex. E [Doc. 178-3, p. 91, §23.C].); Sorenson Decl., ¶7. | Sustained _____ Overruled _____ |

| | | [*See* Doc. 206-1, incorporated herein by reference] | |
|---|---|---|---|
| ¶14:  Depending on seniority and other factors, a "regular" or "line" pilot bids for a set schedule of flights, while a "reserve" pilot bids for scheduled days off, allowing Delta to schedule paid "reserve days" where the pilot is on-call for flight assignments. (Zawislak Decl. ¶7 and Exh. A, §§ 2.A.68, 2.A.245, 2.A.178, 2.A.168.c, 2.A.237, 2.A.246.) | Objection. Misstates facts and includes comments to facts not in the record and which are not supported by the citation. | <u>Disputed.</u> "Set schedule of flights" and "days off" are not the only parameters the regular or reserve pilot can bid for. (Zawislak Decl., Ex. E [Doc. 178-3, p. 84, §23.A.16; p. 88, §23.A.52].) For example, reserve pilots are also able to bid for "Soft non-fly day[s]" and "Hard non-fly day[s]." (Id.) [*See* Doc. 206-1, incorporated herein by reference] | Sustained _____ Overruled _____ |
| ¶15:  While a pilot's initial schedule is set through PBS, a pilot's initial schedule often changes because of the fluid process of pilots' swapping, dropping, or picking-up flights. (Zawislak Decl. ¶8) | Objection. Misstates facts, provides opinion. Objection. Assumes facts not in the record and which are not supported by the citation. Objection. Vague as to the term "often." | <u>Disputed.</u> Based on the objections stated herein. | Sustained _____ Overruled _____ |
| ¶16:  In this way, each individual pilot crafts different schedules based on his or her personal preferences. (Zawislak Decl. ¶8) | Objection. Vague and ambiguous as to the phrase "crafts." Objection. Misstates facts. Objection. Assumes facts not in the record. Objection. | <u>Disputed.</u> Pilots do not "craft" their schedule. Pilots are afforded an opportunity to submit their preferences then Delta determines the pilot's schedule based | Sustained _____ Overruled _____ |

| | Facts not supported by the citation. | upon the pilot's seniority and other factors. (Sorenson Decl., para 6.) Pilots can submit requests for military leave, personal drops, swaps, white slips, yellow slips, Green Slips, to move reserve days, to ask for additional reserve days off, for recovery slips and pilots can offer to pick up trips or swap trips with other pilots, among other things, but these are all requests that require Delta approval, and can be declined or rejected by Delta. (Zawislak Decl., Ex. E [Doc. 178-3, p. 86, §23.A.33-34].)<br><br>[*See* Doc. 206-1, incorporated herein by reference] | |
|---|---|---|---|
| ¶17:  In addition, a variety of different events (such as irregular operations) can occur during the course of a flight rotation that may affect a pilot's schedule. (Zawislak Decl. ¶8) | Objection. Misstates facts. Objection. Misleading. | Although different events can occur during a month, during a rotation or during a flight, these occurrences result in an increase in monthly pilot pay hours, which is reflected and observed when comparing monthly ALV and monthly average pay hours ("APH"). (Deposition of Candice L. | Sustained _____<br><br>Overruled _____ |

| | | Rosevear ("Rosevear Depo."), Ex. 1 [Doc. 173-1, p. 12, ¶¶23-24; 21].)<br><br>[*See* Doc. 206-1, incorporated herein by reference] | |
| --- | --- | --- | --- |
| ¶18:  Under the PWA's approach to scheduling and compensation, Delta pilots are effectively part-time employees who have substantial discretion in setting their schedules and work hours. (Zawislak Decl. ¶9) | Objection. Misstates fact. Objection. Statement not supported by the evidence. | <u>Disputed.</u>  Pilots are full-time employees. (Sorenson Decl., ¶8; Frederick Deposition, Ex. 11; Barry Behnfeldt Depo, 148:3-6.) Pilots do not set their schedules and work hours. Pilots are afforded an opportunity to submit their preferences then Delta determines the pilot's schedule based upon the pilot's seniority and other factors.<br><br>Due to a number of contractual provisions, all pilots, available for a full bid period, and not absent due to some form of leave, are scheduled to receive minimum monthly pay hours in a narrow range between 71 and 85 pay hours per month. (30b6 Depo. p. 27:16-20 [Doc. 200]; Doyle Depo., Ex. 5 [Doc. 170-6, p. 26, §4(C)]; Billy Decl. ¶20.). Flight hours for all commercial pilots | Sustained<br>_____<br><br>Overruled<br>_____ |

|  |  | are capped to 100 hours in any consecutive 28-day period, which provides a form of a cap on scheduled pilot monthly pay hours, further reducing potential monthly variations in pay. (*See* Billy Decl. ¶20; Ex. 5, §3.2.15, DELTA 607390.)<br><br>Pilots can receive pay for time other than flying, such as vacation, sick time, jury duty, deadhead time, overtime or premium time and time on call. (30b6 Depo. p. 20:18-24; p. 26:5-16 [Doc. 200].) Although there is some ability to adjust schedules up to a point, and there may be more scheduled days off for pilots other than just weekends, pilots are full time employees, pilots are not "effectively part-time employees" and pilots are compensated based on a relatively uniform number of pay hours per month.<br><br>[*See* Doc. 206-1, incorporated herein by reference] |  |

| | | | |
|---|---|---|---|
| ¶19:  Under the PWA, Delta pilots who are regular or line pilots may not be awarded more than 18 days per month of flying in the initial bid process – and such pilots generally fly between 12 and 18 days per month. (Zawislak Decl. ¶9) | Objection. Misstates facts. Objection. Assumes facts not in the record or are not supported by the citation. | <u>Disputed.</u> Line construction is based on hours of pay per month, not days of work per month. (Zawislak Decl., Ex. A [Doc. 178-3, pp. 13-14, §2.A.29].) Hours of pay per day are driven by the utilization of aircraft types as indicated by the differences in ALV associated with narrow body (smaller) aircraft versus wide body (larger aircraft), which typically fly longer flights. (<u>Id.</u>)<br><br>[*See* Doc. 206-1, incorporated herein by reference] | Sustained<br>_____<br><br>Overruled<br>_____ |
| ¶20:  Under the PWA, Delta pilots who are assigned a reserve schedule only are assigned 17 days per month when they are "on call" for Delta. (Zawislak Decl. ¶9) | | <u>Disputed.</u>  Pilots assigned a reserve schedule and are available for the full month (i.e., don't have vacation or some other schedule blocker) are "on call" for up to 17 or 18 days per month, depending on that month's reserve guarantee. (See Billy Decl., Ex. 4, §12.M.2, DELTA 001114.)<br><br>[*See* Doc. 206-1, incorporated herein by reference] | Sustained<br>_____<br><br>Overruled<br>_____ |

| | | | |
|---|---|---|---|
| ¶21:  Many Delta pilots have other careers. (Zawislak Decl. ¶9) | | <u>Undisputed.</u> Delta's concurrent duty policy does not limit those careers, or the ability for pilots to engage in those careers on the same day as there may be Delta duty, including being on paid sick leave from Delta, as long as they are not performing military duty.<br><br>[*See* Doc. 206-1, incorporated herein by reference] | Sustained<br>_____<br><br>Overruled<br>_____ |
| ¶22:  For example Plaintiff Randal Reep ("Reep") was a practicing attorney while also flying for Delta. (Deposition of Randal Reep ("Reep Dep.") 13:25-14-25.) | Objection. Ambiguous. | <u>Disputed</u>, Randal Reep was a practicing attorney for part of the time he was employed by Delta. (Reep Depo, 13:15-18) Reep was a practicing attorney while he was also employed by Delta, but there is no evidence to suggest he practiced law while flying for Delta.<br>[*See* Doc. 206-1, incorporated herein by reference] | Sustained<br>_____<br><br>Overruled<br>_____ |
| ¶23:  Reep had months in which he took no MLOA ("non-MLOA months") when he dropped all of his flights and had zero flight pay hours (and thus zero pay). | Objection. No information to identify how this document was compiled/verify authenticity of its contents. Objection. Misstates facts. | <u>Disputed.</u> Reep had months in which he performed military duty, but he took no formal MLOA, specifically because he was harassed by Delta for taking too much MLOA. | Sustained<br>_____<br><br>Overruled<br>_____ |

| | | | |
|---|---|---|---|
| (Zawislak Decl. ¶12 and Exh. F) | Objection. Misleading. | (Deposition of Jim Graham ("Graham Depo."), Ex. 12.)  On November 14, 2010, Reep informed the Vice President of Flying Operations, Jim Graham, directly that because he was harassed by Delta over his use of MLOA, he was taking and had been taking less actual MLOA, and "[t]he vast majority of [his] military obligations were performed on days where [he] did not need to use Military Leave" because he was able to drop his Delta assignments, resulting in zero pay hours. (Graham Depo., Ex. 12 [Doc. 201-12].) Reep adjusted his Delta schedule as PWA provisions allowed in order to avoid taking formal MLOA, but he still performed military duty every month from at least March 2001 through December 2016. (Reep Depo., Ex. 3 [Doc. 14 172-3]; Billy Decl. ¶22.) On September 30, 2016, on behalf of Delta, Graham signed Reep's Letter of Termination. (Reep Depo., Ex. 8 [Doc. | |

| | | | |
|---|---|---|---|
| | | 172-8].)<br>[*See* Doc. 206-1, incorporated herein by reference] | |
| ¶24:  In non-MLOA months between November 2008 and the end of his Delta employment in 2016, Reep's pay hours ranged from zero pay hours to approximately 95 pay hours. (Zawislak Decl. ¶12 and Exh. F) | Objection. No information to identify how this document was compiled/verify authenticity of its contents. Objection. Misleading. | <u>Disputed.</u> Reep avoided taking MLOA because of the harassment he received from Delta. Undisputed as to the fact that Reep did have months with zero pay hours to approximately 95 pay hours. (See Plaintiffs' Response to Undisputed Material Fact No. 23, above; Graham Decl., Ex. 12 [Doc. 201-12]; Billy Decl. ¶¶22-23; Reep Depo., Ex. 3 [Doc. 172-3]; Reep Depo., Ex. 8 [Doc. 172-8].)<br>[*See* Doc. 206-1, incorporated herein by reference] | Sustained<br>_____<br><br>Overruled<br>_____ |
| ¶25:  Plaintiff Jeremey Sorenson's ("Sorenson's") pay hours in non-MLOA months between August 2014 and October 2020 ranged from approximately 42 pay hours to 137 pay hours. (Zawislak Decl. ¶14 and Ex F) | Objection. No information to identify how this document was compiled/verify authenticity of its contents. Objection. Delta introduces new facts following the close of discovery and outside the agreed upon period. | <u>Disputed.</u> Sorenson performed military duty during every month between April 2014 through March 2017.<br><br>Billy Decl. ¶24; Deposition of Jeremy Sorenson ("Sorenson Depo."), Ex. 7 [Doc. 175-7].) From April 2017 through August 2019, Sorenson either took military leave, or he | Sustained<br>_____<br><br>Overruled<br>_____ |

| | | delayed his return following long term military leave, up to 90 days, which is also considered protected USERRA time. 20 C.F.R. § 1002.259(a); (Billy Decl. ¶24; Zawislak Decl., Ex. F [Doc. 178-3, pp. 156-157]; Sorenson Depo., Ex. 7 [Doc. 175-7].) June 2019 is the month in which Delta finds that Sorenson had 42 hours of pay and no actual military leave, but this is the first month following a 13-month period of long-term military leave, and is considered protected USERRA time for pension purposes. (Billy Decl. ¶24; Zawislak Decl., Ex. F [Doc. 178-3, p. 157].) [*See* Doc. 206-1, incorporated herein by reference] | |
|---|---|---|---|
| ¶26:  Plaintiff James Doyle's ("Doyle's") pay hours in non-MLOA months from April 2007 to the end of his employment in 2016 ranged from zero to 104. (Zawislak Decl. ¶15 and Ex F) | Plaintiffs Sorenson and Reep incorporate by reference any objections lodged by Plaintiffs McLean, Smith and Doyle in response to this fact. | Plaintiffs Sorenson and Reep incorporate by reference the response lodged by Plaintiffs McLean, Smith and Doyle in response to this fact. | Sustained _____ Overruled _____ |

