# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

JEREMY SORENSON, an individual,
RANDAL REEP, an individual,
RANDAL SMITH, an individual,
ADAM MCLEAN, an individual, and
JAMES DOYLE, an individual, on
behalf of themselves and all others
similarly situated,

        Plaintiffs,

v.

DELTA AIR LINES, INC.,
a Delaware Corporation.

        Defendant.

CASE NO. 1:17-cv-541-ELR

---

## DECLARATION OF PLAINTIFF RANDAL REEP IN SUPPORT OF PLAINTIFF REEP'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DOC. 183]

I, Randal Reep, declare as follows:

1. I am a Plaintiff in *Sorenson et al v. Delta Air Lines,* Case No. 1:17-cv-00541-ELR.

2. I make this declaration in support of Plaintiff Reep's response in opposition to Defendant Delta Air Lines, Inc.'s Motion for Summary Judgment.

3. I have personal knowledge of the following facts and if called as a witness, I could and would testify as follows:

1

4. I enlisted in the Florida Air National Guard in 1989 and later was commissioned and trained as an F-15 pilot in 1995. I presently hold the rank of Lieutenant Colonel. I also continue to serve as a Combat Mission Ready (CMR) F-15 pilot.

5. I was hired by Delta Air Lines as a full-time pilot on April 16, 1998.

6. During my employment with Delta Air Lines, I performed various periods of short-term and long-term military duty.

7. While I was employed at Delta Air Lines, I was subject to the Delta's policy requiring pilots to post all military duty to their Delta schedule.

8. While I was employed at Delta Air Lines, I was subject to Delta's policy that did not allow pilots to perform military duty on the same day the pilot had an obligation for Delta. This policy impacted the military servicemember not only when performing actual duty for Delta, but while on many variations of "reserve" call out to Delta. This policy was referred to during my employment as "Double-Dipping," and I understand later termed "Concurrent Duty Policy."

9. While I was employed by Delta Air Lines, pilots were required to complete the Military Leave Log for military leave that was on or near certain dates in the Delta system or for military leave that exceeded 30 days.

10. Submitting a Military Leave Log does not immediately alter a pilot's schedule to reflect the military leave requested.

2

11. In the years I worked at Delta Airlines, Jim Mangie took steps to penalize me for my exercising of military leave.

    a. In 2002, Delta had a policy of requiring significant advance notice of any Military Leave contemplated during the Christmas Holiday. I was senior on the equipment I was assigned, but in an abundance of caution I applied for leave in advance. Jim Mangie, then the Atlanta Chief Pilot, called me into his office where he berated me for the fact that I volunteered to sit NORAD Alert at Homestead Air Force Based during Christmas.

    b. In 2009, Jim Mangie took my schedule to the National Guard Bureau and referenced me by name and unit assignment. Without an opportunity to be heard, Jim Mangie briefed senior General Officers that I was in fact "abusing military leave." I wrote to Winford Speakman (then Regional Chief Pilot) who provided a very pro-Delta response to this behavior.

12. This antagonistic behavior did not stop; however, more Delta management pilots were included. In 2010, at Jim Mangie's direction, Steve Tate (Delta Assistant Chief Pilot) contacted me to request documents in reaction to my prior military leaves of absence. As I testified to in my deposition in August 2021, Steve Tate told me that the amount of military leave I was taking was putting me on "Jim Mangie's radar." Steve Tate's comments that

3

my leave was "putting him in a bad spot" lead me to believe that Mangie was harassing Tate because of my leave and that I was going to be scrutinized and disciplined for the amount of leave I was taking. Tate told me that to "stay off Mangie's radar," I needed to not report or take military leave and perform my military duties so as to not conflict with Delta's schedule (which I referred to in my deposition as "deconfliction"). It was made extraordinarily clear by Steve Tate that if I took military leave in support of my military obligations, I could expect more problems with Jim Mangie. I adjusted my military scheduling as to avoid taking military leave and did not post all my military duties to my Delta schedule.

13. On or about November 14th, 2010, I explained all of this interaction to Captain Jim Graham, as the time the Atlanta Chief Pilot. I followed up that conversation with an email explaining how I was conducting my military duties and how I documented them in relation to Delta Airlines.

14. On March 17, 2015, I submitted a Military Leave Log request for military leave from April 3 to April 6, 2015.

15. On or about October 5, 2015, Captain Chris Frederick, my Chief Pilot (boss) at Delta at the time, traveled from Atlanta, Georgia to Jacksonville, Florida, to meet with my military unit. I was told of the substance of the conversation by Brigadier General Brain Simpler, and every portion of it was corroborated by Captain Frederick.

