UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **JEREMY SORENSON, an individual, RANDAL REEP, an individual, RANDAL SMITH, an individual, ADAM MCLEAN, an individual, and JAMES DOYLE, an individual, on behalf of themselves and all others similarly situated,**<br><br> **Plaintiffs,**<br><br>**vs.**<br><br>**DELTA AIR LINES, INC., a Delaware Corporation,**<br><br> **Defendant.** | **Civil Action No. 1:17-cv-00541-ELR** |

## REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### I.    INTRODUCTION

In its opening brief, Delta established that there are no genuine disputes of material fact and that each of the five individual Plaintiffs' USERRA claims fail as a matter of law. In response, Plaintiffs' opposition briefs (Plaintiffs' "oppositions") failed to respond to Delta's key positions—thus conceding them through silence. Rather than confront Delta's core arguments, Plaintiffs' oppositions resorted to a combination of calculated obfuscation, deceptive shading of the record facts and governing law, and outright dishonesty. The Court should recognize Plaintiffs'

1

attempts at confusion and misdirection, should reject their factual and legal mischaracterizations, and should enter summary judgment for Delta in full.

As an initial matter, Plaintiffs' opposition papers blatantly violate both this Court's Local Rules and their counsel's ethical duties. Plaintiffs' counsel failed to follow the Local Rules with respect to their responses to Delta's statement of undisputed facts, and they improperly used those submissions to include dozens of pages of additional (and inappropriate) argument. Plaintiffs' counsel doubled-down on their misconduct by repeatedly asserting "facts" that they know are false and by including improper argument in an attorney declaration. In addition, Plaintiffs Reep and Sorenson filed two opposition briefs—impermissibly utilizing twice the court-mandated page limit. Faced with these grave violations, the Court should deem Delta's undisputed facts admitted, should presume that Plaintiffs' factual characterizations are false, and should disregard both the improper attorney declaration and Reep and Sorenson's doubly-long opposition briefs.

Plaintiffs fare no better on the substance of their claims. For each claim, the undisputed facts and blackletter law mandate summary judgment in Delta's favor.

First, with respect to Plaintiffs' claim for 401k contributions under USERRA Section 4318, Delta's opening brief presented a simple two-step argument: (1) that each plaintiff's compensation while employed by Delta was not "reasonably certain;" and (2) that Delta's practice for calculating 401k contributions during

plaintiffs' military leaves of absence ("MLOAs") was not only lawful, but *exceeded* USERRA's requirements for employees whose compensation is not reasonably certain. Plaintiffs' oppositions do not contest (and thus concede) the second point— that Delta acted lawfully so long as Plaintiffs' compensation was not reasonably certain. Plaintiffs argue only that their compensation at Delta was reasonably certain and that their 401k contributions should thus be calculated under a wildly inflated approach that they refer to as the Average Pay Hours (or "APH") method.

In making this argument, Plaintiffs rely on out-and-out deception. Specifically, Plaintiffs' oppositions contend that the undisputed data showing great volatility (and thus great unpredictability) in the Plaintiffs' monthly hours and pay is attributable to Delta relying on months in which they took military leave. But they know that is false. Delta's opening brief—as well as the underlying testimony and expert report cited in that brief—stated explicitly that each of the months Delta relied upon to show the volatility in Plaintiffs' hours and compensation were months *where the Plaintiffs took no MLOA*. Plaintiffs' oppositions similarly misstate other pieces of record evidence. When Plaintiffs' misrepresentations are stripped away, all that remains is the unassailable conclusion that Plaintiffs' compensation was not reasonably certain and thus that Delta abided by USERRA when calculating their 401k contributions during MLOA periods.

Second, with respect to Plaintiffs' profit-sharing claims, their oppositions do

not articulate any basis under USERRA for challenging Delta's deemed earnings methodology—because there is none. As Delta showed in its opening brief, Plaintiffs have no cause of action because the *only* leave for which Delta imputes earnings toward profit-sharing payments is MLOA. Separately, Plaintiffs' profit-sharing claims also fail because they are built on the same faulty foundation as their 401k contribution claims and seek windfall payments not required by USERRA.

Third, with respect to Plaintiffs' USERRA Section 4316(b)(1) vacation accrual claim, Plaintiffs' oppositions completely abandon their central claim that jury duty and sick leave are comparable leaves to MLOAs. Grasping at straws, Plaintiffs instead assert a barebones argument that a "Special Conflict" military leave that Delta recognizes for reservists in hazardous or combat situations (a benefit beyond USERRA's requirements) is comparable to other MLOAs. Aside from the fact that this is a new claim that Plaintiffs did not include in their Complaint, it is facially nonsensical as Section 4316(b)(1) does not require employers to provide equivalent benefits to employees on different types of MLOAs. The appropriate comparison is solely between MLOAs and comparable *non-military* leave types. In two sentences, Plaintiffs' oppositions also mention what Delta refers to as "Known Personal Leave," but they do not provide any analysis showing that it is comparable to MLOAs. Delta's opening brief established that Known Personal Leave is not comparable to MLOAs, and Plaintiffs do not even attempt to address that argument.

Fourth, with respect to Plaintiffs' "general harassment" claims, Plaintiffs' oppositions did not meaningfully address the controlling law that they lack standing to assert such a claim because they have not suffered any economic damages (i.e., lost Delta pay or benefits). Plaintiffs also failed to address the bevy of caselaw cited by Delta in its opening brief establishing that the alleged "harassment" was neither severe nor pervasive, and thus cannot support a cause of action.

Lacking an actual "harassment" claim, Plaintiffs resort to the factually unsupported (and factually contradicted) assertion that Delta had an "anti-military culture." This argument fails out of the gate because USERRA does not provide for a general "anti-military culture" claim. Plaintiffs' argument is also nonsensical. It is largely premised on the fact that Delta sometimes talked to a pilot and/or the military to see if the pilot's planned MLOA could be rescheduled to avoid adverse impact on Delta operations and passengers during busy travel periods, such as holidays. Plaintiffs fail to inform the Court that this practice is *entirely USERRA compliant*, and the military even *has a process for private employers to seek such rescheduling of MLOA*. Moreover, of the thousands of MLOA period notifications made by Delta pilots, Plaintiffs could not identify *a single one* that Delta ever denied. The remainder of Plaintiffs' anti-military culture argument is based on gross mischaracterizations and misstatements of a small number of emails (of the over one-hundred-thousand emails that Delta produced) that had nothing to do with Plaintiffs and were never

seen by any of the Plaintiffs during their employment.

Fifth, with respect to Plaintiffs' concurrent duty claim, Plaintiffs' oppositions do not address and thus concede Delta's argument that USERRA requires employers to treat employees on MLOAs as if they were on a furlough or leave of absence from work. That is not the case for Delta pilots who sell real estate or practice dentistry on the side, rendering Plaintiffs' comparison to those situations completely inapt. In short, far from violating USERRA, Delta's concurrent duty policy ensures compliance with USERRA's bright line requirement that Delta treat employees on MLOAs as being on leaves of absence (and thus unable to work for Delta). Furthermore, Plaintiffs' oppositions do not dispute the controlling law that the challenged policy caused them to lose no Delta pay or benefits, and thus they have no standing to assert this claim.

Sixth, with respect to Smith's denial of reemployment claim, his opposition does not address the law cited by Delta establishing that his 8-year MLOA was *not* exempt from the 5-year limit of MLOA because his orders for that MLOA did not state that it was exempt as required under USERRA. Smith also completely ignores that he was forced in discovery to produce an email from the Office of the Assistant Secretary of the Navy stating that his MLOA was *not* exempt from USERRA's 5-year limit. This admission alone dooms his claim.

Seventh, with respect to Reep's termination claim, neither of his two

6

oppositions address the fact that he was subject to termination for his undisputed sick leave abuse alone, and that he also indisputably violated USERRA and Delta policy. With respect to McLean's and Doyle's purported termination claims, they did not address and thus conceded that they resigned (and were not terminated from employment) and suffered no adverse employment action that could be the subject of a USERRA Section 4311 claim. Moreover, McLean and Doyle presented no dispute that Delta determined in good faith that their leave abuse warranted Delta's investigations of them and communications to them about those investigations.

For all of these reasons—and those provided in greater detail both below and in Delta's opening brief—Delta respectfully requests that the Court enter summary judgment for Delta on all of Plaintiffs' claims.

## II.   ARGUMENT AND CITATION OF AUTHORITY

### A.   Plaintiffs' Opposition Papers Blatantly Violated Both This Court's Local Rules And Their Counsel's Ethical Obligations.

#### 1.   Plaintiffs' Responses To Delta's Statement Of Undisputed Facts Blatantly Violated This Court's Local Rules

This Court's Local Rules mandate that a party's response to a summary judgment movant's undisputed facts "shall contain . . . *concise nonargumentative* responses corresponding to each of the movant's numbered undisputed material facts." Local Rule 56.1(B)(2)(a)(1) (emphasis added). The Court is to deem the movant's facts as admitted unless the respondent: "(i) directly refutes the movant's facts with *concise responses* supported by specific citations to evidence (including

page or paragraph number); (ii) states a valid objection to the admissibility of the movant's fact; or (iii) points out that the movant's citation does not support the movant's fact or that the movant's fact is not material or otherwise has failed to comply with the provisions set out in LR 56.1(B)(1)." Local Rule 56.1(B)(2)(a)(1) (emphasis added).

The Court's April 29, 2022 Order put Plaintiffs on specific notice of the Local Rules. (Doc. No. 191, at 11 n.3 ("all [summary judgment] filings should comport with the Local Rules of this district.").) The Court also previously instructed the parties that "[a]ll citations to the record evidence should be contained in each party's brief, not just in the party's statement of undisputed (or disputed) facts." (Doc. No. 3, at 7.)