| | | | |
|---|---|---|---|
| ¶27:  Plaintiff Adam McLean's ("McLean's") pay hours in non-MLOA months from January 2010 to the end of his employment in 2017 ranged from 57 to 99. (Zawislak Decl. ¶16 and Ex F) | Plaintiffs Sorenson and Reep incorporate by reference any objections lodged by Plaintiffs McLean, Smith and Doyle in response to this fact. | Plaintiffs Sorenson and Reep incorporate by reference the response lodged by Plaintiffs McLean, Smith and Doyle in response to this fact. | Sustained _____ Overruled _____ |
| ¶28:  Plaintiff Randal Smith ("Smith") was only employed by Delta for a few months when he was not on military or personal leave, and also had entirely unpredictable monthly pay hours. (Zawislak Decl. ¶17 and Ex F) | Plaintiffs Sorenson and Reep incorporate by reference any objections lodged by Plaintiffs McLean, Smith and Doyle in response to this fact. | Plaintiffs Sorenson and Reep incorporate by reference the response lodged by Plaintiffs McLean, Smith and Doyle in response to this fact. | Sustained _____ Overruled _____ |
| ¶29:  Smith only exceeded 20 pay hours 8 months in his entire time at Delta and never had more than 68 pay hours in any month. (Zawislak Decl. ¶17 and Ex F) | Plaintiffs Sorenson and Reep incorporate by reference any objections lodged by Plaintiffs McLean, Smith and Doyle in response to this fact. | Plaintiffs Sorenson and Reep incorporate by reference the response lodged by Plaintiffs McLean, Smith and Doyle in response to this fact. | Sustained _____ Overruled _____ |
| ¶30:  The average number of monthly pay hours for Plaintiffs is 65.5. (Munger Decl. Ex A (Expert Report of | Objection. Misleading. | Disputed. As described in Plaintiffs' Responses to Undisputed Material Facts Nos. 23-29, Plaintiffs' military service impacted their | Sustained _____ Overruled _____ |

| | | | |
|---|---|---|---|
| Robert B. Speakman, Jr., Ph.D.), p. 7.) | | pay hours and anomalies described below are not accounted for in this average. From April 2017 through August 2019, Sorenson either took military leave, or he delayed his return following long term military leave, up to 90 days, which is also considered protected USERRA time. 20 C.F.R. § 1002.259(a); (Billy Decl. ¶24; Zawislak Decl., Ex. F [Doc. 178-3, pp. 156-157]; Deposition of Jeremy Sorenson ("Sorenson Depo."), Ex. 7 [Doc. 175-7].) June 2019 is the month in which Delta finds that Sorenson had 42 hours of pay and no actual military leave, but this is the first month following a 13-month period of long-term military leave, and is considered protected USERRA time for pension purposes. (Billy Decl. ¶24; Zawislak Decl., Ex. F [Doc. 178-3, p. 157].) "'Entry level pilot" is a pilot who hasn't completed his or her full initial training at Delta, and they are paid a | |

| | | | |
|---|---|---|---|
| | | specific monthly Case 1:17-cv-00541-ELR Document 206-1 Filed 05/12/22 Page 19 of 119 20 salary, such as $4,614.38 per month, rather than pay hours until they are fully qualified on an aircraft type. (Zawislak Decl., Ex. B [Doc. 178-3, p. 45, §3(A)(5); p. 56, §3(D)].) As a new hire, or entry level pilot, Sorenson was paid a flat salary from February 2014 through at least April 2014, and therefore his pay records show zero pay hours for those months, even though he was a full-time salaried employee during those months. (Id.)<br><br>[*See* Doc. 206-1, incorporated herein by reference] | |
| ¶31:  The standard deviation of the five Plaintiffs' pay hours during months in which they had no MLOA or other personal leave is 27.4. (Munger Decl. Ex. A, p. 7.) | | <u>Disputed.</u> The pay hours Delta calculates, and therefore the standard deviation Delta calculates for the five Plaintiffs is inaccurate, as described in Plaintiffs' Response to Undisputed Material Fact No. 30 and incorporated in this Response by reference. | Sustained _____<br><br>Overruled _____ |

| ¶32: This means that, in about one-third of all months, Plaintiffs' pay hours were 27.4 hours above or 27.4 hours below the average. (Munger Decl. Ex. A, p. 7.) | Objection. Misleading. | <u>Disputed</u> as these calculations rely on incomplete and flawed data and assumptions. The pay hours, the standard deviation and therefore Delta's assertion regarding the range of pay hours is flawed. (Plaintiffs' Responses to Undisputed Material Facts Nos. 30, 31 and incorporated in this Response by reference. | Sustained _____ <br><br> Overruled _____ |
|---|---|---|---|
| ¶33: Using an average pay rate of $138 per pay hour—which was Plaintiffs' average pay rate during the months in the calculation—Plaintiffs' monthly pay was less than $5,258 or more than $12,820 in one-third of all months. (Munger Decl. Ex. A, p. 7.) | Objection. Irrelevant. Objection. Misstates facts. | <u>Disputed.</u> Accurate hourly pay rates for every month in which Plaintiffs were employed by Delta is available. (Billy Decl. ¶¶11, 26.) As described above in Plaintiffs' Response to Undisputed Material Facts Nos. 30-31, the variation in pay hours and therefore variation of the pay for the Plaintiffs is irrelevant, inaccurate, and varies precisely because each Plaintiff routinely was performing military duty in nearly every month. (Billy Decl. ¶¶20-25, 27-28.) [*See* Doc. 206-1, incorporated herein by reference] | Sustained _____ <br><br> Overruled _____ |

| ¶34:  Similarly, for all Delta reservist pilots, the standard deviation in pay hours in months with no MLOA or other personal leave is 23 pay hours (meaning that in one-third of all months, pay hours for all Delta reservist pilots were 23 hours above or 23 hours below the average). (Munger Decl. Ex. A, p. 6.) | Objection. Misstates facts. Objection. Misleading. Objection. Assumes facts. Objection. Lacks foundation. | Disputed. Delta, and its Expert, are incorrect with regard to "how to interpret and compare standard deviations, making all of his conclusions meaningless," and "the Speakman Report presents invalid comparisons which lead to invalid conclusions." (Deposition of Candice Rosevear ("Rosevear Depo.") Rosevear Depo., Ex. 2 [Doc. 173-2, p. 8, ¶18; p. 9, ¶30].). [See Doc. 206-1, incorporated herein by reference] | Sustained _____<br><br>Overruled _____ |
|---|---|---|---|
| ¶35:  Plaintiffs' expert, Candice Rosevear, agreed with the calculations in set forth in ¶¶ 30-34 above. (Deposition of Candice Rosevear 236:17-240:19.) | Objection. Misstates facts. Objection. Misstates testimony. | Disputed. Candice Rosevear stated that she did not verify the calculations above, and that she did not necessarily agree with them. (Rosevear Depo., pp. 236:17-237:4 [Doc. 173].) Moreover, Rosevear directly attacks the numerous errors contained in Speakman's standard deviation calculations in her Expert Rebuttal Report of Candice L. Rosevear, December 8, 2021. (Rosevear Depo., Ex. 2 [Doc. 173-2, ¶¶11, 14, | Sustained _____<br><br>Overruled _____ |

| | | 32-34, 37-38].)<br>[*See* Doc. 206-1, incorporated herein by reference] | |
|---|---|---|---|
| ¶36:  McLean testified that he could not determine his pay with reasonable certainty because it varied substantially from monthly bid period to monthly bid period. (Deposition of Adam McClean ("McLean Dep.") 128:9-130:7.) | Plaintiffs Sorenson and Reep incorporate by reference any objections lodged by Plaintiffs McLean, Smith and Doyle in response to this fact. | Plaintiffs Sorenson and Reep incorporate by reference the response lodged by Plaintiffs McLean, Smith and Doyle in response to this fact. | Sustained<br>_____<br><br>Overruled<br>_____ |
| ¶37:  From 2007 through 2011, Delta used the 12-month lookback calculation when deeming earnings for long-term military leaves of absence ("MLOAs") (more than 30 days in length). (Zawislak Decl. ¶19) | | Undisputed. | Sustained<br>_____<br><br>Overruled<br>_____ |
| ¶38:  Beginning on January 1, 2012, Delta agreed to change its deemed earnings calculation for long term MLOAs under the 401k Plan to what is known as the Average Line Value ("ALV") | | Undisputed. | Sustained<br>_____<br><br>Overruled<br>_____ |

| | | | |
|---|---|---|---|
| calculation. (Zawislak Decl. ¶19) | | | |
| ¶39: Delta has used the ALV calculation since January 1, 2012. (Zawislak Decl. ¶39) | | <u>Undisputed.</u> | Sustained _____ Overruled _____ |
| ¶40: Under the ALV calculation, Delta establishes ALV for each position/aircraft by determining the projected average of all regular line values, for a position, for a bid period (with an ALV floor and ceiling of between 71 and 85 hours, depending on the aircraft). (Zawislak Decl. ¶20, Ex. E, § 23.A.2.) | Objection. Misstates the definition of "position." | <u>Disputed.</u> "Position" is defined as the combination of a pilot's aircraft type and status, and there are 14 Aircraft Types. (Zawislak Decl., Ex. A [Doc. 178-3, p. 31, §2.A.212; Doc. 178-3, p. 12, §2.A.13].) [*See* Doc. 206-1, incorporated herein by reference] | Sustained _____ Overruled _____ |
| ¶41: Delta calculates deemed earnings for long-term MLOAs by multiplying the pilot's hourly rate in effect during the MLOA by the ALV for each month of the MLOA. (Zawislak Decl. ¶20) | | <u>Disputed</u> in that the "hourly rate in effect" should account for position movement or upgrades that would impact a pilot's hourly rate, but it does not. (*See* Billy Decl. ¶¶7, 9, [Doc 206-2.].) [*See* Doc. 206-1, incorporated herein by reference] | Sustained _____ Overruled _____ |

| | | | |
|---|---|---|---|
| ¶42:  Delta implemented the change from a 12-month lookback methodology to the ALV methodology in order to benefit military reservists by providing them much higher 401k contributions for these MLOA periods than Delta's previous 12-month look back calculation. (Zawislak Decl. ¶21) | Objection. Misstates facts. Objection. Contains conclusions unsupported by facts. | <u>Disputed.</u> Delta was aware that the 12-month look back violated USERRA and the policy was changed in 2012 to "enhance [Delta's] USERRA compliance." (*See* Billy Decl. ¶¶ 7, 9, Ex. 3, DELTA000357974, [Doc 206-2.].) [*See* Doc. 206-1, incorporated herein by reference] | Sustained _____  Overruled _____ |
| ¶43:  Because the ALV calculation typically includes higher hourly rates (the ALV uses applicable rates during the MLOA rather than rates in the 12 months before the MLOA) and higher pay hours (for example, Reep's monthly pay hours during no-MLOA months were almost never as high as the ALV number for his position) than the 12-month lookback calculation, Delta has contributed over $11 million more to reservists' 401(k) | Objection. Lacks foundation. | <u>Disputed</u> because this analysis under calculates the pension differential caused by moving from one policy that violates USERRA to a new policy that still violates USERRA. (*See* Billy Decl. ¶25 [Doc. 206-2]; Rosevear Depo., Ex. 1 [Doc. 173-1, p. 13, Table 1].) [*See* Doc. 206-1, incorporated herein by reference] | Sustained _____  Overruled _____ |