4

16. At the time of Capt. Frederick's visit to my unit, I held a supervisory role over approximately 8 F-15 Fighter pilots in my military unit. Approximately 4 of those service members were also pilots employed by Delta Air Lines.

17. The investigatory visit by Captain Frederick on behalf of Delta Airlines, had a chilling effect on not only my use of military leave, but was clearly impacting the other Delta Pilots who were also in the Florida Air National Guard. Fortunately, as to my employment at the Florida Air National Guard, this "investigation" was met with support. This was consistent with my supervisor's position that Delta was the priority, and if any order, mission, or assignment needed to be adjusted or cancelled to support my employment with Delta, the Guard would so support.

## Pension Contributions

18. Delta asserts that "pilots have significant discretion to choose the number, type, and dates of duty hours for the upcoming month." This in inaccurate. Pilots do not choose any of these, but rather, are afforded an opportunity to submit their preferences, based on their relative seniority as to seat (Captain vs. First Officer) and Aircraft assigned. This "bid" is then considered, but ultimately Delta determines each pilot's schedule. Further, while I was serving, pilots serving in the military generally had less flexibility as to their "bidding," and therefore their preferences were less likely to be honored.

19. I was hired and began training on 16 April 1998. Prior to reading this Motion of Summary Judgment, I have never heard of Delta pilot being "part-time." To the extent that Delta pilots are paid by the hour (and fractions thereof) that would not render a pilot "part-time." Furthermore, Federal Aviation Regulations limited how many duty hours a pilot may have (based on many factors) that will limit how many hours per day, week, month, and year.

20. I have never received any "financial windfall" from Delta whatsoever. My pay and benefits, specifically as to pension contributions during military leave, are required by USERRA. By all accounting, I was paid for the time of either duty, or availability that was given as a "line-holder," or while on reserve for Delta Airlines. I did not receive greater pension contributions from Delta for a period of military service than I would have if I had been working for Delta during such time period.

21. On page 13, Delta states that "purpose of military leave is part of a parallel career for the employee." It has always been my understanding, as supported in conversations with Captains Graham, Frederick, Tate, and Mangie that Delta's military leave policy was to ensure compliance with USERRA. USERRA's purpose at 4301 of the Code:

   (1) to encourage noncareer service in the uniformed services by eliminating or minimizing the disadvantages to civilian careers and employment which can result from such service;
   (2) to minimize the disruption to the lives of persons performing service in the uniformed services as well as to their employers, their fellow

6

employees, and their communities, by providing for the prompt reemployment of such persons upon their completion of such service; and

(3) to prohibit discrimination against persons because of their service in the uniformed services

### Concurrent Duty

22. During my military service, it was possible and permissible by the military for me to perform military duty and still be available to meet my obligations at Delta, without being absent from work at Delta. Specifically, while I was a long-call Reserve pilot at Delta, I was able to perform military duties at my base and still be available to Delta because the contractual minimum time to report to Delta was 12 hours from the notification of an assignment. When I was a short-call RES pilot at Delta, I was also able to perform certain military duties and able to promptly report for an awarded/assigned rotation. During Delta flying rotations (trips) I was also able to perform certain military duties to include telework and other military duties during non-duty time periods.

23. Many Delta pilots perform non-military employment activities and business ventures without concurrent duty restrictions. In fact, other business conflicts of interest, I am not aware of any such limitations on any NON-Military member.

24. Delta's harassment and anti-military policies affected my personal life significantly. The following is a non-exhaustive list:

   a. I believe my advance to even more senior ranks in the military has been frustrated or all together foreclosed by the fact that I was terminated by Delta Airlines. My mentors and superiors will talk openly that during the years of my termination(s) I was not a candidate for advancement because of the termination.

   b. Within the US Air Force, and I am now and forever "the guy that was fired" by Delta Airlines. While attending a conference, deployment, or any other military function, I am routinely approached by other pilots who would reference the stigma of being fired, and how that reflects poorly on me, and the USAF.

   c. Due to being terminated, I lost out on advancement at Delta, and have been precluded from being hired at any other global airline.

   d. I have felt shame, embarrassment, and sadness on nearly a daily basis since my final termination.

I declare under penalty of perjury under the laws of the State of Florida that the foregoing is true and correct.

Executed this 13th day of May, 2022, in Jacksonville, Florida.

_____
Randal Reep, Declarant