A party's failure to comply with Local Rule 56.1 "is not a mere technicality." Lundy v. Publix Super Mkts, Inc., 2022 U.S. Dist. LEXIS 7096, at *2 (N.D. Ga. Jan. 13, 2022). Local Rule 56.1 "protects judicial resources by making the parties organize the evidence rather than leaving the burden upon the district judge." Reese v. Herbert, 527 F.3d 1253, 1268 (11th Cir. 2008) (internal quotation marks and citation omitted).

It is well-established that a court should deem a defendant's statement of undisputed facts to be admitted where plaintiffs: (1) "frequently include arguments against the Defendant's facts but not arguments rebutting those facts;" or (2) asserts

responses that "are not responsive to the specific fact alleged in Defendant's Statement or only relate to a particular element of the Defendant's fact." Scott v. Travelers Home & Marine Ins. Co., 2022 U.S. Dist. LEXIS 43765, at *2 n.1 (N.D. Ga. Mar. 11, 2022).

It is improper for a plaintiff to dispute a fact asserted by the defendant and then "continue for many more sentences, sometimes even pages, arguing plaintiff's view of the evidence, either citing no record support for the assertions or placing a string citation at the end of a long recitation, which makes it impossible to determine which record citation supports which assertion." Gass v. CBOCS, Inc., 2012 U.S. Dist. LEXIS 201994, at * 3 (N.D. Ga. July 24, 2012). "[P]laintiffs must remember that a response to a statement of undisputed material facts is not an opportunity to write another brief. If the fact stated is true, admit it. If the fact is legitimately disputed, then say why, cite the evidence that supports the denial, and stop." Id. It is similarly improper to dispute an asserted fact where the dispute is frivolous or meaningless.

Here, in response to Delta's 125 statements of undisputed facts, Plaintiffs violated one or more of these rules in their responses to 113 of those stated facts. In the remaining 12 responses, Plaintiffs properly admitted Delta's factual assertion. Thus, the Court should deem all 125 of Delta's facts admitted by all Plaintiffs.

Plaintiffs' violations of Rule 56.1 are too numerous to fully catalogue in a single brief, but a small sample of Plaintiffs' blatant violations of this Court's Local Rules include the following:

- Denying Delta's allegations with no record cite at all or without a proper record cite (such as only with a record cite to an Affidavit from one of Plaintiffs' counsel about his impression of the evidence). (See, e.g., Doc. No. 206-1 ¶¶ 7, 8, 19, 31, 32, 33, 83.)

- Ignoring or admitting Delta's actual undisputed fact and simply responding to or arguing about a different fact that Delta did not allege. (See, e.g., id. ¶¶ 11, 13, 14, 17, 19, 20, 24, 40, 41 (falsely disputing how Delta calculates Average Line Value ("ALV") by arguing about how Delta "should" do it), ¶¶ 55, 59, 60, 67 (neither admitting nor denying the fact but arguing), and ¶ 81.)

- Making sham denials of a fact after a Plaintiff or their expert admitted the fact on deposition. (See, e.g., id., ¶¶ 22, 34, 36 (denying that McLean testified that he could not determine his pay with reasonable certainty when McLean testified to precisely this on deposition), and ¶¶ 43, 62, 64, 69, 70-72, 75, 79, 80, 83.)

- Responding to a Statement of Fact with improper argument. (See e.g., id. ¶¶ 2, 4, 8, 10, 16, 21, 23-29 (responses up to a full-page that have nothing to do with the alleged fact), ¶ 30 (3-page response that has nothing to do with the

one-sentence fact), ¶¶ 33, 34, 42-47, 48 (full-page response that has nothing to do with the alleged fact), ¶¶ 52, 61, 64 (more than a full-page response), ¶¶ 65, 67, 69, 76 (admitting the fact and then arguing about it), ¶¶ 77-78 (two pages of argument in response to two one-sentence facts about Reep), ¶ 79 (after falsely denying an undisputed fact, arguing about what Plaintiffs contend is "critical background"), ¶¶ 80, 81 (admitting the fact and arguing about "Delta's inferences"), ¶ 82 (sham denial of fact and additional arguments about the "context" and "inferences" of this fact).[1])

In each of these instances—and many others—Plaintiffs' purported "dispute" was frivolous, and Plaintiffs acted in obvious disregard of the Local Rules. Accordingly, the Court should deem Delta's undisputed facts admitted.

## 2. Plaintiffs' Counsel Violated Their Duty Of Candor To The Court By Asserting "Facts" That They Knew Were False.

Plaintiffs' counsel compounded their misconduct by making blatant misrepresentations of fact to the Court.

When making factual assertions to the Court, counsel must not "misstate facts or make assertions based on speculation which is unsupported by any probative

---

[1] Plaintiffs also repeatedly claimed that an asserted fact is not supported by any cited evidence when there was cited evidence (testimony and contract provisions) that Plaintiffs do not and cannot dispute. (See e.g. Fact No. 13 (Doc. No. 206-1, at 7-8.)) Plaintiffs also repeatedly dispute facts directly from the collective bargaining agreement by claiming that the contract provisions are only "opinion." (See e.g. Fact No. 15 (Doc. No. 206-1, at 8-9.)) That, of course, is completely false.

evidence." Hill v. Delta Air Lines, Inc., Case No. 1:18-CV-05589-JPB, Doc. No. 88, at 4 (N.D. Ga. June 5, 2020) (on file in this case at Doc. No. 213-1). "Fidelity to the record is expected from plaintiff's counsel as an officer of the Court. Zealous representation is no excuse for misrepresentation of evidence." Id. at 5. Here, Plaintiffs' counsel repeatedly represented "facts" that they know to be false. Plaintiffs' counsel's violations are too numerous to fully catalog here, but Delta highlights two egregious examples related to Plaintiffs' 401k contribution claim.

As background, the central question concerning Plaintiffs' 401k pension contribution claim is whether each Plaintiff can meet his burden of showing that his monthly pay was reasonably certain. In support of Delta's position that each individual Plaintiff's pay was not reasonably certain, the Company stated facts showing the significant volatility of the pay hours (and thus pay) of each of the Plaintiffs for each month in which they had no MLOA. (Doc. No. 178-2, at 5-7; Doc. No. 206-1, at 13-24.) Faced with undisputed evidence that torpedoes their claims, Plaintiffs' counsel left their ethical obligations at the door and resorted to outright lying to the Court. Delta understands that these are strong words, but they are more than warranted in this case—as the below examples demonstrate.

First, Plaintiffs' counsel asserted to the Court that Delta's pay data analysis— which shows substantial variation in Plaintiffs' hours and pay from month-to-month—was flawed because it purportedly included months in which Plaintiffs took

MLOA (thereby causing the admitted significant variation in hours/pay). (Doc. No. 208, at 10 (repeated in all of the 7 summary judgment response briefs).) But all three of the lead Plaintiffs' counsel knew this was utterly false, and that Delta and its expert relied *exclusively on months when the respective Plaintiffs took no MLOA*. Delta was beyond clear on that point in numerous submissions. (See Doc. No. 178-2, at 5-6 (Delta's opening brief stating repeatedly that the analyses of Plaintiffs' monthly hours were based on "non-MLOA months," i.e., "months in which [Plaintiffs] took no MLOA"); Doc. No. 178-3, ¶¶ 12-17 (Delta's Statement of Undisputed Facts noting the same); Doc. No. 178-4, Exh. A, at 6-7 (Delta's expert summarizing data "when months with any military leave are excluded from the calculations").) Plaintiffs' transparent efforts to gaslight the Court on this fundamental and undisputed fact are stunning and should be rebuked.

Second, Delta's opening brief cited McLean's deposition testimony that he "wouldn't have a reasonable certainty of [his] pay" because it "varied substantially" from "[b]id period to bid period." (Doc. No. 171, at 128:9-129:4; Doc. No. 206-1, at 24.) In an attempt to obscure this case-destroying testimony, Plaintiffs' oppositions falsely disputed Delta's citation to McLean's testimony and told the Court that McLean testified "that his actual pay was not reasonably certain, *because he had military duty every month*." (Doc. No. 206-1, at 24.) This was blatantly untrue. Counsel knew that McLean had testified to no such thing. To the contrary, the

testimony cited by both parties (Doc. No. 171, at 128:9-129:4) *included no caveat and no reference to military duty/MLOA*.

Similar examples of Plaintiffs' counsel's misstatements are littered throughout their opposition papers. The Court should not have to wade through these lies. Instead, the Court can assume that, when Plaintiffs' Counsel make a material factual assertion, it is either unsupported or directly contradicted by the undisputed evidence.

### 3.   Plaintiffs Submitted An Improper Declaration From Counsel Billy.

In their oppositions, Plaintiffs rely substantially upon testimony by counsel Billy set forth in a Declaration he filed. (Doc. No. 206-2.) Billy's Declaration is a combination of assertions of facts for which he has no personal knowledge, assertions with no or false record citations, or rambling arguments that could not be evidence even from a lay witness.

Billy cannot be both a legal advocate for Plaintiffs and at the same time a witness testifying to facts not consented to by the parties. See Meeker v. Sirote & Permutt, 2011 Bankr. LEXIS 2603, at **6-7 (Bankr. S.D. Ala. July 6, 2011) (striking affidavit submitted on summary judgment from counsel based on a professional obligation rule in Alabama—that is identical to Georgia's rule—stating that counsel cannot be a material witness for and counsel for a client). Moreover, it is improper for Billy to echo his clients' purported testimony as he has no personal knowledge

14

of the underlying facts. <u>Tichcon Corp. v. Soundview Commc'ns., Inc</u>., 2006 U.S. Dist. LEXIS 97309, at *14, *17 (N.D. Ga. Feb. 15, 2006) (finding that, when a declaration is submitted by counsel, "[t]o have personal knowledge means more than to have been told that something is what it purports to be or to have collected the information from one's client. Personal knowledge is to know as a matter of first-hand knowledge, a document's source or authenticity"). Similarly, a court's consideration of a summary judgment motion is not furthered "by counsel being the personal vehicle by which the 'undisputed facts' are put before the Court." <u>Id</u>. at *16.