| | | | |
|---|---|---|---|
| plans than it would have contributed had it continued using the prior 12-month lookback method. (Zawislak Decl. ¶21; Munger Decl. Ex. A, at p. 8.) | | | |
| ¶44: As just one individual example of this, if Delta had continued to utilize the 12-month lookback calculation after 2011, Reep would have been given credit for about $7,517 in monthly deemed earnings for his military leave in June and July 2015. (Zawislak Decl. ¶21) | | <u>Undisputed</u> in that this example illustrates that the 12-month look back method was flawed, and how it under calculates deemed earnings and therefore pension contributions; but disputed because it does not alter the fact the ALV policy is still under calculating deemed earnings for pilots during military leave when compared to the earnings they would have earned but for military service. | Sustained _____ Overruled _____ |
| ¶45: Under the ALV calculation, Reep actually received credit for monthly deemed earnings of approximately $13,049—resulting in a windfall to him of $1,659 in pension contribution for that leave alone. (Zawislak Decl. ¶45) | Objection. Lacks foundation. | <u>Disputed</u> as to the context and content of this alleged fact. According to Delta's data (DELTA000607330) Reep's hourly pay rate during June and July 2015 was $155.25 per hour. (*See* Billy Decl. ¶¶11, 26, Ex. 10 [Doc. 206-2].) The APH for both months was 95.1 and 95.0 hours, | Sustained _____ Overruled _____ |

| | | respectively. (*See* Billy Decl. ¶12; DELTA000008612 [Doc. 206-2].) Reep should have received credit for monthly deemed earnings of approximately $14,773. Rather than receiving a "windfall," Reep's deemed earnings were under calculated by approximately $1,724 per month. [*See* Doc. 206-1, incorporated herein by reference] | |
| --- | --- | --- | --- |
| ¶46:  For short-term (30 days or less) MLOAs under the 401k Plan, since January 1, 2012, Delta has deemed earnings based on the ALV or a very similar "reserve monthly guarantee" (which is always 70 pay hours or more). (Zawislak Decl. ¶19) | Objection. Vague and ambiguous as to "very similar." | <u>Disputed</u> as to Delta makes a conclusion using incomplete data without analysis. ALV can be as high as 85 hours, and the reserve monthly guarantee was fixed at exactly 70 hours until approximately 2020. (30b6 Depo., p. 77:17-19 [Doc. 200]; Exs. 3-4 [Docs. 200-3; 200-4].) The difference can be as high as 15 hours, or 21%, which most likely won't be found to be "very similar." [*See* Doc. 206-1, incorporated herein by reference] | Sustained _____  Overruled _____ |

| | | | |
|---|---|---|---|
| ¶47:  Because Delta pilots effectively work a part-time schedule, when a pilot provides Delta with notice of short-term MLOA (as USERRA requires): (i) Delta places the MLOA on the pilot's schedule; and (ii) the pilot can then bid a schedule on non-MLOA days throughout the month. (Zawislak Decl. ¶¶9-10) | Objection. Compound. Objection. Vague as to time. Objection. Overbroad. Objection. Misstates facts. | <u>Disputed.</u> Pilots are not "part-time". (Frederick Depo, Ex. 11. Pilots are full-time employees. Barry Behnfeldt Depo, 148:3-6)<br><br>Short time mil leave is not immediately placed on the pilot's schedule and sometimes not at all for the time requested. (Behnfeldt Depo, 84:2-10 Mangie Depo, Ex. 9) [*See* Doc. 206-1, incorporated herein by reference]<br><br>Plaintiffs admit that if a pilot posts military leave prior to being awarded a Delta schedule, Delta then requires the pilot to work on what would otherwise be a day off because they have military leave during a month. | Sustained<br>_____<br><br>Overruled<br>_____ |
| ¶48:  When a Delta pilot takes even one day of military leave from Delta during a bid month, Delta provides them pension contributions as if they flew either ALV or a very similar "reserve monthly | Objection. Argumentative. | Delta makes a conclusion based on a theoretical possibility that is devoid of factual support, and relies on incomplete and misstated facts. Delta is attempting to argue that its policy is beneficial to military members, when it is not. As described in | Sustained<br>_____<br><br>Overruled<br>_____ |

| | | | |
|---|---|---|---|
| guarantee" number of hours (which is always 70 hours or more). (Zawislak Decl. ¶19) | | a single summary chart, deemed earnings for short term military leave are the greater of "Actual earnings" or "70 hrs/month" pre-2012, or "Actual hours paid" or ALV/70 hours per month since January 1, 2012. (30b6 Depo., Ex. 3 [Doc. 200-3].) This indicates that taking one day of military leave during a bid month may not cause the pilot's pay hours to drop below the "reserve minimum guarantee" at all, and if it does drop, the military pilot would be paid no lower than the absolute minimum pay hours, which is the "reserve minimum guarantee." However, even reserve pilots are regularly paid above the reserve guarantee due to overtime and/or premium pay opportunities, but pilots with any military leave or military duty in a bid month are prevented from taking advantage of these opportunities. (*See* Billy Decl. ¶21 [Doc 206-2].) [*See* Doc. 206-1, incorporated herein by | |

| | | reference] | |
|---|---|---|---|
| **B. Plaintiffs' Vacation Accrual Claim** | | | |
| ¶49: The average Delta pilot jury duty leave is 2.53 days, and the average pilot sick leave is 3.98 days. (Munger Decl. Ex. A, pp. 2-3.) | | <u>Undisputed.</u> Immaterial. | Sustained _____ <br><br> Overruled _____ |
| ¶50: The average length of a Delta pilot MLOA is 20.28 days. (Munger Decl. Ex. A, pp. 2-3.) | | <u>Undisputed.</u> Immaterial. | Sustained _____ <br><br> Overruled _____ |
| ¶51: Reep voluntarily sets his schedule for military flying by bidding the month before for certain flights. (Reep Dep. 44:13-45:10.) | Objection. Misstates testimony. Objection. Misleading and out of context. | <u>Disputed</u>. Reep's Florida Air National Guard unit operates continuously throughout the year and for each year, there is a long-range operational schedule created a year in advance. (Reep Depo., pp. 41:18-43:1 [Doc. 172].) It is purely aspirational as it relates to the actual flying operation of the unit. (<u>Id</u>. at pp. 42:24-43:9.) The military unit's flying schedule can be bid for approximately on the 20th day of the month prior, but even this bid for schedule is aspirational in nature, very fluid, and subject to | Sustained _____ <br><br> Overruled _____ |

| | | numerous changes. (<u>Id</u>. at pp. 44:13-45:1.)<br><br>[*See* Doc. 206-1, incorporated herein by reference] | |
|---|---|---|---|
| ¶52: Sorenson voluntarily sets his schedule for military flying by bidding the month before for certain flights. (Deposition of Jeremy Sorenson ("Sorenson Dep.") 119:9-120:20, 122:22-123:10.) | Objection. Misstates testimony. Objection. Misleading as testimony is taken out of context. | <u>Disputed.</u> Sorenson does not indicate that he "voluntarily sets his schedule for military flying by bidding the month before certain flights." What Sorenson does say in the transcript is that he lost pay from the military due to Delta's concurrent duty policy because he could have easily performed both military duty and Delta obligations on the same day. (Sorenson Depo., p. 119:9-21 [Doc. 175].) Sorenson explained different military pay codes, and explained that although something may be coded as aviation related, it did not have be only by flying aircraft, and he lost military pay due to Delta's policies. (<u>Id</u>. at pp. 119:22122:12.) Sorenson also provided specific related to the availability to pick up additional military work simply by showing up on | Sustained<br>_____<br><br>Overruled<br>_____ |

31

| | | the same day, as time allowed, or provide availability to the unit a few days out. (Id. at pp. 122:22-123:10.)<br><br>[*See* Doc. 206-1, incorporated herein by reference] | |
|---|---|---|---|
| ¶53:  What Plaintiffs call Association Business leave is not a leave of absence under the PWA. Instead, it is Delta temporarily releasing pilots for voluntary duty to perform Association business. This process is contractually required under the PWA. (Zawislak Decl. Exh. H.) | Objection. Legal conclusion. | Disputed. There is a factual dispute in determining if Association Business is a leave of absence. There are a number of leaves that are contractual required under the various PWA's, and Association Business leave is one of them. (Zawislak Decl., Exs. C, D [Doc. 178-3, pp. 59-81].) The return to work process for Association Business is described in Section 13(C)(5), Return From Leave, under the "Leaves of Absence" section of the PWA, indicating that Association Business is a type of leave of absence. (Zawislak Decl., Ex. C [Doc. 178-3, p. 62, §13(C)(5).)<br><br>[*See* Doc. 206-1, incorporated herein by reference] | Sustained<br>_____<br><br>Overruled<br>_____ |

| | | | |
|---|---|---|---|
| ¶54:  Neither the process of temporarily releasing pilots for voluntary duty to perform Association business nor pilot vacation are leaves of absence under the PWA. (Zawislak Decl. Exhs. C, D & H.) | Objection. Legal Conclusion. | <u>Disputed.</u> There is a dispute as to what absences are comparable and what absences are considered leave. See Plaintiffs' Response to Undisputed Material Fact No. 53 incorporated by referenced into this Response. | Sustained _____  Overruled _____ |
| ¶55:  Known Personal Leave of Absence provides a pilot with the opportunity to seek to avoid a schedule for a bid period and is for the purposes of allowing Delta to reduce labor costs during overstaffed periods. (Zawislak Decl. ¶ 26.) | | <u>Disputed.</u> Delta's statements above contradict the terms of the current PWA. Known Personal Leave of Absence is under the "Personal Leave" section of the PWA, and like all Personal Leaves, "[t]he Company may grant a pilot an unpaid personal leave when operations permit." (Zawislak Decl., Ex. C [Doc. 178-3, p. 66, §13(J)(1)].)  [*See* Doc. 206-1, incorporated herein by reference] | Sustained _____  Overruled _____ |
| **C. Plaintiffs' Profit-Sharing Claim** | | | |
| ¶56: Delta pilots are covered by the company's Annual Profit-Sharing Plan (the "Profit-Sharing | | <u>Undisputed.</u> | Sustained _____  Overruled _____ |

| | | | |
|---|---|---|---|
| Plan"). (Zawislak Decl. ¶ 22 and Ex. G.) | | | |
| ¶57: Under the Profit-Sharing Plan, a pilot may receive a cash award for each year when Delta makes profit-sharing payments. (Zawislak Decl. ¶ 22 and Ex. G.) | | <u>Undisputed.</u> | Sustained _____ Overruled _____ |
| ¶58: The Profit-Sharing Plan determines cash awards by a set percentage of a pilot's "Annual Compensation." (Zawislak Decl. ¶ 22 and Ex. G.) | | <u>Undisputed.</u> | Sustained _____ Overruled _____ |
| ¶59: In general, the Profit-Sharing Plan does not "impute earnings" that a pilot has not actually earned during leaves of absence. (Zawislak Decl. Exh. G, Article 2.3.) | | <u>Disputed.</u> Misstates the text of the Profit-Sharing Plan: "With respect to a Participant who is on an approved Military Leave of Absence, his or her Annual Compensation shall be equal to the earnings the Participant would have received had the individual been actively employed by Delta." (Zawislak Decl., Ex. G [Doc. 178- 3, pp. 170-171].) [*See* Doc. 206-1, | Sustained _____ Overruled _____ |