As with Plaintiffs' counsel's other violations, Delta provides only select examples of Billy's improper declaration "testimony." In Paragraph 10, Billy testifies not about facts but only about what he personally thinks Delta should have done with regard to deeming earnings for 401k contributions for MLOA periods. In Paragraph 36, Billy testifies that the only evidence that Reep took a vacation while on Delta sick leave is a statement Reep made "in a transcript." Aside from the fact that this is improper testimony from Billy, it is comical because the "transcript" is from a court proceeding where Reep, who is also an attorney, told a judge that he was on vacation on a date that he was also taking Delta sick leave. (Doc. No. 172-8, at 3; Doc. No. 178-4, at 95.)

Most shockingly, Billy falsely stated in Paragraph 27 of his sworn declaration (upon which all of the other Plaintiffs' counsel relied) that McLean testified during his deposition that his Delta monthly hours varied substantially because of his MLOAs. As set forth above, the cited testimony from McLean's deposition says no such thing, and Billy knew his sworn statement about that testimony was false when he made it to this Court.

### 4.     Reep And Sorenson Improperly Submitted Two Oppositions.

On April 29, 2022, the Court ordered each of the five Plaintiffs to file a separate response brief (i.e., a total of 5 briefs). (Doc. No. 191, at 23.) Reep and Sorenson violated that Order by each filing two response briefs (resulting in double the number of pages allotted to them by the Court.) (Doc. Nos. 209, 210, 211, & 212.) Even after Delta raised this impropriety, neither Reep nor Sorenson has withdrawn any of their oppositions. It is now too late for them to do so. The Court should strike all four of Reep and Sorenson's oppositions for failure to comply with the Court's clear directive.

### B.     Plaintiffs' 401k Pension Contribution Claims Fail.

#### a.     Plaintiffs Concede That Delta's 401k Calculations Were Lawful So Long As Plaintiffs' Compensation Was Not "Reasonably Certain."

In its opening brief, Delta presented a clear two-step argument demonstrating why Plaintiffs' 401k pension contribution claims fail as a matter of law. First, Delta

16

demonstrated that each individual Plaintiff's compensation at Delta was not "reasonably certain." <u>Second</u>, Delta demonstrated that its past and current approaches for calculating Plaintiffs' 401k contributions during MLOA periods are lawful under USERRA's rules for employees whose compensation is not reasonably certain. (Doc. No. 178-2, at 2-10.)

In their oppositions, Plaintiffs do not challenge, and thus concede,[2] Delta's second point. They acknowledge (through non-response) that if their compensation was not reasonably certain, then Delta's approach for calculating their 401k contributions was lawful under USERRA. More specifically, Plaintiffs never dispute that: (1) until 2012, Delta lawfully utilized USERRA's 12-month lookback calculation when deeming earnings for long-term MLOA; and (2) since 2012, Delta's "Average Line Value" ("ALV") calculation has resulted in significantly higher (by more than $11 million) 401k contributions for MLOA periods than the prior, lawful 12-month lookback calculation. (Doc. 178-2, at 7-8; (Doc. No. 178-4, Exh. A, p. 8.)

Plaintiffs also do not dispute that: (1) USERRA permits Delta, like all employers, to provide benefits to military pilots above and beyond the USERRA floor (Doc. No. 178-2, at 9); and (2) because Plaintiffs can show no economic

---

[2] "[A] party's failure to respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed." <u>Kramer v. Gwinnett Cnty.</u>, 306 F. Supp. 2d 1219, 1221 (N.D. Ga. 2004), <u>aff'd</u>, 116 F. App'x 253 (11th Cir. 2004).

damages from Delta's 2012 adoption of the more generous ALV method, they have no standing under USERRA to challenge the ALV method (Id.). See Dees v. Hyundai Motor Mfg., Ala., LLC, 368 F. App'x 49, 52-53 (11th Cir. 2010) (holding that USERRA plaintiffs must show economic damages, i.e., lost employer pay/benefits, to have standing).[3]

> **b.**   **Because Each Plaintiff's Compensation Was Not Reasonably Certain, Delta Is Entitled To Summary Judgment On Their 401k Claims.**

Given Plaintiffs' key concessions, the only question for the Court to ask on this claim is: Have the Plaintiffs met their summary judgment burden of showing that their monthly pay hours (and thus monthly pay) were reasonably certain? An examination of Plaintiffs' strategically convoluted brief on that question reveals that they have not met that burden.

In its opening brief, Delta outlined how Plaintiffs' pay hours—*in months where they did not take military leave*—varied greatly from month to month. (Doc. No. 178-2, at 5.) For example, Delta showed that: (1) Reep had multiple non-MLOA months in which he had zero flight pay hours; (2) Sorenson's pay hours in non-MLOA months between August 2014 and October 2020 ranged from approximately

---

[3] Plaintiffs never address, let alone seek to distinguish, Dees. Thus, they admit that it is applicable. Moreover, as set forth in Delta's opening brief, Plaintiffs have no standing to seek any injunctive relief as Smith, Reep, McLean, and Doyle are not employed by Delta, and Sorenson has retired from the reserves.

42 pay hours to 137 pay hours; (3) Doyle's pay hours in non-MLOA months from April 2007 to the end of his employment in 2016 ranged from zero to 104; and (4) McLean's pay hours in non-MLOA months from January 2010 to the end of his employment in 2017 ranged from 57 to 99. (Id., at 5-6.)[4]

Delta, and its expert, also presented substantial data showing without question that Plaintiffs' monthly pay hours were miles from reasonably certain due to substantial volatility in their total pay hours per-month. (Doc. No. 178-2, at 5-7; Doc. No. 178-4, Exh. A, at 6-7.) Specifically, Delta showed that, although Plaintiffs averaged 65.5 pay hours in non-MLOA months, their pay hours were 27.4 hours above or 27.4 hours below that average in about one-third of all non-MLOA months. (Id.) Using an average pay rate of $138 per pay hour—which was Plaintiffs' average pay rate during the months in the calculation—Plaintiffs' monthly pay was less than $5,258 or more than $12,820 in about one-third of all non-MLOA months. (Id.)

Plaintiffs' oppositions do not dispute the great volatility in their pay hours (and thus pay) per month. Indeed, their own expert indisputably agreed with the

---

[4] Again, McLean admitted during his deposition that his month-to-month pay hours "varied substantially" and thus he "would not have a reasonable certainty of [his] pay." (Doc. No. 171, at 128:9-129:1; Doc. No. 206-1, at 24.) Plaintiffs contend that these admissions were "because he had military duty every month," but the cited testimony reveals no such caveat. And any such caveat would make no sense when Delta's data is based solely and exclusively on months where McLean (and the other Plaintiffs) took no military leave. (See supra at 12-13.)

above calculations. (Doc. No. 178-2, at 7; Doc. No. 173, at 236:17-240:20.)[5] As noted above, Plaintiffs do not dispute the volatility at all, and their *only* response to the undisputed volatility is to misleadingly suggest that the substantial variation was attributable to the Plaintiffs taking MLOAs during the months utilized by Delta and its expert in their analyses. (Doc. No. 208, at 10.) This is a complete fabrication. Again, Plaintiffs and their counsel knew full well that *all* of the months included in Delta's analyses were months when Plaintiffs *had no MLOAs*. (See supra at 12-13.)[6]

---

[5] Plaintiffs falsely attempt to muddy the waters by citing to other disagreements between Delta's expert and Plaintiffs' expert (Doc. No. 208, at 6), but these disagreements concern analyses not included in Delta's summary judgment motion. On the question of the extreme volatility in Plaintiffs' monthly hours and pay, the record is undisputed that Plaintiffs' expert testified repeatedly that she had "no reason to doubt" and "no reason to dispute" Delta's expert's conclusions regarding the volatility in Plaintiffs' monthly pay hours. (Doc. No. 173, at 236:17-240:19.)

[6] Plaintiffs also suggest that they performed work for the military while employed at Delta, but did not inform Delta and did not take MLOA for that work. (Doc. No. 208, at 10.) It is, of course, undisputed that Plaintiffs (like all Delta pilots) had a large number of off-days per month. (Doc. No. 178-3, ¶ 9.) To the extent that any unreported military work occurred on Delta off-days, it per se would not have affected Plaintiffs' Delta pay hours or caused any volatility. Similarly, to the extent that any such military work occurred during the days Plaintiffs were working for Delta, they were paid for those days—meaning that, again, any such work would not have caused any difference in their pay hours. Further, if this military work did create a Delta employment conflict, Plaintiffs would have to admit that they violated USERRA by not providing Delta with the required advance notice of an MLOA for such work as required by 20 CFR § 1002.85(a). Thus, putting aside that Plaintiffs cannot use admitted violations of USERRA to support a USERRA claim, Plaintiffs never explain how any alleged military work while not on MLOA affected their Delta pay hours or how such work has any relevance at all to this issue.

Plaintiffs' other arguments similarly resort to misstatements of evidence and immaterial distractions in an attempt to sidetrack or confuse the Court. For example, Plaintiffs state that their expert opined that Delta had not established that pilot pay is "uncertain." (Doc. No. 208, at 6.) Aside from the fact that the relevant standard is not "uncertain" (whatever that means in this context) but "reasonable certainty," Plaintiffs have completely misstated the factual record. Plaintiffs' expert testified expressly that she has no "opinion as to whether pilot pay is reasonably certain or not." (Doc. No. 173, at 331:5-8.) Plaintiffs also have it backwards. It is not Delta's burden to show it is not violating USERRA Section 4318 (which it has nonetheless shown without actual dispute). It is *Plaintiffs' burden* to show that Delta has violated Section 4318, *i.e.*, that their monthly pay is reasonably certain.[7] Plaintiffs have not even attempted to meet this burden. To the contrary, they do not and cannot make any argument that their pay was reasonably certain and thus admit that it was not.