| | | | |
|---|---|---|---|
| | | incorporated herein by reference] | |
| ¶60: There is one exception to this rule, however. The Profit-Sharing Plan does impute earnings for MLOA periods when determining a pilot's Annual Compensation. (Zawislak Decl. Exh. G, Articles 2.3(b) and 2.6.) | | Disputed because there are other leaves, such as Jury Duty, Sick Leave and FAA Leave, that are absences from Delta, but provide pay and therefore Profit Sharing payments based on that amount of pay. (Zawislak Decl., Exs. C, D [Doc. 178-3, pp. 59-81].)<br><br>[*See* Doc. 206-1, incorporated herein by reference] | Sustained<br>_____<br><br>Overruled<br>_____ |
| **D. Plaintiffs' Discrimination Claim** | | | |
| ¶61: Reep averaged more days of military leave per year in the 6 years thereafter than in the four years prior to his alleged "harassment." (Zawislak Decl. ¶ 13.) | Objection. Misleading. | Disputed. Reep was harassed by Delta prior to 2010, and because of this harassment, he reported less military leave in 2009. (Graham Depo., Ex. 12 [Doc. 201-12].) Reep only took 28 days of MLOA in 2010. (Zawislak Decl., Ex. F [Doc 178-3, p. 161].) Reep performed military duty every month from March 2001 through December 2016, often without taking MLOA, because he was specifically harassed by Delta for taking too | Sustained<br>_____<br><br>Overruled<br>_____ |

| | | much MLOA, and he informed Delta of this fact. (Graham Depo., Ex. 12 [Doc. 201-12]; Reep Depo., Ex. 3 [Doc. 172-3; Matter Decl., Ex. 2.)<br><br>[*See* Doc. 206-1, incorporated herein by reference] | |
|---|---|---|---|
| ¶62: Sorenson testified that he could not identify any economic damages from alleged harassment. (Sorenson Dep. 157:10-22.) | | <u>Disputed</u>. Sorenson identified economic damages from harassment and the concurrent duty policy. But for the concurrent duty policy, Sorenson would have earned additional pay and benefits with both Delta and the military. (Sorenson Depo., Ex. 4 [Doc. 175-4, pp. 6-7].) The policy forced him to take MLOA from Delta, losing pay at Delta, on days in which he could have performed both Delta and military duty but did not. (<u>Id</u>.)<br><br>[*See* Doc. 206-1, incorporated herein by reference] | Sustained _____<br><br>Overruled _____ |
| ¶63: Delta's Flight Operations Manual states that "a pilot performing military duty . . . is ineligible | | <u>Disputed</u>. Delta references the December 30, 2016 Flight Operations Manuals ("FOM"), but this | Sustained _____<br><br>Overruled |

| | | | |
|---|---|---|---|
| to perform Delta duties in any capacity . . ." ("Concurrent Duty" policy). (Sorenson Dep. Ex. 11, p. 7.) | | language was only included in the FOM on or after August 31, 2016. (Billy Decl. ¶18; Sorenson Depo., Ex. 11 [Doc. 175-11, p. 7].) From approximately 2006, up until August 30, 2016, Delta's concurrent duty policy was Case 1:17-cv-00541-ELR Document 206-1 Filed 05/12/22 Page 37 of 119 38 listed in the FOM as follows: "It is Delta's policy that a pilot participating in active military duty is ineligible to perform Delta duties in any capacity." (Billy Decl. ¶18.)<br><br>[*See* Doc. 206-1, incorporated herein by reference] | _____ |
| ¶64: Delta's position is that allowing a pilot to simultaneously be on military orders and performing Delta duties has consequences that include, but are not limited to: (i) placing Delta's operations at risk due to a pilot's uncertain availability created by | Objection. Argumentative. | <u>Disputed.</u> This is pure argument rather than alleged fact. Disputed because there is no evidence that Delta's operations were put at risk due to pilots performing military duty on the same day they performed Delta duty. Delta is attempting to justify its discriminatory concurrent duty policy by stating that Delta's | Sustained _____<br><br>Overruled _____ |

| | | | |
|---|---|---|---|
| simultaneous military obligations; and (ii) the obtainment of pay, benefits, and other privileges when inappropriately remaining on active status at Delta. (Reep Dep. Ex. 8, p. 1.) | | operations are at risk of a pilot performs military duty on his or her own time, yet Delta provides no examples of this scenario actually occurring. There is no actual evidence that Plaintiffs Reep, McLean, Doyle, Smith and Sorenson ever placed Delta's operations at risk due to performing military duty the same day as performing Delta duty, ever missed a Delta flight assignment while on reserve with Delta, or were ever even late for a Delta flight. (Billy Decl. ¶¶37, 49, 52-54.) Many Delta pilots have second businesses or income streams, and Delta does not prevent any pilot, other than military pilots, from obtaining pay, benefits, and other privileges, while engaging in those activities, even when they occur on the same day as they perform services for Delta. (Billy Decl. Ex. 5, §11.5.7, DELTA0003607866; Ex. 7, §28.5.6, DELTA000285264; Ex. 19, DELTA000094064.) | |

| | | | |
|---|---|---|---|
| | | "[M]ilitary pilots are being singled out for double-dipping where pilots with side-business (sic) are not." (Deposition of Barry Behnfeldt ("Behnfeldt Depo."), Ex. 36 [Doc. 198-36].) "[A] pilot can have a business at home and get paid for that while sitting long call (or even short call), but a Military pilot cannot perform Military service while on long call without fearing for retribution if he is ever asked for orders." (Id.) Similarly, if a pilot calls in sick from Delta such that the pilot can't fly, but can perform other work, that pilot is not prevented by Delta from performing any other non-military activity while they are recovering on paid sick leave. (Zawislak Decl., Ex. D [Doc. 178-3, pp. 70-81, §14, Sick Leave].)<br><br>[*See* Doc. 206-1, incorporated herein by reference] | |
| ¶65: When a pilot gives notice of military duties, Delta codes those dates as | | <u>Disputed</u>, in part. Delta does not immediately post the pilot's leave on his/her schedule. | Sustained ____ <br><br>Overruled |

| | | | |
|---|---|---|---|
| legally mandated military leave of absence days where Delta cannot require the pilot to perform any duties. (Zawislak Decl. ¶ 10.) | | (Sorenson Decl., para 28) Plaintiff admits that if a pilot provides military duty to Delta, Delta codes that duty as requiring military leave. If this occurs prior to being awarded a Delta schedule, Delta then requires the pilot to work for Delta on what would otherwise be a day or days off.<br><br>[*See* Doc. 206-1, incorporated herein by reference] | _____ |
| ¶66:  Delta hired Smith as a pilot in 2007. (Smith Dep. 83:10-15.) | | Plaintiffs Sorenson and Reep incorporate by reference the response lodged by Plaintiffs McLean, Smith and Doyle in response to this fact. | Sustained _____<br><br>Overruled _____ |
| ¶67:  From August 2008 to October 2016, Smith was on a continuous MLOA. (Id. at 221:24-222:5.) | | Plaintiffs Sorenson and Reep incorporate by reference the response lodged by Plaintiffs McLean, Smith and Doyle in response to this fact. | Sustained _____<br><br>Overruled _____ |
| ¶68:  After retiring from the military in 2016, Smith sought reemployment from Delta. (Smith Dep. 35:14-20.) | | Plaintiffs Sorenson and Reep incorporate by reference the response lodged by Plaintiffs McLean, Smith and Doyle in response to this fact. | Sustained _____<br><br>Overruled _____ |

| | | | |
|---|---|---|---|
| ¶69:  In doing so, he represented to Delta that his MLOA was exempt from the five-year limit under 10 U.S.C. § 12301(d), which exempts voluntary service when a reservist is retained on active duty by authority of "the Secretary concerned." (Smith Dep. 196:10-197:1, 202:2-12; Ex. 8.) | | Plaintiffs Sorenson and Reep incorporate by reference the response lodged by Plaintiffs McLean, Smith and Doyle in response to this fact. | Sustained _____ Overruled _____ |
| ¶70:  Smith testified that, under military policy, any such exemption must be stated on his relevant military orders, which must specifically state that the service is "exempt." (Smith Dep. 237:2-6, 239:3-8.) | Plaintiffs Sorenson and Reep incorporate by reference any objections lodged by Plaintiffs McLean, Smith and Doyle in response to this fact. | Plaintiffs Sorenson and Reep incorporate by reference the response lodged by Plaintiffs McLean, Smith and Doyle in response to this fact. | Sustained _____ Overruled _____ |
| ¶71:  None of Smith's military orders for the period in question state that his service was exempt and, even after Delta gave him an extensive leave of absence to locate such an order, he did not present to Delta | Plaintiffs Sorenson and Reep incorporate by reference any objections lodged by Plaintiffs McLean, Smith and Doyle in response to this fact. | Plaintiffs Sorenson and Reep incorporate by reference the response lodged by Plaintiffs McLean, Smith and Doyle in response to this fact. | Sustained _____ Overruled _____ |

| | | | |
|---|---|---|---|
| any document from the Secretary of the Navy stating that his relevant service was exempt. (Smith Dep. 238:19-22, 255:20-256:7, 266.) | | | |
| ¶72:  Not only did Smith never present such documents to Delta, the Office of the Assistant Secretary of the Navy sent Smith an email expressly stating that his relevant service was not exempt. (Smith Dep. Ex. 14, pp. 3-4.) | | Plaintiffs Sorenson and Reep incorporate by reference the response lodged by Plaintiffs McLean, Smith and Doyle in response to this fact. | Sustained _____  Overruled _____ |
| **E. Reep's McLean's and Doyle's Wrongful Termination Claims** | | | |
| ¶73:  Delta hired Reep in 1998, and he worked as a First Officer based in Atlanta during the relevant period. (Reep Dep. 19:20-20:5.) | Objection. Misstates/lacking citation as to Reep's base. | <u>Undisputed</u> that Reep was hired by Delta Air Lines in 1998 and was a First Officer based in Atlanta. | Sustained _____  Overruled _____ |
| ¶74:  Since 1989, Reep has been a member of the Florida Air National Guard ("FANG"), and he flew for FANG as | Objection. Ambiguous. | <u>Disputed.</u> Reep was a member of the FANG as an F-15 pilot and his unit was based in Jacksonville, but he did not only fly F-15's from | Sustained _____  Overruled _____ |

| | | | |
|---|---|---|---|
| an F-15 pilot from his base in Jacksonville, Florida. (Reep Dep. 16:20-17:13, 18:16-19.) | | his base in Jacksonville. (Reep Dep., pp. 19:25-20:1 [Doc. 172].) | |
| ¶75:  Reep also performed duties at his base, including supervising all flying at the base (in addition to also being a practicing attorney with an active law practice). (Reep Dep. 13:9-14:25, 49:11-50:7.) | Objection. Vague as time. | Disputed. Reep did not "supervise all flying at the base." (Reep Depo., p. 19:3-12 [Doc. 172].) Reep is a practicing attorney, but the hours spent practicing vary significantly. (Id. at p. 14:9-25.) | Sustained _____  Overruled _____ |
| ¶76:  On September 30, 2016, Delta's then Vice President of Flying Operations, Jim Graham, issued Reep a Letter of Termination. (Reep Dep. 54:24-55:3; Ex. 8.) | | Undisputed as to the fact that Jim Graham issued Reep a Letter of Termination on September 30, 2016, but the reasoning contained in that letter is disputed because it was issued after an April 26, 2016 Notice of Intent to Terminate employment Case 1:17-cv-00541-ELR Document 206-1 Filed 05/12/22 Page 45 of 119 46 ("NOIT"), which focused exclusively on military leave and concurrent duty. (Reep Depo., Ex. 4 [Doc. 172-4].) [See Doc. 206-1, incorporated herein by reference] | Sustained _____  Overruled _____ |