Plaintiffs also assert that, in 2010, an ALPA employee opined that pilot pay at Delta was reasonably certain. (Doc. No. 208, at 6.) The opinion of an employee

---

[7] See, e.g., Savage v. Fed. Express Corp., 2016 U.S. Dist. LEXIS 16657, at *73-74, *80 (W.D. Tenn., Feb. 11, 2016), reversed and remanded on other grounds, 856 F.3d 440 (6th Cir. 2017) ("The Court holds that Plaintiff has failed to carry his burden to prove his claim that FedEx has calculated his imputed earnings and retirement benefits based on those earnings incorrectly."); Mathis v. Borough of Old Forge, 2021 U.S. Dist. LEXIS 30043, at * 26 (M.D. Pa. Feb. 18, 2021) (noting that plaintiff bears burden of proof to show reasonable certainty in USERRA claim) (citing 11th Circuit Jury Instruction 4.20).

of ALPA (the labor union that represents pilots, not Delta, and that was presumably unaware of the data submitted in this case that indisputably contradicts such a conclusion) is of course immaterial. Even McLean disagreed with this ALPA employee at his deposition. (Doc. No. 171, at 128:9-129:4.)

Plaintiffs similarly (mis)represent that, in 2011, an employee of Delta's Labor Relations department, Brendan Branon, wrote that "Delta's then 'current position' (i.e., the 12-month look back) was not USERRA compliant." (Doc. No. 208, at 7-8, citing to Doc. 208-5, at DELTA 357974 and DELTA 357994). This is another material misstatement by Plaintiffs' counsel. Far from stating that Delta's then current 12-month lookback method was "not USERRA compliant," Mr. Branon wrote "we feel our current [12-month look back method] *is* permissible under USERRA" (Doc. 208-5, at DELTA 357974) (emphasis added.).)[8]

Finally, Plaintiffs spend a significant portion of their oppositions faulting Delta for not using what they refer to as the APH method when calculating 401k contributions during MLOA periods. This argument fails for at least two critical reasons.

---

[8] In another writing by Mr. Branon cited by Plaintiffs, he wrote that, in recommending the move to the ALV method, he was "*not* necessarily conceding that pilot 'rate of pay' is reasonably certain." (Delta 357994) (emphasis added). That Plaintiffs seek to mislead the Court on these writings speaks for itself.

To start, Plaintiffs' position begins with the predicate assumption that their compensation at Delta was reasonably certain and then argues that APH provides the best way of identifying the actual pay hours that would have worked but-for being on MLOA. (Doc. No. 208, at 9-11.) As demonstrated above, however, Plaintiffs' compensation was *not* reasonably certain. Accordingly, the Court need not even consider Plaintiff's APH argument.

In addition, the APH method is based on a series of false and disqualifying assumptions. Under the APH method, Plaintiffs assert that Delta should have assumed that every pilot company-wide would have had exactly 90.47 pay hours every month but-for MLOAs. (Doc. No. 208, at 9-10.) The notion that it was reasonably certain that Plaintiffs (and all military pilots) would have had 90.47 Delta pay hours for each month but-for MLOAs is patently preposterous.[9] Indeed, it is undisputed that Plaintiffs' average pay hours in months where they had no MLOA was only 65.5 hours—well below the lowest possible ALV amount for any month. (Doc. No. 178-4, Exh. A, at 7 (showing that Plaintiffs' average monthly pay hours were 65.5); Doc. No. 178-3, ¶ 20 (explaining that the lowest an ALV amount can be is 71 hours and it can be up to 85 hours).) In other words, Delta's ALV calculation—

---

[9] Likely for this reason, Plaintiffs never actually claim that Plaintiffs and all other military pilots would have 90.47 Delta pay hours in each month but-for MLOAs.

which Plaintiffs criticize as somehow harming them—credits Plaintiffs for *higher* pay hours than Plaintiffs actually worked in non-MLOA months.

Perhaps even more incredibly, Plaintiffs arrived at the APH number of 90.47 pay hours per month by analyzing *only* the monthly pay hours for regular line pilots who flew 70 or more hours per month (i.e., only by looking at the subset of the highest paid pilots each month). Pilots who flew less than 70 hours per month were *entirely excluded* from the calculation. (Doc. No. 173, at 90:24-91:3 (Plaintiffs' expert testifying that "APH is the average of the actual pilot hours as provided in the Delta spreadsheets using a threshold of 70 or plus hours per month flown").) That 70-hour floor—which is well above the Plaintiffs' average of 65.5 pay hours per month in non-MLOA months—omits the Plaintiffs (and a large swath of putative class members) from the analysis and completely distorts Plaintiffs' computations.

It is understandable why Plaintiffs would *like* Delta's 401k contributions to be based on the assumption that they averaged 90.47 pay hours per month in non-MLOA months—when they actually averaged 65.5 pay hours per month in non-MLOA months—but nothing in USERRA requires such a windfall. This is yet further indicia that Plaintiffs' 401k pension contribution claims fail as a matter of law and should be dismissed.

### C.    Plaintiffs' Profit-Sharing Claims Fail.

Plaintiffs' profit-sharing claims fare no better for several standalone reasons.

First, as Delta established in its opening brief, Plaintiffs cannot assert a profit-sharing claim under USERRA's pension provision (Section 4318) because that provision does not apply to profit-sharing plans. (Doc. No. 178-2, at 15.) Delta further established that Plaintiffs' profit-sharing claims are not cognizable under USERRA Section 4316 (non-seniority benefits provision) or Section 4311 (anti-discrimination provision) because the *only* leave for which Delta provides imputed earnings toward profit-sharing payments is MLOA. (Id. (citing Gross v. PPG Indus., Inc., 636 F.3d 884, 889-90 (7th Cir. 2011) (recognizing that USERRA "protect[s] only those benefits of employment provided to both military and non-military employees"); Crews v. City of Mt. Vernon, 567 F.3d 860, 866 (7th Cir. 2009) (similar).)

In their one-page response, Plaintiffs effectively abandon their profit-sharing claims. Plaintiffs do not squarely address any of Delta's arguments, do not attempt to distinguish any of the case law cited by Delta, and do not allege that Delta's method of calculating deemed earnings for its profit-sharing Plan violates any specific provision of USERRA.[10] Instead, Plaintiffs cite the *dicta* in a single Ninth Circuit case—Huhmann v. Federal Express, Corp., 874 F.3d 1102 (9th Cir. 2017)—to argue that "Delta chose to provide profit-sharing to its MLOA pilots and is

---

[10] In doing so, Plaintiffs functorially admit that there is *no* USERRA provision that dictates how Delta must calculate deemed earnings for military reservists under its profit-sharing Plan.

obligated to properly calculate deemed earnings using APH reflecting what a pilot would earn but for MLOA." This argument fails for several obvious reasons.

First, Huhmann is wholly inapposite because involved an employer's failure to properly calculate a bonus payment that the Ninth Circuit ruled constituted a required seniority-based benefit under USERRA Section 4316. 874 F.3d at 1111-12. Here, conversely, Plaintiffs do not (and cannot) claim that profit-sharing payment are seniority-based benefits as they have nothing to do with a pilot's seniority.

Further, to the extent Plaintiffs read the *dicta* in Huhmann as suggesting that a discrimination claim under USERRA Section 4311 can be based on a benefit provided *only* to service members (such as imputed earnings for profit-sharing payments at Delta), the overwhelming weight of legal authority from around the country—including Gross, Crews, and at least one district court within the Eleventh Circuit—have directly rejected that conclusion.[11]

---

[11] See, e.g., Case v. Judd, 2019 WL 10966204, at *3 (M.D. Fla. Oct. 23, 2019) ("USERRA does not cover benefits that are available only to military-affiliated employees."); Martinez v. Sun Life Assurance Co. of Canada, 948 F.3d 62, 73-74 (1st Cir. 2020) (same); Smith v. Vill. of Downers Grove, 2020 WL 1491177, at *11 (N.D. Ill. Mar. 26, 2020) (same), appeal dismissed sub nom. Smith v. Vill. of Downers Grove, IL, 2020 WL 6039134 (7th Cir. Sept. 3, 2020); Violetto v. Vill. of Tinley Park, 130 F. Supp. 3d 1179, 1184 (N.D. Ill. 2015) (same); Nazario, Jr. v. City of Riverside, 2011 WL 13143715, at *11 (C.D. Cal. Mar. 25, 2011) (same), aff'd sub nom. Nazario v. City of Riverside, 537 F. App'x 676 (9th Cir. 2013); Welshans v. U.S. Postal Serv., 550 F.3d 1100, 1104 (Fed. Cir. 2008) (rejecting USERRA discrimination claim involving "benefit available only to employees serving in the military" because "USERRA prohibits discrimination against reservists because of

Finally, even the <u>Huhmann</u> *dicta* does not remotely suggest that the Court should not enter summary judgment for Delta. While the <u>Huhmann</u> *dicta* notes that USERRA Section 4311 may not allow employers to "reduce the amount" of benefits provided to employees returning from military leave, 874 F.3d at 1112, no such reduction occurred here. On the contrary, Plaintiffs seek significantly greater profit-sharing payments than would be possible under any rational scenario. As shown above, APH—the approach Plaintiffs argue that Delta is "obligated" to use—is a completely fabricated number (i.e., 90.47 hours per month) that drastically exceeds Plaintiffs' 65.5 average pay hours in non-MLOA months. (<u>See</u> <u>supra</u> at 19.) And Plaintiffs do not cite any legal authority whatsoever—in <u>Huhmann</u> or otherwise—that requires Delta to provide Plaintiffs more benefits than non-service members (who do not receive imputed earnings for any leave) *and more benefits than Plaintiffs themselves received in months in which they had no military service at all*.