| | | | |
|---|---|---|---|
| ¶77: Graham stated in the letter that a Delta investigation identified two entirely independent bases for Reep's termination. (Reep Dep. Ex. 8.) | | <u>Disputed</u> as to the sequence of events and Delta's omitted facts. The yearlong investigation of Reep culminated in an April 26, 2016 Notice of Intent to Terminate employment ("NOIT") which focused exclusively on military leave and concurrent duty. (Reep Depo., Ex. 4 [Doc. 172-4].) The only mention of "sick leave abuse" was related to five occasions where Reep was sick from Delta, and then performed some military duty on the same day. (Id.) Realizing that USERRA protected Reep, the NOIT was rescinded so that additional justification could be fabricated, and the investigation continued. (Billy Decl. ¶¶34-40.) [*See* Doc. 206-1, incorporated herein by reference] | Sustained _____ Overruled _____ |
| ¶78: First, Delta learned that, on repeated occasions in 2013 and 2015, Reep called in sick for Delta-assigned flight | | <u>Disputed.</u> Delta omits facts and prior factual history that counter its own false allegations. Delta knew that Reep was an attorney as early | Sustained _____ Overruled _____ |

| | | | |
|---|---|---|---|
| rotations when he was actually on vacation, practicing law in court, and/or flying for FANG. (Id. at Ex. 8, pp. 2-3.) | | as March 2015, but in October 2016, Delta falsely claimed this "new information came to light." (Deposition of Christopher Frederick ("Frederick Depo."), Ex. 16 [Doc. 199-16]; Reep Depo., Ex. 8 [Doc. 172-8, p. 3].) Reep "didn't call[] in sick in order to be in court" because he didn't need to, as other attorneys at his firm would attend hearings. (Declaration of Thomas J. Munger ("Munger Decl."), Ex. F [Doc. 178-4, p. 88]; Billy Decl., Ex. 17, DELTA000353566-DELTA000353579.) Other completely unsubstantiated accusations include Reep being on sick leave at Delta to: 1) go on vacation, and 2) to fly for the military. (Frederick Depo., Ex. 26.3 [Doc. 199-26, p.3]; Billy Decl. ¶¶35-39.) Reep was never found to have flown for the military while sick from Delta, and Reep was never found to be out of position for a Delta flight or late for a Delta trip. (Billy Decl. ¶37.) | |

| | | | |
|---|---|---|---|
| | | Regarding his medical illnesses, Delta secured documentation directly from medical providers to substantiate all but one of Reep's sick leave periods, and it's not unreasonable for a person to recover from a cold without formal doctor care. (Reep Depo., pp. 69:9-71:6 [Doc. 172]; Reep Depo., Ex. 9 [Doc. 172-9]; Billy Decl. ¶¶39.) If Reep was sick from Delta, he was still physically capable of performing some other life activities. But Reep told Delta that he did not call in sick from Delta in order to perform any other activity. (Billy Decl. Ex. 17, DELTA000353566-DELTA000353579.)<br><br>[*See* Doc. 206-1, incorporated herein by reference] | |
| ¶79: For example, it is undisputed that Reep called in sick for two scheduled flight rotations from July 10-13 and July 14-16, 2013. (Reep Dep. Ex 8, pp. 203; Ex. 10, pp. 7-8.) | | <u>Disputed.</u> This alleged fact omits critical background and foundation. It is not disputed that Reep called in sick for two scheduled flight rotations from July 10-13 and July 14-16, 2013, | Sustained _____<br><br>Overruled _____ |

| | | but Reep provided medical releases to Delta as requested by Delta for all questionable periods of sick leave, and Delta secured information that showed that Reep was under the care of medical professionals, was recovering from an injury, and was unable to fly for Delta. (Reep Depo., p. 69:9-12 [Doc. 172].) Medical documentation was secured by Delta for all periods except January 2015, because a medical provider was not engaged during that single illness. (Id.)<br><br>[*See* Doc. 206-1, incorporated herein by reference] | |
| ¶80: In reality, however, Reep used those days to: (i) attend a sentencing hearing on July 12; (ii) make a court appearance in one matter and, with respect to another matter, "discussed the case in length" with the prosecutor on July 15; and (iii) handle two pre-trial | Objection. Argumentative. | <u>Disputed.</u> Reep "didn't call[] in sick in order to be in court" because he didn't need to, as other attorneys at his firm would attend hearings. (Munger Decl., Ex. F [Doc. 178-4, p. 88] (lists Billy Gavins, Esquire appearing for Law Offices of Randy Reep on January 22, 2015); Reep Depo., pp. 66:24-67:4, p. 67:5-14 [Doc. 172]; Billy | Sustained<br>_____<br><br>Overruled<br>_____ |

| | | | |
|---|---|---|---|
| conferences on July 16. (Munger Decl. Exhs. B-E; Reep Dep. 66:22-67:4.) | | Decl. Ex. 17, DELTA000353566-DELTA000353579.) Regarding his medical illnesses, Delta secured documentation directly from medical providers to substantiate all but one of Reep's sick leave periods, and it's not unreasonable for a person to recover from a cold without formal doctor care. (Reep Depo., pp. 69:9-71:6 [Doc. 172]; Reep Depo., Ex. 9 [Doc. 172- 9]; Billy Decl. ¶39.) If Reep was sick from Delta, he was still physically capable of performing some other life activity. But Reep told Delta that he did not call in sick from Delta in order to perform military duty or to practice law, and testify to the same at trial. (Billy Decl., Ex. 17, DELTA000353566-DELTA000353579.)<br><br>[*See* Doc. 206-1, incorporated herein by reference] | |
| ¶81: Reep also called in sick for a January 22-25, 2015 rotation. (Reep Dep. 71:2-6; | | <u>Undisputed</u> in that Reep called in sick for a January 22-25, 2015 rotation, but Delta's | Sustained ____<br><br>Overruled |

| | | | |
|---|---|---|---|
| Ex. 8, p. 3.) | | inferences when it makes this statement are disputed. Delta secured documentation directly from medical providers to substantiate all but one of Reep's sick leave periods, and it's not unreasonable for a person to recover from a cold without formal doctor care. (Reep Depo., pp. 69:9-71:6 [Doc. 172], Ex. 9 [Doc. 172- 9]; Billy Decl. ¶39.) If Reep was sick from Delta, he was still physically capable of performing some other activities. But Reep told Delta that he did not call in sick from Delta in order to perform any other activity, and will do so again at trial. (Billy Decl. Ex. 17, DELTA000353566-DELTA000353579.)<br><br>[*See* Doc. 206-1, incorporated herein by reference] | _____ |
| ¶82: Reep testified that he does not know why he claimed he was sick for that period, and he could not provide any document showing that he was sick | | <u>Disputed.</u> Delta makes this claim out of context and makes inappropriate inferences with incomplete facts. Delta secured documentation directly from medical providers to substantiate | Sustained _____<br><br>Overruled _____ |

| | | |
|---|---|---|
| during that time. (Reep Dep. 71:17-73:15.) | | all but one of Reep's sick leave periods, and it's not unreasonable for a person to recover from a cold without formal doctor care. (Reep Depo., pp. 69:9-71:6 [Doc. 172], Ex. 9 [Doc. 172-9]; Billy Decl. ¶39.) If Reep was sick from Delta, he was still physically capable of performing some other activity. But Reep told Delta that he did not call in sick from Delta in order to perform any other activity, and will do so again at trial. (Billy Decl. Ex. 17, DELTA000353566-DELTA000353579.)<br><br>[*See* Doc. 206-1, incorporated herein by reference] | |
| ¶83:  Instead of staying home sick, Reep: (i) made a court appearance on January 22; (ii) drove home from a vacation that same day (as he told a judge); and (iii) attended a court hearing on January 23. (Munger Decl. Ex. F and G; Reep Dep. 71:7-15.) | | Disputed. The facts related to military and Delta schedule data are inconsistent with alleged statements, highlighted by Delta, that were used by Reep, to provide simple explanations of schedule conflicts to the Court. According to Delta's records, Reep flew for Delta from January 16, 2015, through January 18, | Sustained _____<br><br>Overruled _____ |

| | | 2016, and then performed military duty on January 21, 2015. (Billy Decl. ¶36.) Reep called in sick for a Delta rotation that was scheduled to commence at some time on January 22, 2015, but even though Reep was sick from Delta, he was still physically capable of performing some other life activities. Reep told Delta that he did not call in sick from Delta in order to go to court hearings, and will do so again at trial. (Billy Decl. Ex. 17, DELTA000353566-DELTA000353579.)<br><br>[*See* Doc. 206-1, incorporated herein by reference] | |
|---|---|---|---|
| ¶84: Graham's Termination Letter to Reep stated: "Your abuse of . . . sick leave in any one of these instances is an independent ground for termination." (Reep Dep. Ex. 8, p. 3) | | <u>Undisputed</u> as to the fact that this quotation was written in Graham's Termination Letter, but disputed in that Reep did not abuse sick leave, and there is no evidence that any pilot from Delta has ever been terminated due to any single unverified use of sick leave, or for performing any other | Sustained ____<br><br>Overruled ____ |

| | | | |
|---|---|---|---|
| | | activity while also on sick leave from Delta. (Billy Decl. ¶¶34-40.)<br><br>[*See* Doc. 206-1, incorporated herein by reference] | |
| ¶85: Reep fully understood that, under Delta policy, a pilot "can't be on duty to Delta and duty to the military at the same time." (Reep Dep. 82:17-83:1.) | | Disputed. The deposition testimony is being taken out of context and contradictory to facts in evidence. "Concurrent duty was a term that was generated after [Reep's] termination." (Reep Depo., p. 82:10-16 [Doc. 172].) Reep's response cited above was his answer to what the concurrent is "today." (Id., pp. 82:17-83:1.)<br><br>[*See* Doc. 206-1, incorporated herein by reference] | Sustained _____<br><br>Overruled _____ |
| ¶86: During the period from April 1, 2012 through July 31, 2015, Reep performed military duty for FANG on numerous days that he did not report to Delta in advance (or ever), as required by USERRA and Delta policy. (Reep Dep. 55:8-19; Ex. 8, pp. 1-2.) | Objection. Argumentative. Objection. Legal conclusion. | Disputed. Deposition testimony is being taken out of context and contradictory to facts in evidence. Admit that Reep performed military duty on numerous days that he did not report to Delta, but dispute that USERRA requires military members to report any military duty to employers, unless the employee is required to | Sustained _____<br><br>Overruled _____ |

|  |  | be absent from employment due to the military service. USERRA only requires employees to provide verbal or written notice of their military duty if the employee is absent, as in "the employee intends to leave the employment position to perform service in the uniformed services." 38 U.S.C. §4316(b); 20 C.F.R. § 1002.85(a)(emphasis added); 38 U.S.C. §4312. If one can perform military duties on personal days, on personal time, or one can perform tasks such as telecommuting or administrative work from the comfort of one's own home or hotel room, one need not inform the employer nor request time off. The timing only needs to be "reasonable under the circumstances," if an absence from the employer is required. 20 C.F.R. § 1002.85(d). Non-military pilots are not required to report any activity to Delta that occurs during their free |  |
|--|--|--|--|

| | | | |
|---|---|---|---|
| | | time. (Billy Decl. ¶34.) [*See* Doc. 206-1, incorporated herein by reference]<br><br>Neither USERRA nor the military prevent service members from having more than one job, "moonlighting" or performing civilian employment while also serving in the uniformed services. "[I]f the employee [on military leave] . . . spends off-duty time during that [military] assignment moonlighting as a security guard" the employee may do so. 20 C.F.R. § 1002.73. | |
| ¶87: As a result, there were at least 77 days when Reep was paid by Delta to be on-call for flights from Atlanta when he was instead on military duty for FANG (including flying for FANG) in Jacksonville. (Reep Dep. Ex. 8, p. 2.) | | <u>Undisputed</u> that at times, over a number of years, Reep performed military duty while on-call for Delta, but dispute the remaining allegation and inferences because Reep performed actual work for Delta, and either flew for Delta, or was on call and was available to commute the Atlanta and make on time flights for Delta, if he was called by Delta to do so. (Billy Decl. ¶37; Frederick Depo, Ex. 19 | Sustained ____<br><br>Overruled ____ |