## D.  <u>Plaintiffs' Vacation Accrual Claims Fail.</u>

Prior to Delta filing its motion for summary judgment, Plaintiffs' vacation accrual claims—brought under USERRA Section 4316(b)—centered on the argument that jury duty and sick leave were comparable to MLOAs and thus Delta

---

their service: there is nothing in the statute to prevent an agency from granting them benefits not available to other employees").

should have provided vacation accrual during MLOA periods longer than 30 days. In Delta's opening brief, however, the Company cited uniform and recent case law denying such claims on the grounds that airline sick leave and jury duty leaves are not comparable to pilot MLOAs under Section 4316(b). (Doc. No. 178-2, at 11-14.)[12] As a result, Plaintiffs *entirely* abandoned their sick leave and jury duty theories and instead made two half-hearted and incredibly short arguments that amount to a concession that they have no viable claim that can survive summary judgment.

### 1.    Plaintiffs' New Special Conflict Military Leave Argument Is Fatally Flawed.

To start, Plaintiffs make a two-paragraph argument that Delta's Special Conflict Military Leave ("SCML")—a leave Delta provides to reservists serving in combat and other dangerous special conflict positions—is comparable to non-special conflict MLOAs. Plaintiffs' argument fails for three independent reasons.

First, Plaintiffs have never asserted an SCML-based claim in this case, and "[p]laintiffs cannot raise new claims at the summary judgment stage." Buford v. Life Storage, LP, 2021 U.S. App. LEXIS 25188, at *13 (11th Cir. Aug. 23, 2021).

Second, Plaintiffs' (new) SCML-based claims seek to compare one form of military leave to another form of military leave, but Section 4316(b) addresses only comparable *non-military* leaves. In enacting Section 4316(b)(1), the House and

---

[12] Since then, another federal court reached the same conclusion. Synoracki v. Alaska Airlines, Inc., 2022 U.S. Dist. LEXIS 96778 (W.D. Wash. May 31, 2022).

Senate reports stated, "Accordingly, while away on military leave, the servicemember would be entitled to participate in whatever non-seniority related benefits are accorded other employees on *non-military* leaves of absence." H. Rep. No. 103-65(I), at 33 (1993); S. Rep. No. 103-158, at 58 (1993) (internal citation omitted) (emphasis added).[13] Courts have routinely followed that principle. See, e.g., Reep v. Delta Air Lines, Inc., 2022 U.S. Dist. LEXIS 60064, at * 13 (N.D. Ga. Mar. 29, 2022) (finding that Section 4316(b) requires employees on military leave to be entitled to rights and benefits "to which employees on comparable *non-military* absences are entitled.") (emphasis added). Because Plaintiffs' SCML-based claims are based on a comparison of one type of military leave to another, they fail as a matter of law and cannot survive summary judgment.[14]

Third, even if Plaintiffs had raised SCML as a potentially comparable leave before the summary judgment stage—and even if their claims concerned a non-

---

[13] See also 70 Fed. Reg. 75246, 75253 (Dec. 19, 2005) ("[T]he employer is obligated to provide non-seniority benefits to employees on military leave *only* to the extent that the employer provides such benefits to similarly situated employees on comparable *non-military* furlough or leave of absence." (emphasis added)); Rogers v. City of San Antonio, 392 F.3d 758, 769-70 (5th Cir. 2004) (same).

[14] Under Plaintiffs' theory, particularly pro-reservist employers like Delta could never provide its reservists performing combat or other dangerous military assignments (the purpose of SCML at Delta) with any additional benefits beyond those provided to reservists voluntary flying from a domestic military base (like certain Plaintiffs do) because the two types of MLOA are comparable and one cannot have more benefits than the other. That result would turn USERRA on its head.

military leave—Plaintiffs have not applied the three factors (duration, purpose, and ability to schedule) found in 20 C.F.R. § 1002.150. Plaintiffs present no evidence whatsoever on the duration of SCML. With respect to purpose, Plaintiffs know from Delta's Rule 30(b)(6) testimony that Delta intended SCML "to enhance benefits extended to military providers for those that are deployed to special conflict areas. It was introduced post 9/11." (Doc. No. 200, at 84:3-17.) That is a far different purpose than an MLOA taken in a non-special conflict area. Plaintiffs also cannot establish comparable scheduling flexibility between SCML and MLOA. For example, Reep testified that he voluntarily sets his schedule for military flying by bidding for flight days, and Sorenson testified about his ability to choose the dates he performs military work. (Doc. No. 172, at 44:13-45:10; Doc. No. 175, at 122:22-123:10.) Military reservists obviously do not have such scheduling control when they are sent into combat in a special conflicts area such as post-9/11 Afghanistan.

2. **Plaintiffs' Two-Sentence Known Personal Leave Argument Is Also Fatally Flawed.**

After spending two paragraphs discussing SCML, Plaintiffs' oppositions contain two throwaway sentences referencing Delta's Known Personal Leave of Absence for pilots ("KLOA"). (Doc. No. 208, at 14.) In doing so, they present no evidence concerning (or even referencing) the factors of comparability referenced above. They present no evidence of the typical duration or frequency of KLOAs. And they present no argument (let alone evidence) on purpose or voluntariness.

Plaintiffs also fail to respond to—and thus concede—Delta's position in its opening brief that KLOAs have an entirely different purpose from MLOAs because KLOAs are designed to reduce labor costs during over-staffed periods—an entirely different purpose than that of military leave. (Doc. No. 178-2, at 14 n.10.)

Finally, Plaintiffs' citation to Delta's Rule 30(b)(6) deposition testimony establishes that KLOAs are not comparable to MLOAs. There, Delta testified that KLOAs are a "bid absence whereby a pilot can choose to put in their bid for a period of time that they don't want to work." (Doc. No. 200, at 91:13-15.) When asked if KLOA was comparable to MLOA, Delta testified it was not (and Plaintiffs in their response briefs do not disagree). (Doc. No. 200, at 92:15-20.) Plaintiffs' two-sentence argument fails to establish a Section 4316(b) claim for KLOAs, and the Court should enter summary judgment on Plaintiffs' vacation accrual claims.

### E.   Plaintiffs' Discrimination Claims Fail.

#### 1.   Plaintiffs' "General Harassment" Claims Fail.

Plaintiffs' oppositions cite to no USERRA provision or case holding that there is a "general harassment" claim under USERRA. This is because there is no such provision, and there is no such claim. "[R]ather, liability to each plaintiff must *still* be established." Rudolph v. Dept. of Corr., 2006 U.S. Dist. LEXIS 103535, at *16 (N.D. Fla. Nov. 9, 2006). Moreover, in contrast with Title VII—which allows for compensatory and punitive damages on an individual harassment claim—a

USERRA plaintiff does not have standing to assert a harassment claim unless he has suffered "lost wages or employment benefits resulting from the alleged harassment." Dees, 368 F. App'x at 53. As set forth below, Plaintiffs are unable to show either component of this claim—either individualized harassment or lost wages/benefits—required to survive summary judgment.

The sweep of Plaintiffs' impermissible "general harassment" claim is the following: "Delta's policies and practices are designed to discourage and reduce MLOA, to persuade pilots to resign from military service, and to underfund benefits for pilots who take MLOA." (Doc. No. 208, at 4.)[15] Not only are these assertions made solely by counsel and unsupported by evidence, but they are also directly contrary to the undisputed evidence such as:

- Delta has contributed millions of dollars *more* into the 401k accounts of reservists for their MLOAs than is required under USERRA.

- Although Delta is not required to deem earnings for reservists' MLOAs under its profit-sharing Plan, the Company does so and at a level of a great windfall to reservists (and only to reservists).

- Delta provides extra benefits for its reservists called to military service in special conflict areas such as combat after 9/11.

---

[15] While Plaintiffs claim that Delta wrote these words in emails, the emails they cite say absolutely no such thing.

- The U.S. Secretary of Defense has *on multiple occasions* awarded Delta the "Secretary of Defense Employer Support Freedom Award," recognizing the employers who "provide the most outstanding support for their Guard and Reserve employees." www.freedomaward.mil; www.freedomaward.mil/past-recipients/itemid/186/delta-air-lines. The Secretary of Defense has also publicly noted the high percentage of Delta pilots serving in the military and Delta's pledge to hire even more such pilots. Id.

- Plaintiffs have presented not a shred of evidence that Delta ever sought to persuade a pilot to resign from the military.

- Despite having a years-long discovery period to review data on thousands of MLOAs taken by Delta pilots, Plaintiffs cannot present *a single* instance in which Delta denied them or any other military pilot a USERRA MLOA.

The gravamen of Plaintiffs' "general harassment" claim is that, when a reservist pilot schedules an MLOA on or near a holiday (when Delta travel and/or the need for pilots is greater), Delta may contact the pilot and/or his military command to see if the date(s) of the MLOA can be rescheduled. (Doc. No. 208, at 16-19.) Even if this were true, it does not give rise to a USERRA claim as Plaintiffs have not identified a single instance (as there is none) whereby Delta *required* the

reservist to reschedule the MLOA in question.[16]

Once again, Plaintiffs' quarrel is with USERRA and not with Delta. USERRA is a balancing statute. It is designed to encourage reservists to engage in service, but it is *also* designed "to minimize the disruption . . . to their employers, their fellow employees, and their communities" 38 U.S.C. § 4301(a)(2). As a result, when an employee gives notice of an MLOA period, his or her employer is *expressly permitted* to contact the employee's military leaders to discuss the timing of the MLOA. 20 C.F.R. § 1002.104 (providing that an "employer is permitted to bring its concerns over the timing, frequency, or duration of the employee's service to the attention of the appropriate military authority").