| | | [Doc. 199-19, p. 3].) [*See* Doc. 206-1, incorporated herein by reference] | |
|---|---|---|---|
| ¶88: Reep flew for FANG in Jacksonville, sometimes twice a day, when he was being paid by Delta to be on-call for flights out of Atlanta. (Reep Dep. Ex. 8, p. 2.) | | <u>Disputed</u> in that the statement above makes inferences not supported by evidence and is inaccurate. Delta is not specific as to the days or circumstances it is alleging military flying occurred; but regardless, while on-call for Delta, Delta was required to provide Reep with at least 12 hours notice for any Delta flight. (Reep Depo., Ex. 8 [Doc. 172-8, p. 2].) So long as Reep wasn't standing a formal alert for the FANG, or was scheduled in advance, rather than acting as fill-in if needed, Reep was available to commute to Atlanta and make on time flights for Delta, if he was called by Delta to do so. (Frederick Depo, Ex. 19 [Doc. 199-19, p. 3].) This is evident by the fact that Reep was never late for a Delta flight or out of position when called by Delta to fly. (Billy Decl. ¶37.) | Sustained _____ Overruled _____ |

| | | | |
|---|---|---|---|
| | | [*See* Doc. 206-1, incorporated herein by reference] | |
| ¶89: On five occasions, Reep was on a MLOA for more than 30 consecutive days but *never* notified Delta. (Reep Dep. Ex. 8, p. 2; Reep Dep. 59:17-60:6.) | | <u>Disputed.</u> Military leave of absence (MLOA) is a status at a civilian employer and the only way to be on MLOA is if you notify your company. Delta has not identified which periods of time it is referring to in this alleged fact. Reep may have performed military duty and not notified Delta that he was doing so, but USERRA only requires employees to provide verbal or written notice of their military duty if Case 1:17-cv-00541-ELR Document 206-1 Filed 05/12/22 Page 55 of 119 56 the employee is absent, as in "the employee intends to leave the employment position to perform service in the uniformed services." 38 U.S.C. §4316(b); 20 C.F.R. § 1002.85(a)(emphasis added); 38 U.S.C. §4312.<br><br>[*See* Doc. 206-1, incorporated herein by reference] | Sustained _____<br><br>Overruled _____ |

| | | | |
|---|---|---|---|
| ¶90:  These violations allowed Reep to obtain 18 vacation days to which he was not entitled. (Reep Dep. Ex. 8, p. 2.) | Objection. Argumentative. Objection. Legal Conclusion as to "violations." | <u>Disputed.</u> Deposition testimony is being taken out of context and contradictory to facts in evidence. Reep has not violated any provision of USERRA, so Delta stating there are "violations" is in dispute. Reep was available to Delta when he was not on MLOA, but he was available to Delta when performing military duty and not on MLOA if called by Delta, even if he was working at the FANG, and like any other employee with a second career or a hobby, Reep is entitled to vacation accrued while in the service of Delta. (Billy Decl. ¶40; Graham Depo., Ex. 16 [Doc. 201-16].)<br><br>[*See* Doc. 206-1, incorporated herein by reference] | Sustained<br>_____<br><br>Overruled<br>_____ |
| ¶91:  As part of its investigation, Delta asked Reep to provide documentation of his military activities and orders to support his claim that he could have reported | | <u>Disputed.</u> Reep did provide proper documentation to support all MLOA. Delta's request essentially asks Reep prove a negative, yet Delta has provided no evidence to show that | Sustained<br>_____<br><br>Overruled<br>_____ |

| | | | |
|---|---|---|---|
| to assigned Delta flights from Atlanta when under military obligation to perform duties in Jacksonville at the same time, and Reep refused to provide the requested documentation. (Reep Dep. Ex. 8, p. 2.) | | Reep was ever late for a Delta flight, or out of position when called by Delta to fly while on call for Delta, or ever put Delta's operation at risk due to performing military duty on the same day he had Delta duty. (Billy Decl. ¶37.)<br><br>[*See* Doc. 206-1, incorporated herein by reference] | |
| ¶92: In 2008, McLean became a Delta First Officer based in Minneapolis-St. Paul. (McLean Dep. 115:21-24, 116:22-117:11.) | Plaintiffs Sorenson and Reep incorporate by reference any objections lodged by Plaintiffs McLean, Smith and Doyle in response to this fact. | Plaintiffs Sorenson and Reep incorporate by reference the response lodged by Plaintiffs McLean, Smith and Doyle in response to this fact. | Sustained<br>_____<br>Overruled<br>_____ |
| ¶93: Following a Delta investigation, Graham issued McLean a Notice of Intent to Terminate letter ("NITL") on January 27, 2017. (McLean Dep. Ex. 9.) | Plaintiffs Sorenson and Reep incorporate by reference any objections lodged by Plaintiffs McLean, Smith and Doyle in response to this fact. | Plaintiffs Sorenson and Reep incorporate by reference the response lodged by Plaintiffs McLean, Smith and Doyle in response to this fact. | Sustained<br>_____<br>Overruled<br>_____ |
| ¶94: Graham concluded that there were multiple events that independently warranted the NITL. (McLean Dep. Ex. 9.) | Plaintiffs Sorenson and Reep incorporate by reference any objections lodged by Plaintiffs McLean, Smith and Doyle in response to this fact. | Plaintiffs Sorenson and Reep incorporate by reference the response lodged by Plaintiffs McLean, Smith and Doyle in response to this fact. | Sustained<br>_____<br>Overruled<br>_____ |

| | | | |
|---|---|---|---|
| ¶95: On October 6, 2014, McLean had hernia surgery and informed Delta that, because of recovery restrictions, he would be on Delta paid sick leave for 8 weeks. (McLean Dep. 221:15-222:12; Ex. 9, p. 2.) | Plaintiffs Sorenson and Reep incorporate by reference any objections lodged by Plaintiffs McLean, Smith and Doyle in response to this fact. | Plaintiffs Sorenson and Reep incorporate by reference the response lodged by Plaintiffs McLean, Smith and Doyle in response to this fact. | Sustained _____  Overruled _____ |
| ¶96: On October 20— while on sick leave— McLean asked his immediate boss (Chief Pilot John Underwood) if he could fly from Minneapolis to Tampa using Delta flight privileges. (McLean Dep. 222:13-18; Ex. 9, p. 2.) | Plaintiffs Sorenson and Reep incorporate by reference any objections lodged by Plaintiffs McLean, Smith and Doyle in response to this fact. | Plaintiffs Sorenson and Reep incorporate by reference the response lodged by Plaintiffs McLean, Smith and Doyle in response to this fact. | Sustained _____  Overruled _____ |
| ¶97: Underwood knew that McLean's military base was in Tampa, and he asked McLean why he needed to fly there. (McLean Dep. Ex. 9, p. 2.) | Plaintiffs Sorenson and Reep incorporate by reference any objections lodged by Plaintiffs McLean, Smith and Doyle in response to this fact. | Plaintiffs Sorenson and Reep incorporate by reference the response lodged by Plaintiffs McLean, Smith and Doyle in response to this fact. | Sustained _____  Overruled _____ |
| ¶98: McLean responded that he needed to attend a doctor's appointment. (McLean Dep. Ex. 9, p. 2.) | Plaintiffs Sorenson and Reep incorporate by reference any objections lodged by Plaintiffs McLean, Smith and Doyle in | Plaintiffs Sorenson and Reep incorporate by reference the response lodged by Plaintiffs McLean, Smith and Doyle in response to this | Sustained _____  Overruled _____ |

| | response to this fact. | fact. | |
|---|---|---|---|
| ¶99: Underwood approved McLean's request but told him that he could not remain on Delta sick leave if he intended to perform military work. (McLean Dep. Ex. 9, p. 2.) | Plaintiffs Sorenson and Reep incorporate by reference any objections lodged by Plaintiffs McLean, Smith and Doyle in response to this fact. | Plaintiffs Sorenson and Reep incorporate by reference the response lodged by Plaintiffs McLean, Smith and Doyle in response to this fact. | Sustained _____ Overruled _____ |
| ¶100: The next day, October 21, Underwood sent McLean an email warning him that he could be terminated if he performed military work in Tampa while on sick leave. (McLean Dep. Ex. 6; Ex. 9, p. 2.) | Plaintiffs Sorenson and Reep incorporate by reference any objections lodged by Plaintiffs McLean, Smith and Doyle in response to this fact. | Plaintiffs Sorenson and Reep incorporate by reference the response lodged by Plaintiffs McLean, Smith and Doyle in response to this fact. | Sustained _____ Overruled _____ |
| ¶101: Nonetheless, McLean not only performed military duty at his Tampa base while on sick leave, he also flew Air Force jets on nine days when he told Delta that he was too sick to fly for the company. (McLean Dep. 222:19-223:2; Ex. 9, p. 2.) | Plaintiffs Sorenson and Reep incorporate by reference any objections lodged by Plaintiffs McLean, Smith and Doyle in response to this fact. | Plaintiffs Sorenson and Reep incorporate by reference the response lodged by Plaintiffs McLean, Smith and Doyle in response to this fact. | Sustained _____ Overruled _____ |
| ¶102: Delta—as part of a company investigation—also found ten other days | Plaintiffs Sorenson and Reep incorporate by reference any objections lodged by | Plaintiffs Sorenson and Reep incorporate by reference the response lodged by Plaintiffs | Sustained _____ Overruled |

| | | | |
|---|---|---|---|
| when McLean worked for the military while he was on sick leave. (McLean Dep. Ex. 9, p. 2.) | Plaintiffs McLean, Smith and Doyle in response to this fact. | McLean, Smith and Doyle in response to this fact. | _____ |
| ¶103: McLean admits that he performed military work while on Delta paid sick leave. (McLean Dep. 180:22-25.) | Plaintiffs Sorenson and Reep incorporate by reference any objections lodged by Plaintiffs McLean, Smith and Doyle in response to this fact. | Plaintiffs Sorenson and Reep incorporate by reference the response lodged by Plaintiffs McLean, Smith and Doyle in response to this fact. | Sustained _____ Overruled _____ |
| ¶104: Graham's NITL to McLean stated, "[y]our misuse of . . . sick leave provides an independent basis for termination." (McLean Dep. Ex. 9, p. 2.) | Plaintiffs Sorenson and Reep incorporate by reference any objections lodged by Plaintiffs McLean, Smith and Doyle in response to this fact. | Plaintiffs Sorenson and Reep incorporate by reference the response lodged by Plaintiffs McLean, Smith and Doyle in response to this fact. | Sustained _____ Overruled _____ |
| ¶105: McLean also engaged in the following conduct: (i) twenty-five times reporting to Delta that he was on military leave when he was not; (ii) many times failing to provide Delta with advance notice of military leave as required by USERRA; (iii) performing military duties (including | Plaintiffs Sorenson and Reep incorporate by reference any objections lodged by Plaintiffs McLean, Smith and Doyle in response to this fact. | Plaintiffs Sorenson and Reep incorporate by reference the response lodged by Plaintiffs McLean, Smith and Doyle in response to this fact. | Sustained _____ Overruled _____ |