Indeed, the Department of Defense ("DOD") has directed military authorities to "provide assistance to an employer in addressing these types of employment issues." Id. The DOD has also explicitly stated that "during times of acute need" for an employer, when an employee is to be on an MLOA for an extended period, or where the "requested military leave is cumulatively burdensome," the employer may contact the employee's military unit to determine if the military leave can be rescheduled. *See* U.S. D.O.J., USERRA Handbook, at 13, Q11, available at

---

[16] Thus, with respect to the portion of 20 C.F.R. § 1002.104 cited by Plaintiffs (Doc. No. 208, at 16), it is undisputed that Delta never *required* any Plaintiff (or any military reservist) to accommodate his or her MLOA schedule with Delta's schedule. As shown below, Plaintiffs strategically omit the remainder of that regulation, which expressly permits Delta's practice.

https://www.justice.gov/sites/default/files/usao-az/legacy/2011/01/07/USERRA_Handbook.pdf.

Plaintiffs' complaints about Delta concern this indisputably lawful practice. For example, on one occasion, a Delta pilot was scheduled to fly a four-day rotation over Thanksgiving weekend (the busiest travel time of the year). (Doc. No. 205, at 33:16-34:3.) The pilot then scheduled one day of MLOA on the Friday after Thanksgiving, thus preventing him from flying his rotation. Id. A Delta manager contacted the pilot's military commander to see if there was any scheduling flexibility as Delta had a pilot shortage for that period. Id. The commander was "very receptive" to the request and was able to provide scheduling flexibility. Id.

Plaintiffs' disagreement with the steps USERRA permits employers to take does not provide them with a cause of action under the statute.[17] Plaintiffs' "general harassment" claim is devoid of both substance and damages and must be dismissed.[18]

---

[17] Plaintiffs submitted a purported expert report which states: "Incredibly, pilots were far more likely and allowed to take vacation over holidays than they were to perform military duty near the same holiday." (Doc. No. 208, at 18.) Not only is this not "incredible," it is what would be expected at any employer. Like most employees, Delta pilots often wish to not work for the military or Delta on holidays but, instead, spend that time with family or friends. Plaintiffs presented no evidence that military reservists were not "allowed" to take an MLOA at any time. The premise of their (and their "expert's") speculation is that employees are more likely to seek to schedule their vacations in late February than around Thanksgiving or the December holidays. The lack of reality to that premise speaks for itself.

[18] Plaintiffs also reference a small number of idiosyncratic emails—out of more than 100,000 that Delta produced in the case—that they claim show general harassment. They do not. For example, in the Introduction section of their oppositions, Plaintiffs cut and paste a GIF sent as a joke by a Flight Operations manager wherein a person

### 2.      **Plaintiffs' Individual USERRA Harassment Claims Fail.**

Plaintiffs' individual hostile work environment claims similarly fail as a matter of law for a number of standalone reasons.[19]

<u>First</u>, none of the Plaintiffs point to any actual Delta pay/benefits they lost as a result of Delta's alleged harassment. Thus, under the controlling <u>Dees</u> decision, their claims fail due to a lack of standing. <u>Dees</u>, 368 F. App'x at 53.

<u>Second</u>, as established in Delta's opening brief, none of the Plaintiffs can come close to showing sufficiently severe or pervasive act of harassment to survive summary judgment.[20] (Doc. No. 178-2, at 17-20 (collecting cases).) <u>See</u> <u>also</u>, <u>e.g.</u>,

---

in military fatigues points to a man doing push-ups and states, "You will not do MLOA until I tell you are told to do so." Aside from the fact that the speaker in the meme is in military uniform (and Plaintiffs' counsel stated he was a drill instructor rather than a civilian employer like Delta), the person who sent the meme (Barry Holmes) was trying to show humor and is indisputably one of the best employees in that office at communicating with reservist pilots. (Doc. No. 198, at 129:11-130:21.) In any event, none of the emails reference any Plaintiff, and none of the emails were known to any of the Plaintiffs before they filed suit. For both of those reasons, the emails cannot form the basis of an individual harassment claim. <u>See</u> <u>infra</u> at n.20.

[19] Reep's, Doyle's and McLean's alleged adverse employment action claims are addressed below. Such discrete alleged employment actions cannot form the basis of a hostile work environment claim. <u>Jones v. Town of Spring Lake</u>, 2020 U.S. Dist. LEXIS 142547, at *29 (E.D.N.C. Aug. 10, 2020), <u>aff'd</u>, 2022 U.S. App. LEXIS 12606 (4th Cir. May 10, 2022); <u>Joseph v. Fla. Quality Truss Indus., Inc</u>., 2006 U.S. Dist. LEXIS 88254, at *29 (S.D. Fla. Dec. 6, 2006).

[20] The "general harassment" emails Plaintiffs reference in their oppositions are not material to whether the Plaintiffs have a cognizable harassment claim because the Plaintiffs were unaware of the emails prior to this suit (when Delta produced the emails in discovery). <u>See</u>, <u>e.g.</u>, <u>Adams v. Austal, U.S.A., L.L.C.</u>, 754 F.3d 1240, 1250 (11th Cir. 2014) (holding that, in a hostile work environment claim, "[t]he

<u>Colon v. Colomer & Suarez San Juan, Inc.</u>, 2020 U.S. Dist. LEXIS 140846, at *44-49 (D. P.R. Aug. 6, 2020) (dismissing USERRA harassment claim where supervisor frequently complained about each of plaintiff's MLOA requests, referring to each as a "problem," as not sufficiently severe or pervasive).

Plaintiffs' oppositions confirm this. Doyle bases his claim on the allegation that Delta investigated him and requested documents in connection with that investigation. (Doc. No. 207, at 23-24.) His allegations are far from severe or pervasive harassment.[21] The allegations also do not show any economic harm.

McLean bases his claim on: (1) his belief that he "refuted" the misconduct allegations against him but that Delta did not believe him; and (2) the allegation that Delta told him that it was going to inform the military of his (mis)conduct. (Doc. No. 206, at 24-25; <u>see also</u> Doc. 171 at 304:18-307:21.) Neither Delta's disbelief of

---

totality of a plaintiff's workplace circumstances does not include other employees' experiences of which the plaintiff is unaware. Courts conduct the objective assessment from the perspective of a reasonable person in the plaintiff's position, knowing what the plaintiff knew . . . . A reasonable person in the plaintiff's position is not one who knows what the plaintiff learned only after her employment ended or what discovery later revealed."); <u>Washington v. Util. Trailer Mfg. Co.</u>, 2017 U.S. Dist. LEXIS 32658, at *9 (M.D. Ala. Mar. 8, 2017) (similar).

[21] Plaintiffs misleadingly cite to a regulation concerning documents that an employer can request "in connection with [an] application for reemployment" after an MLOA. *See* 20 CFR § 1002.121. That regulation, however, does *not* address employer investigations of potential employee misconduct, *and there is no such USERRA regulation or statutory provision*. Moreover, it was up to Doyle whether to produce the requested documents and, if he chose not to do so (and instead resign), Delta was free under USERRA to draw an adverse inference from his decision.

McLean nor the Company's alleged statement that it would let the military know about his misconduct is remotely severe or pervasive harassment. (The alleged events also did not cause McLean any economic harm.)

Smith bases his claim on what he absurdly calls a "public execution" (Doc. No. 208, at 22)—but which actually amounted to Delta informing him (correctly) that he had exceeded his five-year limit of exempt leave and that he was not eligible for re-employment under the terms of USERRA. (See infra at 46.)

Sorenson bases his claim on the following four events that allegedly all occurred during a single, short period of time immediately after his hiring in 2014: (1) a Delta management pilot, Jim Mangie, told him once at a new-hire briefing that he should not take military leave as a new-hire pilot, that he was "strongly discouraged" from taking military leave during his period as a probationary pilot, and that Mangie communicated with senior military officials regarding military leave (Doc. No. 211-4, ¶ 13); (2) Mangie, on a single occasion in 2014, called his Wing Commander (lawfully, as set forth above) to ask about the nature of the military duty and whether the requested leave was necessary (it was, and Sorenson took leave and had his work-time rescheduled to accommodate it) (Id. ¶¶ 14-16); (3) a Delta management pilot, John Carrol, "discouraged" him from deploying to combat in 2014 because he was a new Delta pilot (Id., ¶¶ 19-20); and (4) Carroll allegedly "counseled" and "watched" him about his military leave (Id., ¶¶ 21-23).

These isolated alleged events near the beginning of Sorenson's employment—employment that has now lasted more than seven years—neither caused him any economic harm nor were remotely severe or pervasive to constitute unlawful harassment. Indeed, Sorenson does not even allege that these isolated comments years ago had any impact on his performance or work environment as a pilot.[22]

Finally, Reep bases his claim on the allegations that: (1) an Assistant Chief Pilot told him on one occasion *in 2010* that he should not report or take military leave (in direct contravention of Delta's policies) (Doc. No. 212-4, ¶ 12)[23]; (2) on one occasion five years later, an e-mail that Reep did not even know about (and thus could not possibly be harassment of Reep) was written about Reep's military leave (Doc. No. 212, at 8); (3) on one occasion in October 2015 (while Delta's investigation of Reep's undisputed misconduct was ongoing), a Chief Pilot met with unidentified members of Reep's military unit to ensure that they did not "get the impression that Delta was out to get the unit, or any of the pilots in the unit" and that the investigation was focused on Mr. Reep's misconduct. (Doc. No. 199, at 143:15-

---

[22] See e.g., Fortson v. Carlson, 618 F. App'x 601, 607 (11th Cir. 2015) (holding that allegations of "twelve incidents of harassment spanning seven months of his two-and-a-half years of employment" most of which involved "racially derogatory language" while offensive and disturbing were not sufficiently pervasive or severe to state a hostile work environment claim).