61

| | | | |
|---|---|---|---|
| flying) when he was on a Delta reserve day; and (iv) flying for Delta on a day when he was supposed to be performing military duties (thus also misleading the military). (McLean Dep. 175:12-16, 216:2-217:8, 218:2-220:10, 224:24-226:6, 228:12-25; Ex. 9, pp. 1-2.) | | | |
| ¶106: When asked why he believed Delta issued him the NITL, McLean responded: "Can't speak to their motives." (McLean Dep. 271:7-9.) | Plaintiffs Sorenson and Reep incorporate by reference any objections lodged by Plaintiffs McLean, Smith and Doyle in response to this fact. | Plaintiffs Sorenson and Reep incorporate by reference the response lodged by Plaintiffs McLean, Smith and Doyle in response to this fact. | Sustained _____ Overruled _____ |
| ¶107: McLean agrees that Delta assumed that the military records it relied on in its investigation were accurate and that those records could have caused Delta to conclude that a pilot lacked integrity and was "intentionally abusing military leave." (McLean Dep. at 228:12- 229:20.) | Plaintiffs Sorenson and Reep incorporate by reference any objections lodged by Plaintiffs McLean, Smith and Doyle in response to this fact. | Plaintiffs Sorenson and Reep incorporate by reference the response lodged by Plaintiffs McLean, Smith and Doyle in response to this fact. | Sustained _____ Overruled _____ |

| | | | |
|---|---|---|---|
| ¶108: Delta's issuance of an NITL to McLean was not a termination event. (Zawislak Decl. Exh. I, § 18.C.1.c.) | Plaintiffs Sorenson and Reep incorporate by reference any objections lodged by Plaintiffs McLean, Smith and Doyle in response to this fact. | Plaintiffs Sorenson and Reep incorporate by reference the response lodged by Plaintiffs McLean, Smith and Doyle in response to this fact. | Sustained _____ Overruled _____ |
| ¶109: Under the PWA, Delta must first issue an NITL to a pilot. (Zawislak Decl. Exh. I, § 18.C.1.c.) | | Undisputed. | Sustained _____ Overruled _____ |
| ¶110: After Delta issues an NITL, the pilot can challenge it through a grievance hearing at which the pilot can be represented by the pilot's union, ALPA. (Zawislak Decl. Exh. I, § 18.C.1.c.) | Plaintiffs Sorenson and Reep incorporate by reference any objections lodged by Plaintiffs McLean, Smith and Doyle in response to this fact. | Plaintiffs Sorenson and Reep incorporate by reference the response lodged by Plaintiffs McLean, Smith and Doyle in response to this fact. | Sustained _____ Overruled _____ |
| ¶111: Delta cannot terminate a pilot until after it holds such a hearing (and issues a written decision on the challenge to the NITL). (Zawislak Decl. ¶ 3; Exh. I, § 18.C.1.c.) | Plaintiffs Sorenson and Reep incorporate by reference any objections lodged by Plaintiffs McLean, Smith and Doyle in response to this fact. | Plaintiffs Sorenson and Reep incorporate by reference the response lodged by Plaintiffs McLean, Smith and Doyle in response to this fact. | Sustained _____ Overruled _____ |
| ¶112: While McLean understood that he could have requested a hearing and sought to have the NITL | Plaintiffs Sorenson and Reep incorporate by reference any objections lodged by Plaintiffs McLean, | Plaintiffs Sorenson and Reep incorporate by reference the response lodged by Plaintiffs McLean, Smith and | Sustained _____ Overruled _____ |

63

| | | | |
|---|---|---|---|
| withdrawn, he instead chose to resign. (McLean Dep. 210:2-7, 269:20-270:17.) | Smith and Doyle in response to this fact. | Doyle in response to this fact. | |
| ¶113: McLean admitted during his deposition that Delta's conclusion was not "based on some anti-military view that Delta has." (McLean Dep. 229:12-16.) | Plaintiffs Sorenson and Reep incorporate by reference any objections lodged by Plaintiffs McLean, Smith and Doyle in response to this fact. | Plaintiffs Sorenson and Reep incorporate by reference the response lodged by Plaintiffs McLean, Smith and Doyle in response to this fact. | Sustained _____ Overruled _____ |
| ¶114: McLean effectively admitted that Delta could have terminated him because it determined he lacked integrity. (McLean Dep. 226:7- 229:8.) | Plaintiffs Sorenson and Reep incorporate by reference any objections lodged by Plaintiffs McLean, Smith and Doyle in response to this fact. | Plaintiffs Sorenson and Reep incorporate by reference the response lodged by Plaintiffs McLean, Smith and Doyle in response to this fact. | Sustained _____ Overruled _____ |
| ¶115: Delta hired Doyle in 2007, and he worked as a First Officer based in Salt Lake City. (Doyle Dep. 50:9-14, 126:3-22.) | Plaintiffs Sorenson and Reep incorporate by reference any objections lodged by Plaintiffs McLean, Smith and Doyle in response to this fact. | Plaintiffs Sorenson and Reep incorporate by reference the response lodged by Plaintiffs McLean, Smith and Doyle in response to this fact. | Sustained _____ Overruled _____ |
| ¶116: Doyle had previously joined the Air Force Reserves in July 2006. (Doyle Dep. 49:22-50:2) | Plaintiffs Sorenson and Reep incorporate by reference any objections lodged by Plaintiffs McLean, Smith and Doyle in response to this fact. | Plaintiffs Sorenson and Reep incorporate by reference the response lodged by Plaintiffs McLean, Smith and Doyle in response to this fact. | Sustained _____ Overruled _____ |
| ¶117: From October 2010 to July 2015, | Plaintiffs Sorenson and Reep incorporate | Plaintiffs Sorenson and Reep incorporate by | Sustained _____ |

| | | | |
|---|---|---|---|
| Doyle was the Command Chief at Hill Air Force Base ("HAB") where his primary duties were flying aircraft. (Doyle Dep. 103:6-106:12.) | by reference any objections lodged by Plaintiffs McLean, Smith and Doyle in response to this fact. | reference the response lodged by Plaintiffs McLean, Smith and Doyle in response to this fact. | Overruled _____ |
| ¶118: When Doyle performed military work, he "absolutely" did so at HAB. (Doyle Dep. 105:6-14.) | Plaintiffs Sorenson and Reep incorporate by reference any objections lodged by Plaintiffs McLean, Smith and Doyle in response to this fact. | Plaintiffs Sorenson and Reep incorporate by reference the response lodged by Plaintiffs McLean, Smith and Doyle in response to this fact. | Sustained _____ Overruled _____ |
| ¶119: On January 22, 2016, Doyle learned that Delta was investigating him for misconduct. (Doyle Dep. 30:13-15, 168:16-24.) | Plaintiffs Sorenson and Reep incorporate by reference any objections lodged by Plaintiffs McLean, Smith and Doyle in response to this fact. | Plaintiffs Sorenson and Reep incorporate by reference the response lodged by Plaintiffs McLean, Smith and Doyle in response to this fact. | Sustained _____ Overruled _____ |
| ¶120: During the investigation, Doyle admitted that he served under military orders while also on duty for Delta—including on reserve days when he needed to be available to fly for Delta. (Doyle Dep. 160:18-20, 214:21-25, 231:19-25; Ex. 8, p. 1.) | Plaintiffs Sorenson and Reep incorporate by reference any objections lodged by Plaintiffs McLean, Smith and Doyle in response to this fact. | Plaintiffs Sorenson and Reep incorporate by reference the response lodged by Plaintiffs McLean, Smith and Doyle in response to this fact. | Sustained _____ Overruled _____ |
| ¶121: Delta also learned during the investigation that | Plaintiffs Sorenson and Reep incorporate by reference any | Plaintiffs Sorenson and Reep incorporate by reference the response | Sustained _____ Overruled |

| | | | |
|---|---|---|---|
| Doyle had been taking paid sick leave (i.e., claiming he was too sick to work for Delta) while on MLOAs (i.e., while working for the military). (Doyle Dep. 235:5-15; Ex. 8, p. 1.) | objections lodged by Plaintiffs McLean, Smith and Doyle in response to this fact. | lodged by Plaintiffs McLean, Smith and Doyle in response to this fact. | _____ |
| ¶122: On May 4, 2016, Delta placed Doyle on paid leave while it continued its investigation. (Doyle Dep. 207:4-14, 260:5-10; Ex. 9.) | Plaintiffs Sorenson and Reep incorporate by reference any objections lodged by Plaintiffs McLean, Smith and Doyle in response to this fact. | Plaintiffs Sorenson and Reep incorporate by reference the response lodged by Plaintiffs McLean, Smith and Doyle in response to this fact. | Sustained _____ Overruled _____ |
| ¶123: Doyle admits that the events Delta considered to have happened—e.g., his improperly taking Delta sick leave while working for the military—could have happened. (Doyle Dep. 342:5-22.) | Plaintiffs Sorenson and Reep incorporate by reference any objections lodged by Plaintiffs McLean, Smith and Doyle in response to this fact. | Plaintiffs Sorenson and Reep incorporate by reference the response lodged by Plaintiffs McLean, Smith and Doyle in response to this fact. | Sustained _____ Overruled _____ |
| ¶124: Doyle admits that Delta could have concluded that his actions had "nefarious intent." (Doyle Dep. 342:5-22.) | Plaintiffs Sorenson and Reep incorporate by reference any objections lodged by Plaintiffs McLean, Smith and Doyle in response to this fact. | Plaintiffs Sorenson and Reep incorporate by reference the response lodged by Plaintiffs McLean, Smith and Doyle in response to this fact. | Sustained _____ Overruled _____ |
| ¶125: On September 8, 2016, while the investigation was ongoing, Doyle resigned. (Doyle Dep. | Plaintiffs Sorenson and Reep incorporate by reference any objections lodged by Plaintiffs McLean, | Plaintiffs Sorenson and Reep incorporate by reference the response lodged by Plaintiffs McLean, Smith and | Sustained _____ Overruled _____ |

| 285:3-12.) | Smith and Doyle in response to this fact. | Doyle in response to this fact. | |
|---|---|---|---|
| **Plaintiffs Additional Material Facts ("PMF")** | | | |
| ¶1:    Delta policy requires pilots with military reserve obligations to post all dates of military service to their Delta schedule, even when the military service takes place on a day off from Delta. [Tully Depo, 79:4-7.] | | | |
| ¶2:  This requirement allows Delta to track the amount and timing of all military service performed by its pilots. [Tully Depo, 57:9-14.] | | | |
| ¶3:  Delta pilots are not required to post to their schedule any *other* non-Delta related activities or side-jobs – just military service. [*See* Frederick Depo, 165:1-20.] | | | |
| ¶4:  Delta's Concurrent Duty policy provides "It is Delta's policy that a | | | |

| | | | |
|---|---|---|---|
| pilot participating in active military duty is ineligible to perform Delta duties in any capacity." (Matter Decl., ¶8, Ex. 2.) | | | |
| ¶5:  This policy targets pilots with military service obligations by prohibiting them from performing military duty on the same day the pilot has an obligation to Delta - even when the military duty does not necessitate an absence from Delta and does not otherwise conflict with or interfere with a Delta obligation. [Sorenson Depo., Ex. 11, Behnfeldt Depo 181:14-18, Ex. 36, Tully Depo, 35:13-21.] | | | |
| ¶6:  Delta policy does not prohibit any other side-job or hobby a pilot wishes to perform on the same day as a Delta obligation. [Tully Depo, 39:1-25, 64:8-13 (pilot cannot perform military | | | |

| | | | |
|---|---|---|---|
| duty even if the potential reserve duty is in 12 hours).] | | | |
| ¶7:  Since at least 2008, Delta pilots seeking a military leave of absence on or near a designated Delta holiday or military leave greater than thirty (30 days) are required to submit a Military Leave Log ("MLOA Log"). [Sorenson Depo, Ex. 11; Behnfeldt Depo, 27:4-10, 29:23-25, 30:1-10, Behnfeldt Depo., Ex. 4, Behnfeldt Depo, 88:18-20, Ex.5 ("This is why the MLOA log was set up, to be used when the requested dates touched holiday periods."), Mangie Depo, **Ex. 9**.] | | | |
| ¶8:  The MLOA Log, which is required by Delta but violative of USERRA (*see* 38 U.S.C. §§ 4302(b) and 4312(a)(1); 20 C.F.R. 1002.85(c)), demands a comprehensive list of information | | | |