[23] Reep averaged *more* days of military leave in the 6 years thereafter than in the four years prior to this alleged "harassment." (Doc. No. 178-3, ¶ 13.)

144:24); and (4) Delta investigated Reep for his misconduct. (Doc. No. 212, at 9-11). Again, these isolated incidents caused no economic harm to Reep, and regardless, these events (one statement to Reep and two statements he did not know about) do not constitute a hostile work environment under controlling law.

### 3.   Plaintiffs' "Concurrent Duty" Claims Fail.

Plaintiffs' oppositions did not directly address either of Delta's two independent arguments as to why their concurrent duty claim fails as a matter of law.

### a.   Plaintiffs' Concurrent Duty Claim Is Contrary to USERRA.

As Delta demonstrated in its opening brief, when a pilot chooses to perform military service, he is—as matter of law—"deemed to be on furlough or leave of absence while performing such service." 38 U.S.C. § 4316(b)(1)(A). Further, "[u]nder USERRA, employers cannot refuse to allow employees to take leave for military duty . . . ." Reyes v. P.R. Aqueduct & Sewer Auth., 2009 U.S. Dist. LEXIS 143991, at *22 (D. P.R. Feb. 6, 2009). This is not a recommendation. As USERRA's regulations make clear, Delta is *required* by law to treat its pilots who are serving in the military as if they are on leave and not working for Delta:

> **What is the employee's status with his or her civilian employer while performing service in the uniformed services?**
>
> During a period of service in the uniformed services, the employee is deemed to be on furlough or leave of absence from the civilian employer. . . .

20 C.F.R. § 1002.149. Delta's concurrent duty policy merely ensures compliance

with this unambiguous requirement. And ensuring compliance with USERRA can hardly constitute a violation of USERRA.

Plaintiffs nevertheless argue that they should be permitted to work for *both* Delta and the military on certain days where their military obligations are administrative in nature and not significant enough to require their undivided attention, or where they completed their military obligations for the day and have time remaining to fly for Delta. Importantly, however, neither of these hypothetical situations obviates Delta's legal obligation to treat pilots as if they are on leave on days where they are performing service in the military.[24]

In addition, there is no record evidence suggesting that Plaintiffs *ever* suffered any adverse employment action in situations similar to the hypothetical scenarios offered by their oppositions. On the contrary, Plaintiffs' policy violations were a far cry from their oppositions' seemingly innocuous examples. Reep, for example, was based in and flew out of Atlanta for Delta but performed military duty at his military base in Jacksonville. When at his military base, Reep often flew F-15 jets and supervised all flying at the base. (Doc. No. 202, at 17, 18, 38, 39, 50.) Reep obviously could not simply abandon those military duties in midstream to try to get to Atlanta in time to fly a Delta flight. Indeed, Reep's commanding officer told Delta that when

---

[24] Further, Plaintiffs do not and cannot argue that—under the concurrent duty policy or otherwise—Delta ever denied military leave to *any* pilot who requested it on a day after completing obligations to Delta.

Reep had a military flying schedule in Jacksonville (as he frequently did), "he would not be available to Delta." (Doc. No. 199-19, at 3.)[25]

Plaintiffs' argument that there might be some occasions where the situation might allow them to abandon their military duties on a Delta on-call day and seek to be assigned to a Delta flight is, of course, a red herring. Neither the servicemember nor Delta would have any idea whether a particular situation permitted the pilot to abandon military duties on a particular day and return to active employment—and Delta certainly could not compel such a result.[26]

Plaintiffs' dentist analogy is also inapt. A pilot working as a dentist on a Delta on-call day is not on any form of leave, and Delta can legally require him to stop his dental practice on a moment's notice to report to a Delta flight. If the pilot did not do so, Delta could discipline him or her. It is exactly the opposite for a reservist performing military duties on a Delta on-call day. Delta could not legally require that pilot to stop military duties to fly for Delta and could not discipline the pilot if he or she did not report to a Delta flight due to lawful MLOA.

---

[25] Similarly, McLean flew for Delta from Minneapolis but was based in Tampa with his Air Force Reserve unit. (Doc. No. 171, at 91, 94.) He could not realistically stop military work in Tampa in order to fly for Delta the same day in Minneapolis.

[26] Indeed, as noted above, the very purpose of an MLOA is to prevent *any possible conflict* between an employer work assignment and military duties because the reservist performing military duties is on a protected MLOA day when the reservists cannot legally be assigned work from the employer. (See supra at 40-41.)

**b.** __Plaintiffs Have No Standing For Their Concurrent Duty Claim.__

Plaintiffs' oppositions also fail to rebut the controlling law that they have no standing to challenge the concurrent duty policy because they have not shown that they suffered any "lost wages or benefits suffered by reason of [Delta's] failure to comply with USERRA." <u>Dees,</u> 368 F. App'x at *52 (<u>quoting</u> 38 U.S.C. § 4323(d)(1)(A)-(C)); <u>Clark v. City of Montgomery</u>, 535 F. Supp. 3d 1197, 1208 (M.D. Ala. 2020) (same and citing to <u>Dees</u>). Counsel Stonebarger/Billy did not address that argument in their five briefs. In counsel Matter's two briefs, she argues that the concurrent duty policy altered the terms of conditions of Reep and Sorenson's employment with Delta. (Doc. No. 211, at 23.) That argument fails for two independent reasons.

 <u>First</u>, <u>Dees</u> holds that claiming an alteration of the terms and conditions of employment (such as in the hostile work environment harassment claim in <u>Dees</u>) is insufficient for standing as the plaintiff must have suffered lost compensation or benefits. 368 F. App'x at *52. And Plaintiffs do not even attempt to claim they suffered lost Delta compensation/benefits as a result of the concurrent duty policy.

<u>Second</u>, the concurrent duty policy did not alter Plaintiffs' terms and conditions of employment. No term was changed as Delta has always expected Plaintiffs to be available for assignments on paid Delta reserve/on-call days. Indeed,

that is the purpose of Delta paying for those days even if a pilot is not called to fly.[27]

Counsel Matter also argues in her two briefs that "[w]ages and benefits recoverable from an employer under USERRA can include those that would have been available from the military but for the employer's violation of the Act." (Doc. No. 211, at 24.) This argument also fails for two independent reasons.

First, the only case counsel Matter relied upon for that assertion is Kolkhorst v. Tighman, 897 F.2d 1282 (4th Cir. 1990). Not only is Kolkhorst a case under a pre-USERRA statute whose remedy provision is not identical to and at least arguably broader than the remedy provision of USERRA, but the decision is also contrary to: (1) the controlling Eleventh Circuit decision in Dees (which plainly requires lost compensation/benefits from the employer); (2) USERRA's text; and (3) other more recent USERRA cases. (See Doc. No. 178-2, at 22-23 & n.18 (citing relevant statutory text and collecting cases for proposition that a Section 4311 claim requires a plaintiff to establish that he was denied a benefit of the *non-military employer*).) Plaintiffs' oppositions respond to none of these citations and thus concede them.

---

[27] Plaintiffs may be claiming that the policy changed the terms and conditions of their military job, but a USERRA benefit cannot be the benefit of the military but only of the employer subject to the USERRA claim. 38 U.S.C. § 4303(2) (definition of "benefits" under USERRA include "terms, conditions, or privileges of employment . . . that accrues by reason of an employment contract or agreement or an employer policy, plan or practice …"). Delta has no ability to change the terms and conditions of Plaintiffs' relationship or "employment" with the military. Only the military can do so.

<u>Second</u>, Plaintiffs do not and cannot identify any actual lost military pay or benefits caused by Delta's concurrent duty policy. After all, if they provide the required advance notice for military duty, that day is designated by Delta as an MLOA day, as required by USERRA, and Plaintiffs receive full pay from the military. Alternatively, if Plaintiffs desire to perform military work without taking time off from Delta, they can perform that work on any of the days where they are off work each month from Delta. Plaintiffs are not actually alleging that they lost any military pay or benefits as they can choose to do that work either on a Delta off day or an MLOA day. Instead, Plaintiffs seem to want to be paid by two separate employers (Delta and the military) for the exact same day when they are beholden to both. This theory runs counter to USERRA and fails as a matter of law.

### 4. <u>Smith's Five-Year Claim Fails.</u>

Smith was on a continuous MLOA for over 8 years. (Doc. No. 174, at 221:24-222:5.) During his deposition, he admitted that: (1) in order for that leave to be exempt from the 5-year MLOA limit, his orders needed to state that his leave was exempt;[28] (2) his orders (not his DD-214) did not state that the MLOA was exempt; and (3) while Delta gave him repeated opportunities to do so, he never presented any

---

[28] While counsel Stonebarger/Billy claim without support that "specific language regarding exemptions is not required on orders" (Doc. No. 208, at 23), Smith testified correctly to the contrary (as set forth above). <u>See also</u> <u>Sutton</u>, 713 F. Supp. 2d at 555 (applying correct law), <u>Castillejo</u>, 2019 WL 2412353 (same).

document from the Secretary of Navy stating that his MLOA was exempt. (Id. at 196:10-197:1, 202:2-15; 238:19-22, 255:20-256:7, 266:21-267:10, Exh. 8.) Thus, as established in Delta's opening brief, Smith's claim that his leave was exempt fails as a matter of law. (Doc. No. 178-2, at 24-25 (citing Sutton v. City of Chesapeake, 713 F. Supp. 2d 547, 555 (E.D. Va. 2010); Castillejo v. U.S. Postal Serv, 2019 WL 2412353 (M.S.P.B. June 6, 2019)).[29]

In his opposition brief, Smith attempts to distract the Court from his claim's legal deficiencies by making a series of immaterial allegations. He states that:  (1) Delta removed him from a simulator session after his MLOA and told him that he was being removed from employment; and (2) he was thereby the "subject of a public execution designed to intimidate other military pilots." (Doc. No. 208, at 22.) Nothing could be further from the truth. Delta was complying with the law as Smith was ineligible for reemployment and thus was improperly in the simulator.