| | | | |
|---|---|---|---|
| including, the *reason* for the military leave and the names and contact information for the pilot's chain of command (squadron and wing commander). [Mangie Depo, Ex. 9] | | | |
| ¶9:  Submission of the MLOA Log does not automatically reflect military leave on the pilot's schedule. [Behnfeldt Depo, 84:2-10.] | | | |
| ¶10: Instead, submission of the MLOA Log auto-generates an email to Delta military leaves management, Jim Mangie ("Mangie"). [Behnfeldt Depo, 72:12-25.] | | | |
| ¶11: Mangie forwards the email to the pilot's Chief Pilot (boss), who oftentimes supervises approximately 1500 pilots. [CITE] | | | |
| ¶12: Given the number of pilots supervised, pilots seldom interact with their chief pilot except for military | | | |

| | | | |
|---|---|---|---|
| leave and unique personnel issues. [CITE] | | | |
| ¶13: Upon receipt of the email from Mangie, the Chief Pilot makes contact with the pilot seeking military leave to "obtain more information" to determine "if the leave is really necessary", to "verbally counsel" the pilot on the amount of military leave he is taking or to discuss moving the military leave. [Behnfeldt Depo, 35:18-22, 122:11-20, Ex.17 (during the summer schedule "any MLOA is excessive", in a "perfect world" there wouldn't be military leave use.)] | | | |
| ¶14: Given that all pilots with reserve obligations are aggressively counseled on Delta's military policies and the impact reserve obligations have on Delta's operations, pilots who submit a military leave | | | |

| | | | |
|---|---|---|---|
| request are already keenly aware of the scrutiny the leave request will cause and have already considered whether the leave is "really necessary." [Tully Depo, 42:1 (Delta made it clear during new hire training that Delta did not want pilots taking military leave.).] | | | |
| ¶15: Pilots who requested military leave too early in their Delta career received a call from their Chief Pilot. (Behnfeldt Depo, 71:6, 75:4-77:7, Ex. 4, 99:17-100:25, Ex. 9) | | | |
| ¶16: If the amount of requested leave was "excessive" in amount or duration the pilot would receive a call from their Chief Pilot. (Behnfeldt Depo, 102:7; 103:6-13, Ex. 10) | | | |
| ¶17: If the amount of requested leave was "unusual" or caused a scheduling issue for crew scheduling, the pilot would receive a | | | |

| | | | |
|---|---|---|---|
| call from the Chief Pilot. (Benefeldt Depo, 125:23-25) | | | |
| ¶18: The calls from the Chief Pilot's office regarding military leave was to verbally counsel the pilot concerning the military leave. CITE | | | |
| ¶19: Calls from the Chief Pilots office was to ensure the pilot was aware of who the pilot's "primary employer was" [Behnfeldt Depo, Ex. 22; *See also* [*See also* Behnfeldt Depo, 106:15, 107:2-108:3, Ex. 11 ("resetting expectations").] | | | |
| ¶20: When the pilot advises that the requested leave dates are not flexible, the Chief Pilot follows the Delta script and advises the employee that he - the Chief Pilot - will be contacting the pilot's military chain of command, then they do. [*See* Behnfeldt Depo, Ex. 5, p. 3 ("So | | | |

| here's where I think we walk a fine line with our military folk. We want them to understand the consequences of their actions in a strictly business sense when they drop the notification [of military leave] first and foremost, but when it touches a certain date, we now ask them to fill out a military leave log and they are probably going to get a call from someone and someone is maybe going to call their unit or wing leadership to check on some things. Is this 'harassment'? To some it probably is."); 148:15, 149:10-150:25, Ex. 23.] | | | |
|---|---|---|---|
| ¶21: In order to improperly avoid its USERRA obligations, Delta has made a significant effort to dissuade pilots form taking military leave near Delta designated holidays and other periods such as the summer | | | |

| | | | |
|---|---|---|---|
| travel season by making it more difficult for pilots to submit military leave. [Mangie Depo, Exs. 1, 8, 9, 11] | | | |
| ¶22: Delta wants military pilots to understand that when MLOA "touches a certain date, we now ask them to fill out a military leave log and they are probably going to get a call from someone and someone is maybe going to call their unit or wing leadership to check on some things. Is this 'harassment'? To some it probably is." [Behnfeldt Depo., Ex. 5] | | | |
| ¶23: Delta even has a MLOA Holiday Request Flow with scripts and a checklist for managers to follow to pressure pilots into moving military service dates. [Mangie Depo., Ex. 1, 9] | | | |
| ¶24: Delta "called every pilot and their | | | |

| | | | |
|---|---|---|---|
| unit when [mil leave log] notifications came in." (Mangie Depo, Ex. 3) The plan to discourage military leave by harassing and intimidating service members in a 59% reduction in military leave near holidays [Behnfeldt Depo, 163:7-8, Ex. 29]; Mangie acknowledged the success by stating "[t]he calls have a good long term desired effect." [Mangie Depo, Ex. 3; Graham Depo., Ex. 8.] | | | |
| ¶25: Calls to pilots chain of command to move military leave and discuss Delta's concerns regarding excessive military leave creates an adversarial relationship between the reserve pilot and his/her unit. | | | |
| ¶26: Delta was rebuked for telling its pilots when they could and could not take military leave in December 2016, | | | |

| | | | |
|---|---|---|---|
| when Curtis Bell of the Employer Support at the Guard and Reserve ("ESGR" stated: [i]t appears you guys are telling people when they can take military leave… that's a no in regards to USERRA, you can't tell them when…" [Mangie Depo, 25:16-17, 206:4-6, Ex. 38.] | | | |
| ¶27: Delta management has used the term "baby killers" to refer to its military service member pilots. [Underwood Depo, 122:1-5, Ex. 7.] | | | |
| ¶28: Delta management uses intimidation to discourage military service. (e.g. "I made him an offer he couldn't refuse…" and "[i]snt' he the guy that suddenly got his shoulder dislocated after vising [Assistant Chief Pilot] Goedeke?" (Behnfeldt Depo, 155:3-155:1, Ex. 25.); discussions about bring a | | | |

| | | | |
|---|---|---|---|
| reservist pilot in for "an ass-kicking" [Behnfeldt Depo, 139:20-23, 140:5-11] (emphasis added.) | | | |
| ¶29: Making an example of Delta pilots who are higher ranking in the military so as to influence/discourage military service by other members of the unit.  [CITE] | | | |
| ¶30: "This is a case of the airlines subsidizing the military/government. Cooperation is one thing, but this has a direct impact on operations. It will make us start looking at **whether to hire these guys or not to.** Then, **when we show the intent to be more discriminatory, they start leaving the reserve and guard in droves. Cause and effect**." [Frederick Depo, Ex. 2.] | | | |
| ¶31: Delta management has discussed not "hiring | | | |

| | | | |
|---|---|---|---|
| as many military guys" [Behnfeldt Depo, Ex. 26] and "[t]his is the kind of thing tha makes one think twice about hiring Res and Guard guys." (Frederick Depo., Ex. 2; Underwood Depo., Ex. 16) | | | |
| ¶32: Delta considers excessive military service in whether to promote a pilot. [Frederick Depo, 58:18-25; 59:1 (heavy MLOA usage is reviewed in consideration of whether to appoint someone to a flight instructor position).] | | | |
| ¶33: In April 2015, when discussing Reep, Frederick indicated that Delta was looking "to take a few guys to the mat" to improve overall productivity, and was looking for "'that case' where we want to go full tilt against an MLOA abuser." (Frederick Depo., Exs. 11, 15, 21 | | | |
| ¶34: Delta's policies require pilots to | | | |

| | | | |
|---|---|---|---|
| notify Delta of all military duty, including on days off from Delta, even if MLOA isn't required to accomplish the military duty. (Frederick Depo., Ex. 20 | | | |
| ¶35:"Reserve and Guard units depend heavily upon their part-timers" and the concurrent policy has "the effect of making a guy choose between his Mil commitment and his Delta commitment." (Frederick Depo., Ex. 19) | | | |
| ¶36: On March 17, 2015, Plaintiff Reep attempted to take MLOA over four days, April 3-6, 2015, but he was asked for verification because it fell over Easter. (Frederick Depo., Ex. 16 [Doc. 199-16].) To verify the MLOA Reep provided military orders that included April 1, 2015 through July 15, 2015. (Reep Depo, Ex. 4, p. 2 [Doc. 172-4].) He did | | | |

| | | | |
|---|---|---|---|
| not take MLOA for the full period because even though he had orders, he was available and allowed to work for Delta by his military unit, and his responsibilities to Delta and the military did not interfere with each other. (Frederick Depo., Ex. 19, pp. 2-3 and Ex. 21 [Doc. 199-19, 199-21].) Reep only took MLOA when he was not able to perform his Delta obligations. (Id.) | | | |
| ¶37: Reep did not report all military duty days to Delta because he was available and allowed to work for Delta by his military unit, his military commanders were aware of his Delta employment, and his military commanders informed Delta that Reep would have been able to "respond and fly for Delta" should Delta have | | | |

| | | | |
|---|---|---|---|
| called him while doing military work. (Frederick Depo., Ex. 19, pp. 2-3 and Ex. 2 [Doc. 199-19, 199-2].) | | | |
| ¶38: Reep's military commanders were very concerned that Delta had its concurrent duty policy. Id. | | | |
| ¶39: The year-long investigation of Reep culminated in an April 26, 2016 Notice of Intent to Terminate employment ("NOIT") which focused exclusively on military leave and concurrent duty. (Reep Depo., Ex. 4 [Doc. 172-4].) The only mention of "sick leave abuse" was related to five occasions where he was sick from Delta, and then performed some military duty on the same day. (Id.) | | | |
| ¶40: Delta knew that Reep was an attorney as early as | | | |

| | | | |
|---|---|---|---|
| March 2015, but in October 2016, falsely claimed this "new information came to light." (Frederick Depo., Ex. 16 [Doc. 199-16]; Reep Depo., Ex. 8, p. 3 | | | |

Respectfully submitted this 13th day of May 2022.

s/ Crystal L. Matter, Esq.
California Bar No. 278084
MATTER LAW, APC
101 Parkshore Drive, Suite 100
Folsom, California 95630
Tel: (916) 735-7495
Email: cmatter@matterlawapc.com
*Admitted Pro Hac Vice*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1D of the Local Rules for the United States District Court for the Northern District of Georgia, I hereby certify that the foregoing has been prepared in Century Schoolbook, 13-point font, as permitted by Local Rule 5.1(B).

Respectfully submitted this 13th day of May 2022.

<u>s/ Crystal L. Matter, Esq.</u>
California Bar No. 278084
MATTER LAW, APC
101 Parkshore Drive, Suite 100
Folsom, California 95630
Tel: (916) 735-7495
Email: <u>cmatter@matterlawapc.com</u>
*Admitted Pro Hac Vice*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the within and foregoing PLAINTIFF RANDAL REEP'S RESPONSE AND OBJECTIONS TO DEFENDANT DELTA AIR LINES SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF RANDAL REEP'S RESPONSE IN OPPOSITION TO DEFENANT'S MOTION FOR SUMMARY JUDGMENT was filed with the Clerk of Court using the CM/ECF system, which will automatically serve the following counsel of record:

Thomas Munger, Esq.
tom.munger@mungerandstone.com

Charles Michael Billy, Esq.
cbilly@cmblawcorp.com

Benjamin Stone, Esq.
ben.stone@mungerandstone.com

Gene J. Stonebarger, Esq.
gstonebarger@stonebargerlaw.com

Ira G. Rosenstein, Esq.
irosenstein@orrick.com

Joseph J. Ranjo, Esq.
jason.ranjo@morganlewis.com

This 13th day of May 2022.

s/ Crystal L. Matter, Esq.
California Bar No. 278084
MATTER LAW, APC
101 Parkshore Drive, Suite 100
Folsom, California 95630
Tel: (916) 735-7495
Email: cmatter@matterlawapc.com
*Admitted Pro Hac Vice*