---

[29] O'Farrell v. Dept. of Defense, 882 F.3d 1080 (Fed. Cir. 2018) is not applicable. It is not a case involving re-employment and Section 4312(c) of USERRA—the claim at issue here. Moreover, O'Farrell was limited to a unique and narrow set of facts where the reservist was called into active duty to replace a member of the Navy who had been deployed to Afghanistan. See e.g., Adams v. Dep't of Homeland Sec., 3 F.4th 1375, 1379 (Fed. Cir. 2021), cert. denied, 2022 WL 2203353 (U.S. June 21, 2022) (distinguishing O'Farrell to those narrow facts). The mere existence of Presidential Proclamation No. 7463 does not answer the question of whether a particular Order or Orders are exempt under Section 4312(c). If Smith's argument were correct, it would mean that the Proclamation would "swallow the five-year rule because all military service since the President declared a national emergency with respect to terrorism on September 14, 2001 would automatically be excepted from the five-year limitation." Castillejo, 2019 WL 2412353 (citing Sutton).

Moreover, while Smith contends that Delta should have accepted his DD-214 to establish an exemption to USERRA's five-year limit, that is not only legally incorrect (as established in <u>Sutton</u> and <u>Castillejo</u>), it also ignores the fact that Smith coerced Navy personnel through fraud and deceit to include inaccurate language in his DD-214, a fact about which Delta learned during the reemployment process.[30] Finally, it is undisputed that the Office of the Assistant Secretary of the Navy provided Smith with an email stating that his MLOA was *not* exempt. (Doc. No. 174-14, at 3-4.) Smith's opposition does not even attempt to rebut this critical fact, and that concession alone is fatal to his five-year claim.

### 5.   <u>Reep's, McLean's and Doyle's "Termination" Claims Fail.</u>

Reep's claim that Delta's conclusion that he repeatedly engaged in sick leave abuse was based on "insufficient" evidence is both immaterial and wrong. Delta does not have to show that he in fact engaged in sick leave abuse (though he clearly did), but only that it acted on a good faith belief that he did so. <u>See</u>, <u>e.g.</u>, <u>EEOC v. Total</u>

---

[30] Rather than submit his orders showing no exemption, Smith submitted to Delta another form (a DD-214 form) in what he claimed was a "draft" status. (Doc. No. 174, at 233, 236; Doc. No. 174-11, at 3.) After Delta informed him that even his DD-214 did not state that his leave was exempt, Smith emailed an administrative employee at the military and directed her to include language in his DD-214 stating that his service was exempt using language that *he* (and not the military) claimed applied to his service. (Doc. No. 174, at 230; Doc. No. 174-11.) Delta wrote Smith that his DD-214 was not consistent with his orders. (Doc. No. 174, at 251, 252; Doc. No. 174-13.) Smith had unlawfully completed his own DD-214 improperly using the administrative employee as a pawn in his deceptive plot.

Sys. Servs., 221 F.3d 1171, 1176 (11th Cir. 2000) (affirming summary judgment for employer and holding that employee was properly "discharged based on [employer]'s good faith belief that she lied in an internal investigation"); Anderson v. Emory Healthcare, Inc., 2021 WL 4533270, at *14 (N.D. Ga. July 27, 2021) (granting summary judgment for employer and recognizing that "a defendant's decision that termination was proper does not even need to have been correct, so long as it was made in good faith") R. & R. adopted, 2021 WL 4533265 (N.D. Ga. Aug. 26, 2021), appeal filed, No. 21-13358 (11th Cir. Sept. 24, 2021).  Moreover, the undisputed evidence—including Reep's military flight records and court transcripts—show without question that he both practiced law (including attending court proceedings) and flew for the military on days that he called in sick to Delta. (Doc. Nos. 172, 172-1, 172-2, 172-3, 178-4, Exh. F and G.)[31] Similarly, Delta could independently terminate Reep for admittedly taking MLOA (including for more than 30 days) without the required notice to Delta, and for his indisputable violations of

---

[31] Reep admits that he has no idea why he called in sick on one of these sick periods. (Doc. No. 172, at 71:17-73:15.) With respect to the other period of sick leave, he even deceived his treating physician. Reep presented a note from his treating physician (Dr. Carnevale) stating that Reep had seen him on July 11, 2013 and Reep testified that this note was "very accurate." (Doc. No. 172, at 70; Doc. No. 172-9.) Carnevale wrote that Reep claimed to have over flexed his neck while flying an F-15 for the military on July 11 (the date he saw Carnevale). However, Reep's military records show that, not only did he not fly for the military on July 11, he had not done so since June 13. (Doc. No. 172-2, at 1-2.) That Reep—who is both an officer in the military and a practicing lawyer—could make such misstatements is at a minimum quite disturbing.

48

USERRA and lawful Delta policies.

McLean's opposition does not address Delta's argument based on controlling law that he was not terminated but voluntarily resigned. Thus, he concedes that his claim fails for that reason alone. McLean's opposition also continues Plaintiffs' overarching strategy by relying on a materially false citation to distract the Court. His opposition claims that his Chief Pilot, William "Bill" Underwood, "told McLean he could perform military duty while on sick leave with Delta." (Doc. No. 206, at 24). Not only does the cited evidence say no such thing, one of the cited documents shows that McLean received an email from Underwood that told him the opposite: that he could *not* perform military activities while on Delta sick leave for his hernia recovery. (Doc. No. 171-14, at 23-24; see also Doc. No. 171-10.). *In fact, that very email told McLean his employment could be terminated if he performed military activities while on Delta sick leave* (a Delta policy that Plaintiffs do not and cannot claim violates USERRA). (Doc. No. 171-10; 171-13, at 2.)[32]

---

[32] McLean claims that he could fly for the military but not for Delta because he could not lift his travel bag when on a Delta aircraft. That claim is immaterial as Delta in good faith found that (almost comical) argument unpersuasive. Aside from the fact that McLean could have gotten someone else to put his bag up, he forgot that he was able to fly from Detroit to Tampa for a weeks' long trip and obviously had no problem putting his likely much heavier bags (for a long trip) into his car trunk, out of his car trunk, and otherwise. McLean also concedes by his silence that he at least 25 times claimed to have MLOA when he did not have any military orders. Delta concluded in good faith that McLean was not being truthful with the Company. See Total Sys. Servs., 221 F.3d at 1177; Anderson, 2021 WL 4533270, at *14.

The undisputed evidence shows that Delta reasonably believed that McLean was engaged in sick-leave fraud. Even if the Company was mistaken—and there is no evidence suggesting that it was—that still would not change its good faith conclusion about McLean's (mis)behavior, and summary judgment would still be warranted for Delta. See Total Sys. Servs., 221 F.3d at 1177; Anderson, 2021 WL 4533270, at *14.

Finally, Doyle's opposition also does not substantively address Delta's argument that he resigned and suffered no adverse action. He thus concedes that fatal flaw in his claim.[33] Moreover, Doyle's claim suffers from the same dispositive defect as Reep's and McLean's. Even if Delta was incorrect in its concerns about Doyle, its concerns were raised in good faith—even Doyle admitted that Delta could have concluded that his actions had "nefarious intent" (Doc. No. 170, at 342:5-22)—and do not support a discrimination claim. Under the blackletter law cited above, the Court should enter summary judgment on Doyle's wrongful termination claim.

## III.   **CONCLUSION**

Delta respectfully requests that the Court enter summary judgment for Delta on all of Plaintiffs' claims and dismiss Plaintiffs' complaint in full, with prejudice.

Respectfully submitted,

---

[33] Doyle asserts that Delta did not find that he engaged in certain violations, but that is indisputably false because he quit before Delta completed its investigation.

s/ Lincoln O. Bisbee
Thomas J. Munger (Georgia Bar No. 529609)
Benjamin A. Stone (Georgia Bar No. 683850)
MUNGER & STONE, LLP
999 Peachtree Street, N.E., Suite 2850
Atlanta, Georgia 30309
Telephone: (404) 815-0933
tom.munger@mungerandstone.com
ben.stone@mungerandstone.com

Lincoln O. Bisbee (Admitted *Pro Hac Vice*)
Jason J. Ranjo (Admitted *Pro Hac Vice*)
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, New York 100178
Telephone: (212) 309-6000
lincoln.bisbee@morganlewis.com
jason.ranjo@morganlewis.com

## <u>CERTIFICATE OF COMPLIANCE ON FONT</u>

Pursuant to Local Rule 7.1D of the Local Rules for the United States District Court for the Northern District of Georgia, I hereby certify that the foregoing pleading has been prepared in Times New Roman, 14-point font, as permitted by Local Rule 5.1B

<u>s/ Lincoln O. Bisbee</u>

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **JEREMY SORENSON, an individual, RANDAL REEP, an individual, RANDAL SMITH, an individual, ADAM MCLEAN, an individual, and JAMES DOYLE, an individual, on behalf of themselves and all others similarly situated,**<br><br> **Plaintiffs,**<br><br>**vs.**<br><br>**DELTA AIR LINES, INC., a Delaware Corporation,**<br><br> **Defendant.** | **Civil Action No. 1:17-cv-00541-ELR** |

## <u>CERTIFICATE OF SERVICE</u>

I certify that on June 30, 2022, I electronically filed REPLY BRIEF IN SUPPORT OF DEFENDANT'S BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT with the Clerk of Court using the CM/ECF system, which will automatically serve it on Plaintiffs' counsel of record: Charles M. Billy, Gene J. Stonebarger, Crystal L. Matter, Alexander Cyclone Covey, and Stephen J. Anderson.

s/ Lincoln O. Bisbee

53